IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN X 9 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

U.S. COMMODITY FUTURES TRADING
COMMISSION,

          **Plaintiff,**

          v.

EDWARD C. SARVEY
  and
DAVID G. SKLENA,

          **Defendants;**

LAWRENCE-BONFITTO TRADING
COMPANY
  and
JOSEPH J. BONFITTO,

          **Relief Defendants.**

No. 08 CIV.

08CV192
JUDGE KENDALL
MAGISTRATE JUDGE ASHMAN

## PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S EXHIBIT LIST

| | |
|---|---|
| EXHIBIT A | CBOT Notice to Sarvey, March 2007 |
| EXHIBIT B | CBOT Notice to Sarvey, December 2002 |
| EXHIBIT C | CBOT Notice to Sklena, March 2007 |
| EXHIBIT D | CBOT Notice to Sklena, February 2003 |
| EXHIBIT E | Time and Sales Price Detail |
| EXHIBIT F | Transcript of Jennifer Baum, January 8, 2007 |
| EXHIBIT G | NFA Registration Certification for Edward Sarvey |
| EXHIBIT H | NFA Registration Certification of David Sklena |
| EXHIBIT I | Diagram of 5-Year Note Futures Pit |
| EXHIBIT J | Sklena March 5, 2004 Daily Statement |

EXHIBIT K            CBOT Membership Bulletin and Related Documents

EXHIBIT L            Transcript of James Bonfitto

EXHIBIT M            Sklena April 2, 2004 Daily Statement

EXHIBIT N            CBOT Rule 331.02 (make sure from 2004)

EXHIBIT O            CBOT Rule 350.04  (make sure from 2004)

EXHIBIT P            Time and Sales Report for Pit Trading

EXHIBIT Q            Time and Sales Report for E-cbot Trading

EXHIBIT R            List of Sarvey Sell Stop Orders

EXHIBIT S            Sarvey Brokerage Card

EXHIBIT T            Sklena Trading Card #916

EXHIBIT U            Flannery Trading Card

EXHIBIT U1           Flannery CBOT Settlement

EXHIBIT V            Foertsch Trading Card

EXHIBIT V1           Foertsch CBOT Settlement

EXHIBIT W            Sarvey Personal Trading Activity

EXHIBIT X            Chronology of Contract Execution

EXHIBIT Y            Sklena Profits

EXHIBIT Z            CBOT Rule 332.04

EXHIBIT AA           Sklena Trading Cards #914, #915

EXHIBIT BB           E-cbot Orders Entered by Sklena Offset

Date: January 9, 2008                    Respectfully submitted,

COMMODITY FUTURES TRADING
COMMISSION                               Camille M. Arnold

525 West Monroe Street, Suite 1100
Chicago, IL 60661
(312) 596-0700 (main)
(312) 596-0714 (facsimile)

Senior Trial Attorney
New York Bar No. 7868
(312) 596-0524
*carnold@cftc.gov*

# EXHIBIT
# A

 **Chicago Board of Trade**

**Paul J. Draths**
Vice President and Secretary

**VIA SIGNATURE MAIL**                          March 2, 2007
Edward C. Sarvey
1227 Acorn Street
Lemont, Illinois 60439-6429

Re:    **2005-INV-12D**

Dear Mr. Sarvey:

 Enclosed please find a copy of the amended Decision of the Hearing Committee in the above-referenced matter.

 In accordance with Board of Trade Regulation 540.12(e), you may appeal the Decision of the Committee to the Appellate Committee by filing a Notice of Appeal with the Secretary of the Board of Trade, located on the sixth floor of the CBOT Building, within ten (10) business days (i.e., March 16, 2007) from the date the Decision has been sent requesting that the Appellate Committee review the action taken by the Hearing Committee. Please note that if you do elect to appeal, you will be charged for the cost to prepare the transcript of the proceeding before the Hearing Committee, pursuant to CBOT Regulation 540.04. In the event that you do not seek Appellate Committee review of the Hearing Committee's decision within ten (10) business days, the actions will become final and effective on the dates specified in the Decision.

 Also enclosed is a copy of a Notice of the disciplinary action taken against you. In the event that the Decision becomes final, this Notice will be made public in compliance with Section 8c(a)(2) of the Commodity Exchange Act, as amended, and CFTC Regulation 9.13. Also, in accordance with CFTC Regulation 9.11(b) and Chicago Board of Trade Regulation 560.01, the Notice will be made available to an Internet-accessible computer database at the National Futures Association.

 Furthermore, in accordance with Section 8c(b) of the Commodity Exchange Act, as amended, you may request that the Commission review the action taken by the Exchange.

       Very truly yours,

       *Paul Draths*

       Paul J. Draths
       Vice President and Secretary

cc:    Anne Polaski
  Scott E. Early

**EXHIBIT
A**

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
312 435-3605

# ◉ Chicago Board of Trade
### NOTICE

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
**TEL:** 312 435 3500

**CHICAGO BOARD
OF TRADE**

| | |
|---|---|
| Respondent: | SARVEY, EDWARD CHARLES |
| NFA ID Number: | 0211121 |
| Case Number: | 2005-INV-12D |
| Date Action Is Final: | March 16, 2007 |
| Date Action Is Effective: | March 23, 2007 |
| Disposition: | Adjudicated |
| Barrable: | Yes |
| Committee: | HEARING COMMITTEE |
| Penalty: | $175000 fine<br>Floor Access Denied for 60 BDAY.<br>DENIED ELECTRONIC TRADING ACCESS for 60 BDAY. |
| Rules: | CBOT332.00 - ORDERS MUST BE EXECUTED IN THE MARKET<br>CBOT332.01 - OPEN MARKET EXECUTION REQUIREMENT<br>CBOT350.05(a) - FLOOR PRACTICES<br>CBOT350.05(e) - FLOOR PRACTICES<br>CBOT350.05(i) - FLOOR PRACTICES<br>CBOT350.05(k) - FLOOR PRACTICES<br>CBOT500.00 - INEQUITABLE PROCEEDING<br>CBOT504.00 - ACTS DETRIMENTAL TO THE ASSOCIATION |

**Description of Conduct:**

the Hearing Committee concludes that Sarvey violated the following CBOT Rules and Regulations:

Rule 332.00 and Regulation 332.01, in that Sarvey participated in the non-competitive execution of 5-Year T-Note futures contracts, not by open outcry or in the open market;

Regulation 350.05(a), in that Sarvey traded ahead of executable customer orders;

Regulation 350.05(e), in that Sarvey indirectly traded opposite customer orders;

Regulation 350.05(i), in that Sarvey bought and sold 5-Year T-Note futures contracts as an accommodation;

Regulation 350.05(k), in that Sarvey allocated execution in other than an equitable manner;

Rule 500.00, in that Sarvey engaged in inequitable proceedings; and

Rule 504.00, in that Sarvey engaged in acts detrimental to the interest and welfare of the Association.



# Chicago Board of Trade

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
**TEL:** 312 435 3500

## BEFORE THE HEARING COMMITTEE

## OF THE BOARD OF TRADE

## OF THE CITY OF CHICAGO

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| | ) **AMENDED** |
| Edward C. Sarvey, | ) **DECISION** |
| | ) **2005-INV-12D** |
| an Associate Member. | ) |
| | ) |

## <u>NATURE OF THE CASE</u>

On October 17, 2005, the Floor Governors Committee of the Board of Trade of the City

of Chicago ("CBOT®") issued preliminary charges against Edward C. Sarvey ("Sarvey"), an

Associate Member and a dual trader in the 5-Year U.S. Treasury Note futures pit. The

preliminary charges alleged that on September 5, 2003, January 9, 2004, January 28, 2004,

March 5, 2004 and April 2, 2004, Sarvey participated in the non-competitive execution of 5-year

Note contracts, not by open outcry or in the open market in violation of CBOT Rules 332.00 and

CBOT Regulation 332.01[1], that Sarvey traded ahead of executable customer orders, in violation

of CBOT Regulation 350.05(a), that Sarvey indirectly traded opposite customer orders, in

violation of CBOT Regulation 350.05(e), that Sarvey withheld orders from the market, in

violation of CBOT Regulation 350.05(g), that Sarvey bought and sold 5-Year Note futures

contracts as an accommodation, in violation of CBOT Regulation 350.05(i), that Sarvey

allocated execution in other than an equitable manner, in violation of CBOT Regulation

---

[1] CBOT Regulation 332.01 was repealed effective September 1, 2006,
http://www.cftc.gov/files/submissions/rules/selfcertifications/2006/rul082806cbot001.pdf but was in effect between
September 2003 and April 2004 in the following form:
    **332.01 Open Market Execution Requirement—**All futures transactions resulting in change of ownership
(except those involving the exchange of futures in cash transactions or those executed pursuant to Regulation
331.05) must be made in the open market in the manner prescribed by Rules 332.00 and 310.00.

Edward Sarvey                             2                              DECISION

350.05(k), that Sarvey engaged in inequitable proceedings, in violation of CBOT Rule 500.00;

and that Sarvey engaged in acts which may be detrimental to the interest and welfare of the

Association, in violation of CBOT Rule 504.00. By letter dated October 17, 2005, Sarvey was

notified of the charges, his right to a hearing, and of his right to have an attorney represent him at

the hearing. Prior to the hearing, the Office of Investigations and Audits ("OIA") advised Mr.

Sarvey that it would not proceed on the charges related to the January 28, 2004 transactions. On

January 8, 9, 10 and 11, 2007, a panel of the CBOT Hearing Committee held a joint hearing on

the preliminary charges against Mr. Sarvey and three co-respondents.

## SUMMARY OF THE EVIDENCE

At the hearing held on January 8, 9 10 and 11, 2007, the Office of Investigations and

Audits, ("OIA") through its attorney, Anne Polaski, presented the testimony of Joseph Bonfitto,

a former CBOT member, Jennifer Baum, Managing Director of Investigations, OIA, and

Victoria Batka, Assistant Supervisor, OIA. Mr. Sarvey, through his attorney, Scott Early, was

given the opportunity to cross-examine OIA's witnesses, and they were also questioned by the

members of the Committee. On behalf of Mr. Sarvey and his co-respondents, Mr. Early

presented the testimony of the following witnesses: Jerry Jeske, Michael Hallin, William Malek,

David Sklena, Erika Gannon, Joe Fusco, Richard Sklena, Kevin Weiner and Pat Shea. Mr.

Sarvey also testified on his own behalf. The respondents' witnesses were were subject to cross-

examination by OIA and to questioning by the members of the Committee.


OIA presented 107 documentary, summary and demonstrative exhibits, as well as

original and enhanced audio recordings of five headset lines in the southeast corner of the CBOT

5-Year U.S. T-Note futures pit from 7:19:58 a.m. to 7:42:09 a.m. on April 2, 2004, which were

Edward Sarvey                                    3                                    DECISION

received into evidence.

The respondents presented 37 documentary, summary and demonstrative exhibits, which were
also received into evidence. The Committee also took official notice of various rules and rulings
of the CBOT and CBOT committees.

## FINDINGS OF FACT

On the basis of all the evidence presented, the Hearing Committee finds as true the

following facts:

At all times relevant to these charges, Sarvey was an Associate Member and a dual trader

in the 5-Year U.S. Treasury Note Futures ("5-Year T-Note") pit.

1.     On April 2, 2004, at approximately 7:30 a.m., the Bureau of Labor Statistics
("BLS") released the March 2004 employment data. Prior to the release, between approximately
7:28 and 7:29, the price of the June 2004 5-Year T-Note contract declined from approximately
113.040 to 112.220 in the pit, and then traded higher to 112.260. Following the release, prices
broke still more sharply, with the pit's low of 111.050 quoted at 7:31:35. The market
subsequently rallied off its lows and was quoted at 112.050 at 7:36:07. The market was
designated FAST throughout the referenced period.

Prior to the release of the employment number, Mr. Sarvey purchased 235 June 2004 5-Year T-
Note Note contracts and sold 50 June 2004 5-Year Note contracts at 112.220, the low of the pre-
number break, for his personal account opposite William Malek, an Associate Member delegate
who worked primarily as a clerk and back-up broker for Mr. Sarvey, and who had access to the
orders entered on the EC registered to Mr. Sarvey. Mr. Malek's 235-lot sale was comprised of
30 sell stop orders that included orders with stop prices of 113.020 down to 112.230; Mr. Malek
had acquired these orders from the EC device registered to Mr. Sarvey. Mr. Malek's 50-lot
purchase was executed for his personal trading account. The trades for Mr. Sarvey's account
were recorded on his trading card #502.

Michael Hallin, a clerk employed by Mr. Sarvey, managed the EC device registered to Mr.
Sarvey. On a tape recorded headset line, between approximately 7:28:41 and 7:29:01, Mr. Hallin
inquired as to the low of the pre-number move. At approximately 7:29:08, upon confirming that
the low was 112.220, Mr. Malek had been given a printout of all of the EC sell stop orders
accepted at the EC registered to Mr. Sarvey. Mr. Malek's folded the printout in a way that

Edward Sarvey                                4                                DECISION

allowed him to see the 30 orders that he executed against Mr. Sarvey. Mr. Hallin said, "112.220...235 sells", thereby communicating the instructions for the stop orders that had been elected on the market break to 112.220. The market was bid higher than 112.220 at this time and thereafter until 7:30.

BY REASON OF THE FOREGOING, the Hearing Committee concludes that Sarvey violated the following CBOT Rules and Regulations:

Rule 332.00 and Regulation 332.01, in that Sarvey participated in the non-competitive execution of 5-Year T-Note futures contracts, not by open outcry or in the open market;

Regulation 350.05(e), in that Sarvey indirectly traded opposite customer orders;

Regulation 350.05(i), in that Sarvey bought and sold 5-Year T-Note futures contracts as an accommodation;

Rule 500.00, in that Sarvey engaged in inequitable proceedings; and

Rule 504.00, in that Sarvey engaged in acts detrimental to the interest and welfare of the Association.

2.    Following the release of the employment number at 7:30 a.m. on April 2, 2004, Mr. Sarvey sold 2,474 June 2004 5-Year Note futures contracts at 111.065 for stop orders received at the EC registerd to him. The stop prices on those orders ranged from 112.195 to 111.065. Of these 2,474 contracts, 2,274 were sold to David G. Sklena (DSG), and 100 contracts each were sold to Steven A. Foertsch (SFX) and John F. Flannery (FLZ). Mr. Sarvey then purchased 485 contracts at 111.070 for his personal trading account from David Sklena. That trade was recorded on Mr. Sarvey's trading card #503.

The headset recordings related to the orders indicate that Mr. Hallin totaled the quantity of elected stops after 7:33, by which time the market was trading well above 111.065. Shortly thereafter, Mr. Hallin said, "I need you to sell 2,474," thereby communicating the instructions for the stop orders that had been elected on the market break. The headset recordings did not reflect any dialogue indicating that Mr. Sarvey executed the stop orders for 2,474 contracts during the time frame the fill price would have been active. The fill price of 111.065 was confirmed to Mr. Hallin at approximately 7:37:13, and Mr. Hallin quick-filled the orders on the EC at 7:37:27.

Mr. Sklena and Mr. Foertsch recorded their trades opposite Mr. Sarvey's stop orders out of sequence on their personal trading cards, and Mr. Sarvey, Mr. Sklena, Mr. Foertsch and Mr. Flannery offset the positions related to the referenced trades after 7:37.

Edward Sarvey                                    5                          DECISION

3.    On April 2, 2004, Mr. Sarvey filled Man order #275, to buy 1 June 2004 5-Year futures contract at 112.160 limit and Refco order #6560, to buy 1 June 2004 5-Year futures contract at 112.035 limit, opposite Mr. Foertsch at a price of 112.020. Both orders were timed in before the open and entered via the EC registered to Mr. Sarvey. At approximately 7:37:50, Mr. Hallin gave Mr. Sarvey oral instructions corresponding to these orders. Mr. Sarvey's 485-lot purchase at 111.070 for his personal account (referred to in paragraph 2) was made at a time when the two referenced buy limit orders placed with him were executable.

BY REASON OF THE FOREGOING, the Hearing Committee concludes that Sarvey violated the following CBOT Rules and Regulations:

Rule 332.00 and Regulation 332.01, in that Sarvey participated in the non-competitive execution of 5-Year T-Note futures contracts, not by open outcry or in the open market;

Regulation 350.05(a), in that Sarvey traded ahead of executable customer orders;

Regulation 350.05(e), in that Sarvey indirectly traded opposite customer orders;

Regulation 350.05(i), in that Sarvey bought and sold 5-Year T-Note futures contracts as an accommodation;

Rule 500.00, in that Sarvey engaged in inequitable proceedings; and

Rule 504.00, in that Sarvey engaged in acts detrimental to the interest and welfare of the Association.

In light of the undisputed evidence of the extraordinarily hectic conditions in the pit on the morning of April 2, 2004, the Committee finds that OIA did not sustain its burden of proving that Mr. Sarvey intended to "withhold any order from the market for the benefit of any person other than the person placing the order," in violation of Regulation 350.05(g).

4.    On March 5, 2004, the June 5-Year futures contract opened in a range from 112.035 to 112.040. At 7:30 a.m., the BLS released the February 2004 employment data, and the market rallied under FAST conditions from 112.050 at 7:29:49 to 113.030 at 7:31:10. During the rally, Mr. Sarvey filled 33 buy stop orders with stop prices from 112.085 to 112.280. Mr. Sarvey did not allocate fills to these orders in accordance with the price and time priority of the orders.

Edward Sarvey                              6                              DECISION

Mr. Sarvey purchased 10 contracts at 112.100, 3 contracts at 112.230, 59 contracts at 112.260 and 109 contracts at 113.030 during this period. Three of the ten contracts at 112.100 were allocated to his paper buy stop orders, while the remaining seven contracts cleared in his personal account. At the price of 112.100, Mr. Sarvey had executable orders for 14 contracts, 11 of which were subsequently filled at 113.03.

BY REASON OF THE FOREGOING, the Hearing Committee concludes that Sarvey

violated the following CBOT Rules and Regulation:

Regulation 350.05(a), in that Sarvey traded ahead of executable customer orders;

Regulation 350.05(k), in that Sarvey allocated execution in other than an equitable manner;

5.    On September 5, 2003, the December 2003 5-Year Note futures contract began to rally prior to the BLS' release of August 2003 employment data, trading from 109.315 at 7:25:28 to 110.165 at 7:33:11. The market did not trade below 110.125 for the remainder of the session. Mr. Sarvey filled ten buy stop orders during the rally at six different stop price levels ranging from 110.015 to 110.135. Seven of these orders were EC orders that totaled 78 contracts.

Mr. Sarvey purchased the following quantities during the market rally: 1 contract at 110.090, 85 contracts at 110.115, 78 contracts at 110.135 and 14 contracts at 114.145. The 1-lot trade at 110.090 was allocated to a paper stop order with a stop price of 110.030; however, 4 contracts for an EC stop order priced at 110.015 were elected at that time and were filled at 110.135. Additionally, the 85 contracts at 110.115 were allocated to a paper stop order with a stop price of 110.080; however, 53 contracts for EC stop orders with stop prices at 110.030 and 110.035 were elected at that time and were subsequently filled at 110.135.

BY REASON OF THE FOREGOING, the Hearing Committee concludes that Sarvey

violated the following CBOT Regulations:

Regulation 350.05(a), in that Sarvey traded ahead of executable customer orders;

Regulation 350.05(k), in that Sarvey allocated executions in other than an equitable manner;

6.    On January 9, 2004, the March 5-Year Note futures contract opened in a range of 111.235 to 111.230 and subsequently declined under FAST market conditions from 111.235 at 7:27:47 to a low of 111.180 at 7:30:22 before rallying to 112.210 at 7:32:14.

Edward Sarvey 7 DECISION

Mr. Sarvey had buy stop orders with stop prices between 111.250 and 112.200 that were elected during this period and did not allocate his executions in accordance with the price and time priority of the orders.

Additionally, Mr. Sarvey purchased 135 contracts at 112.150 for his personal account (trading card #380) during this period; however, elected and executable stop orders to buy 99 contracts with stop prices between 112.035 and 112.20 (OIA Ex. 97, Resp. Ex. 29) remained unfilled at the time of these personal trades and were subsequently filled between 112.155 and 112.20.

BY REASON OF THE FOREGOING, the Hearing Committee concludes that Sarvey violated the following CBOT Regulations:

Regulation 350.05(a), in that Sarvey traded ahead of executable customer orders; and

Regulation 350.05(k), in that Sarvey allocated execution in other than an equitable manner.

7. The preliminary charge letter contained allegations relating to transactions that took place on January 28, 2004. No evidence was presented with respect to those allegations and those charges are hereby dismissed.

## PENALTY

Based upon the record in this matter and the findings and conclusions set forth above, the Hearing Committee hereby orders that Sarvey be fined in the amount of one hundred and seventy-five dollars ($175,000), and be denied access to the trading floor and the CBOT's electronic trading system for sixty (60) consecutive business days for the violations of CBOT Rules 332.00, 500.00 and 504.00, and Regulations 332.01, 350.05(a), 350.05(e), 350.05(i) and 350.05(k) described above. In the event that Sarvey appeals from this order, he is obliged, pursuant to CBOT Regulation 540.04, to pay the cost of the transcription of the record of the proceedings in this matter. Any appeal of this matter shall not proceed until he pays for the transcript.

Edward Sarvey                          8                          DECISION

## MOTION FOR RECONSIDERATION OF SANCTIONS

On January 24, 2007, OIA moved for reconsideration of the sanctions imposed on Mr. Sarvey. On February 1, 2007, the Committee stayed its January 19, 2007 decision and rescinded the final and effective dates set forth therein, pending the disposition of OIA's motion, and directed Mr. Sarvey to respond in writing to OIA's motion by February 14, 2007. Mr. Sarvey's response opposed OIA's motion and argued that the charges against him should be dismissed. The Committee met to consider the motion and the parties' written submissions on February 28, 2007. Neither party has persuaded the Committee that its January 19, 2007 decision was manifestly erroneous, and OIA's motion is therefore denied. Pursuant to CBOT Regulation 540.07, this Decision will become final on March 16, 2007, and effective on March 23, 2007, unless Mr. Sarvey submits a timely Notice of Appeal.

FOR THE HEARING COMMITTEE

Raymond Czupek
Hearing Panel Chairman

Date:   March 2, 2007

# EXHIBIT
# B

2002-INV-15B
2002-INV-30B

# ⊚ Chicago Board of Trade

## NOTICE

CBOT

| | |
|---|---|
| Respondent: | SARVEY, EDWARD CHARLES |
| NFA ID Number: | 0211121 |
| Reference Number: | 2002-INV-15B<br>2001-INV-30B |
| Date Action Is Final: | 12/06/2002 |
| Date Action Is Effective: | 12/06/2002 |
| Disposition: | Settled |
| Barrable: | Yes |
| Committee: | FLOOR GOVERNORS COMMITTEE |
| Penalty: | $25000 fine<br>Floor Access Denied for 5 BDAY from 12/16/2002 to 12/20/2002. |
| Rules: | CBOT504.00 - ACTS DETRIMENTAL TO THE ASSOCIATION<br>CBOT350.07 - CONFIRMING & RECORDING TRADES<br>CBOT480.10 - EMPLOYER SUPERVISION OF EMPLOYEES<br>CBOT332.01 - OPEN MARKET EXECUTION REQUIREMENT<br>CBOT332.00 - ORDERS MUST BE EXECUTED IN THE MARKET |

Description of Conduct:

Without admitting or denying any violation, Edward C. Sarvey consented to the entry of a conclusion that the Floor Governors Committee had reason to believe he violated:

Rule 332.00 and Regulation 332.01, in that he participated in the non-competitive execution of 5-Year futures contracts, not by open outcry or in the open market;

Regulation 350.07, in that he failed to confirm and record transactions with the opposite member within fifteen minutes;

Regulation 480.10, in that he failed to ensure compliance with the rules, regulations and bylaws of the Association by his employees; and

Rule 504.00, in that he engaged in acts which may be detrimental to the interest or welfare of the Association.

**EXHIBIT B**

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
312 435-3500

CFTC 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

# EXHIBIT
# C

**◉ Chicago Board of Trade**

Paul J. Draths
Vice President and Secretary

**VIA SIGNATURE MAIL**                    March 2, 2007
David G. Sklena
9237 Keeler Avenue
Skokie, Illinois 60076-1627

Re:    **2005-INV-12E**

Dear Mr. Sklena:

      Enclosed please find a copy of the amended Decision of the Hearing Committee in the above-referenced matter.

      In accordance with Board of Trade Regulation 540.12(e), you may appeal the Decision of the Committee to the Appellate Committee by filing a Notice of Appeal with the Secretary of the Board of Trade, located on the sixth floor of the CBOT Building, within ten (10) business days (i.e., March 16, 2007) from the date the Decision has been sent requesting that the Appellate Committee review the action taken by the Hearing Committee. Please note that if you do elect to appeal, you will be charged for the cost to prepare the transcript of the proceeding before the Hearing Committee, pursuant to CBOT Regulation 540.04. In the event that you do not seek Appellate Committee review of the Hearing Committee's decision within ten (10) business days, the actions will become final and effective on the dates specified in the Decision.

      Also enclosed is a copy of a Notice of the disciplinary action taken against you. In the event that the Decision becomes final, this Notice will be made public in compliance with Section 8c(a)(2) of the Commodity Exchange Act, as amended, and CFTC Regulation 9.13. Also, in accordance with CFTC Regulation 9.11(b) and Chicago Board of Trade Regulation 560.01, the Notice will be made available to an Internet-accessible computer database at the National Futures Association.

      Furthermore, in accordance with Section 8c(b) of the Commodity Exchange Act, as amended, you may request that the Commission review the action taken by the Exchange.

                            Very truly yours,

                            *Paul J. Draths*

                            Paul J. Draths
                            Vice President and Secretary

cc:    Anne Polaski
       Scott E. Early

**EXHIBIT**
**C**

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
312 435-3605

# Chicago Board of Trade
### NOTICE

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
TEL: 312 435 3500

**CHICAGO BOARD
OF TRADE**

| | |
|---|---|
| **Respondent:** | **SKLENA, DAVID GEORGE** |
| **NFA ID Number:** | **0202835** |
| **Case Number:** | **2005-INV-12E** |
| **Date Action Is Final:** | **March 16, 2007** |
| **Date Action Is Effective:** | **March 23, 2007** |
| **Disposition:** | **Adjudicated** |
| **Barrable:** | **Yes** |
| **Committee:** | **HEARING COMMITTEE** |
| **Penalty:** | **$125000 fine**<br>**Floor Access Denied for 75 BDAY.**<br>**DENIED ELECTRONIC TRADING ACCESS for 75 BDAY.** |
| **Rules:** | **CBOT332.00 - ORDERS MUST BE EXECUTED IN THE MARKET**<br>**CBOT332.01 - OPEN MARKET EXECUTION REQUIREMENT**<br>**CBOT350.05(i) - FLOOR PRACTICES**<br>**CBOT500.00 - INEQUITABLE PROCEEDING**<br>**CBOT504.00 - ACTS DETRIMENTAL TO THE ASSOCIATION** |

Description of Conduct:

The Hearing Committee concludes that Sklena violated the following CBOT Rules and Regulations:

Rule 332.00 and Regulation 332.01, in that Sklena participated in the non-competitive execution of 5-Year T-Note futures contracts, not by open outcry or in the open market;

Regulation 350.05(i), in that Sklena bought and sold 5-Year T-Note contracts as an accommodation;

Rule 500.00, in that Sklena engaged in inequitable proceedings; and

Rule 504.00, in that Sklena engaged in acts detrimental to the interest and welfare of the Association.

www.cbot.com

# ⬤ Chicago Board of Trade

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
TEL.: 312 435 3500

## BEFORE THE HEARING COMMITTEE

## OF THE BOARD OF TRADE

## OF THE CITY OF CHICAGO

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| | ) **AMENDED** |
| David G. Sklena, | ) **DECISION** |
| | ) **2005-INV-12E** |
| an Associate Member. | ) |
| | ) |

## <u>NATURE OF THE CASE</u>

On October 17, 2005, the Floor Governors Committee of the Board of Trade of the City of Chicago ("CBOT®") issued preliminary charges against David G. Sklena ("Sklena"), an Associate Member and a dual trader in the 5-Year U.S. Treasury Note futures pit. The preliminary charges alleged that on April 2, 2004, Sklena participated in the non-competitive execution of 5-year Note contracts, not by open outcry or in the open market in violation of CBOT Rules 332.00 and CBOT Regulation 332.01[1], that Sklena bought and sold 5-Year Note contracts as an accommodation, in violation of CBOT Regulation 350.05(i), that Sklena engaged in inequitable proceedings, in violation of CBOT Rule 500.00; and that Sklena engaged in acts which may be detrimental to the interest and welfare of the Association, in violation of CBOT Rule 504.00. By letter dated October 17, 2005, Sklena was notified of the charges, his right to a hearing, and of his right to have an attorney represent him at the hearing. On January 8, 9, 10

---

[1] CBOT Regulation 332.01 was repealed effective September 1, 2006,
http://www.cftc.gov/files/submissions/rules/selfcertifications/2006/rul082806cbot001.pdf but was in effect between September 2003 and April 2004 in the following form:
    **332.01 Open Market Execution Requirement**—All futures transactions resulting in change of ownership (except those involving the exchange of futures in cash transactions or those executed pursuant to Regulation 331.05) must be made in the open market in the manner prescribed by Rules 332.00 and 310.00.

David Sklena            2            DECISION

and 11, 2007, a panel of the CBOT Hearing Committee held a joint hearing on the preliminary charges against Mr. Sklena and three co-respondents.

## SUMMARY OF THE EVIDENCE

At the hearing held on January 8, 9, 10 and 11, 2007, the Office of Investigations and Audits, ("OIA") through its attorney, Anne Polaski, presented the testimony of Joseph Bonfitto, a former CBOT member, Jennifer Baum, Managing Director of Investigations, OIA, and Victoria Batka, Assistant Supervisor, OIA. Sklena, through his attorney, Scott Early, was given the opportunity to cross-examine OIA's witnesses, and they were also questioned by the members of the Committee. On behalf of Mr. Sklena and his co-respondents, Mr. Early presented the testimony of the following witnesses: Jerry Jeske, Michael Hallin, William Malek, Edward Sarvey, Erika Gannon, Joe Fusco, Richard Sklena, Kevin Weiner and Pat Shea. Mr. Sklena also testified on his own behalf. The respondents' witnesses were subject to cross-examination by OIA and to questioning by the members of the Committee.

OIA presented 107 documentary, summary and demonstrative exhibits, as well as original and enhanced audio recordings of five headset lines in the southeast corner of the CBOT 5-Year T-Note pit from 7:19:58 a.m. to 7:42:09 a.m. on April 2, 2004, which were received into evidence. The respondents presented 37 documentary, summary and demonstrative exhibits, which were also received into evidence. The Committee also took official notice of various rules and rulings of the CBOT and CBOT committees.

David Sklena                                3                                DECISION

## FINDINGS OF FACT

On the basis of all the evidence presented, the Hearing Committee finds as true the following facts:

At all times relevant to these charges, Sklena was an Associate Member and a dual trader in the 5-Year U.S. Treasury Note Futures ("5-Year T-Note") pit.

On April 2, 2004, at approximately 7:30 a.m., the Bureau of Labor Statistics released the March 2004 employment data. Immediately prior to the scheduled release, June 2004 5-Year Notes were trading in the pit at approximately 112.260. Prices broke sharply following the release, with the pit's low of 111.050 quoted at 7:31:35. The market subsequently rallied off its lows and was quoted 112.050 at 7:36:07. The market was designated FAST throughout this period.

Following the release of the employment number at 7:30, Edward C. Sarvey (SRV) sold 2,474 contacts at 111.065 for stop orders entered via the electronic clerk ("EC"); the stop prices on the orders ranged from 112.195 to 111.065. Of the 2,474 contracts sold for the stop orders, 2,274 were executed opposite Mr. Sklena, and 100 contracts each were executed opposite Steven A. Foertsch (SFX) and John F. Flannery (FLZ). Mr. Sklena then sold 485 contracts at 111.070 to Mr. Sarvey, who allocated the trades to his personal account. The referenced trades opposite Mr. Sarvey were recorded on Mr. Sklena's trading card #916.

The headset recordings related to the orders indicate that Michael Hallin, Mr. Sarvey's clerk, totaled the quantity of elected stops after 7:33, by which time the market was trading well above 111.065. Shortly thereafter, Mr. Hallin said, "I need you to sell 2,474," thereby communicating the instructions for the stop orders that had been elected on the market break. The headset recordings did not reflect any dialogue indicating that Mr. Sarvey executed the EC stop orders during the time frame the fill price would have been active. The fill price was confirmed to Mr. Hallin at approximately 7:37:13, and Mr. Hallin quick-filled the orders on the EC at 7:37:27.

Mr. Sklena's 2,274-lot and 485-lot trades opposite Mr. Sarvey were recorded out of sequence on his personal trading card. Mr. Foertsch also recorded his side of the trade opposite Mr. Sarvey's stops out of sequence on his personal trading card. Additionally, the audit trail appears to indicate that Mr. Sklena offset the positions related to these trades after 7:37.

David Sklena                           4                                      DECISION

## CONCLUSION

BY REASON OF THE FOREGOING, the Hearing Committee concludes that Sklena

violated the following CBOT Rules and Regulations:

Rule 332.00 and Regulation 332.01, in that Sklena participated in the non-
competitive execution of 5-Year T-Note futures contracts, not by open outcry or in the open
market;

Regulation 350.05(i), in that Sklena bought and sold 5-Year T-Note contracts as an
accommodation;

Rule 500.00, in that Sklena engaged in inequitable proceedings; and

Rule 504.00, in that Sklena engaged in acts detrimental to the interest and welfare of the
Association.

## PENALTY

Based upon the record in this matter and the findings and conclusions set forth above, the

Hearing Committee hereby orders that Sklena be fined in the amount of one hundred twenty-five

thousand dollars ($125,000.00), and be denied access to the trading floor and the CBOT's

electronic trading system for seventy-five (75) consecutive business days for his violation of

CBOT Rules 332.00, 500.00 and 504.00, and Regulations 332.01 and 350.05(i). In the event that

Sklena appeals from this order, he is obliged, pursuant to CBOT Regulation 540.04, to pay the

cost of the transcription of the record of the proceedings in this matter. Any appeal of this matter

shall not proceed until he pays for the transcript.

David Sklena                    5                    DECISION

## MOTION FOR RECONSIDERATION OF SANCTIONS

On January 24, 2007, OIA moved for reconsideration of the sanctions imposed on Mr. Sklena. On February 1, 2007, the Committee stayed its January 19, 2007 decision and rescinded the final and effective dates set forth therein, pending the disposition of OIA's motion, and directed Mr. Sklena to respond in writing to OIA's motion by February 14, 2007. Mr. Sklena's response opposed OIA's motion and argued that the charges against him should be dismissed. The Committee met to consider the motion and the parties' written submissions on February 28, 2007. Neither party has persuaded the Committee that its January 19, 2007 decision was manifestly erroneous, and OIA's motion is therefore denied. Pursuant to CBOT Regulation 540.07, this Decision will become final on March 16, 2007, and effective on March 23, 2007, unless Mr. Sklena submits a timely Notice of Appeal.

FOR THE HEARING COMMITTEE

Raymond Czupek
Hearing Panel Chairman

Date: March 2, 2007

# EXHIBIT
# D

2001-INV-30A
2002-INV-15A

## ◎ Chicago Board of Trade

### NOTICE

CBOT

| | |
|---|---|
| Respondent: | SKLENA, DAVID GEORGE |
| NFA ID Number: | 0202835 |
| Reference Number: | 2001-INV-30A<br>2002-INV-15A |
| Date Action Is Final: | 2/28/2003 |
| Date Action Is Effective: | 2/28/2003 |
| Disposition: | Settled |
| Barrable: | Yes |
| Committee: | FLOOR GOVERNORS COMMITTEE |
| Penalty: | $25000 fine<br>Floor Access Denied for 15 BDAY |
| Rules: | CBOT504.00 - ACTS DETRIMENTAL TO THE ASSOCIATION<br>CBOT350.07 - CONFIRMING & RECORDING TRADES<br>CBOT332.01 - OPEN MARKET EXECUTION REQUIREMENT<br>CBOT332.00 - ORDERS MUST BE EXECUTED IN THE MARKET |

Description of Conduct:

Without admitting or denying any violation, David G. Sklena consented to the entry of a conclusion that the Floor Governors Committee had reason to believe that he violated:

Rule 332.00 and Regulation 332.01, in that he participated in the non-competitive execution of 5-Year futures contracts, not by open outcry or in the open market;

Regulation 350.07, in that he failed to confirm transactions with the opposite member within fifteen minutes; and

Rule 504.00, in that he engaged in acts which may be detrimental to the interest or welfare of the Association.

```
EXHIBIT
D
```

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994

# EXHIBIT
# E


## Time and Sales - Price Detail

### 5 Year Treasury Notes 04Jun for April 2, 2004   7:20 am - 8:00 am

| Date | Time | Contract | Type | Price | Correction | Seq # |
|------|------|----------|------|-------|------------|-------|
| Apr 2 | 07:20:10 | FV 04Jun | | 113055 | | 1 |
| Apr 2 | 07:20:12 | FV 04Jun | | 113050 | | 2 |
| Apr 2 | 07:20:28 | FV 04Jun | | 113055 | | 3 |
| Apr 2 | 07:20:52 | FV 04Jun | | 113050 | | 4 |
| Apr 2 | 07:21:35 | FV 04Jun | Open | 113055 113050 | | 5 |
| Apr 2 | 07:23:12 | FV 04Jun | | 113045 | | 6 |
| Apr 2 | 07:23:41 | FV 04Jun | | 113040 | | 7 |
| Apr 2 | 07:23:48 | FV 04Jun | | 113045 | | 8 |
| Apr 2 | 07:23:49 | FV 04Jun | | 113040 | | 9 |
| Apr 2 | 07:25:01 | FV 04Jun | | 113045 | | 10 |
| Apr 2 | 07:25:10 | FV 04Jun | | 113040 | | 11 |
| Apr 2 | 07:27:17 | FV 04Jun | | 113035 | | 12 |
| Apr 2 | 07:27:26 | FV 04Jun | | 113030 | | 13 |
| Apr 2 | 07:27:31 | FV 04Jun | | 113035 | | 14 |
| Apr 2 | 07:27:52 | FV 04Jun | Fast | 113040 | | 15 |
| Apr 2 | 07:28:50 | FV 04Jun | Fast | 111220 | Cancelled at 07:29:33 | 16 |
| Apr 2 | 07:29:04 | FV 04Jun | Fast | 112220 | | 17 |
| Apr 2 | 07:29:24 | FV 04Jun | Fast | 112260 | | 18 |
| Apr 2 | 07:30:34 | FV 04Jun | Fast | 112060 | | 19 |
| Apr 2 | 07:30:46 | FV 04Jun | Fast | 112090 | Cancelled at 09:05:00 | 20 |
| Apr 2 | 07:30:49 | FV 04Jun | Fast | 112135 | Cancelled at 09:05:10 | 21 |
| Apr 2 | 07:30:53 | FV 04Jun | Fast | 111135 | | 22 |
| Apr 2 | 07:31:03 | FV 04Jun | Fast | 111150 | | 23 |
| Apr 2 | 07:31:06 | FV 04Jun | Fast | 111170 | | 24 |
| Apr 2 | 07:31:12 | FV 04Jun | Fast | 111150 | | 25 |
| Apr 2 | 07:31:28 | FV 04Jun | Fast | 111070 | | 26 |
| Apr 2 | 07:31:35 | FV 04Jun | Fast | 111050 | | 27 |
| Apr 2 | 07:31:46 | FV 04Jun | Fast | 111035 | Cancelled at 07:35:04 | 28 |
| Apr 2 | 07:31:51 | FV 04Jun | Fast | 111135 | | 29 |
| Apr 2 | 07:32:09 | FV 04Jun | Fast | 111150 | | 30 |
| Apr 2 | 07:32:25 | FV 04Jun | Fast | 111200 | | 31 |
| Apr 2 | 07:32:31 | FV 04Jun | Fast | 111220 | | 32 |
| Apr 2 | 07:32:38 | FV 04Jun | Fast | 111230 | | 33 |
| Apr 2 | 07:32:44 | FV 04Jun | Fast | 111240 | | 34 |
| Apr 2 | 07:32:47 | FV 04Jun | Fast | 111250 | | 35 |
| Apr 2 | 07:33:06 | FV 04Jun | Fast | 111230 | | 36 |
| Apr 2 | 07:33:08 | FV 04Jun | Fast | 111250 | | 37 |
| Apr 2 | 07:33:11 | FV 04Jun | Fast | 111230 | | |

**EXHIBIT E**

**EXHIBIT 2a**

| | | | | | | |
|---|---|---|---|---|---|---|
| Apr 2 | 07:33:29 | FV 04Jun | Fast | 111240 | | 39 |
| Apr 2 | 07:33:38 | FV 04Jun | Fast | 111250 | | 40 |
| Apr 2 | 07:33:58 | FV 04Jun | Fast | 111240 | | 41 |
| Apr 2 | 07:33:59 | FV 04Jun | Fast | 111245 | | 42 |
| Apr 2 | 07:34:06 | FV 04Jun | Fast | 111235 | | 43 |
| Apr 2 | 07:34:09 | FV 04Jun | Fast | 111230 | | 44 |
| Apr 2 | 07:34:51 | FV 04Jun | Fast | 111255 | | 45 |
| Apr 2 | 07:35:08 | FV 04Jun | Fast | 111260 | | 46 |
| Apr 2 | 07:35:28 | FV 04Jun | Fast | 111300 | | 47 |
| Apr 2 | 07:35:48 | FV 04Jun | Fast | 112000 | | 48 |
| Apr 2 | 07:36:02 | FV 04Jun | Fast | 112020 | | 49 |
| Apr 2 | 07:36:03 | FV 04Jun | Fast | 112040 | | 50 |
| Apr 2 | 07:36:07 | FV 04Jun | Fast | 112050 | | 51 |
| Apr 2 | 07:36:51 | FV 04Jun | Fast | 112045 | | 52 |
| Apr 2 | 07:37:03 | FV 04Jun | Fast | 112030 | | 53 |
| Apr 2 | 07:37:10 | FV 04Jun | Fast | 112010 | | 54 |
| Apr 2 | 07:37:23 | FV 04Jun | Fast | 112020 | | 55 |
| Apr 2 | 07:37:24 | FV 04Jun | Fast | 112025 | | 56 |
| Apr 2 | 07:37:26 | FV 04Jun | Fast | 112020 | | 57 |
| Apr 2 | 07:38:09 | FV 04Jun | Fast | 112025 | | 58 |
| Apr 2 | 07:38:24 | FV 04Jun | Fast | 112030 | | 59 |
| Apr 2 | 07:38:56 | FV 04Jun | Fast | 112025 | | 60 |
| Apr 2 | 07:38:57 | FV 04Jun | Fast | 112020 | | 61 |
| Apr 2 | 07:39:15 | FV 04Jun | Fast | 112025 | | 62 |
| Apr 2 | 07:39:16 | FV 04Jun | Fast | 112030 | | 63 |
| Apr 2 | 07:39:30 | FV 04Jun | Fast | 112050 | | 64 |
| Apr 2 | 07:40:11 | FV 04Jun | Fast | 112060 | | 65 |
| Apr 2 | 07:40:12 | FV 04Jun | Fast | 112080 | | 66 |
| Apr 2 | 07:40:27 | FV 04Jun | Fast | 112070 | | 67 |
| Apr 2 | 07:40:40 | FV 04Jun | Fast | 112060 | | 68 |
| Apr 2 | 07:40:44 | FV 04Jun | Fast | 112055 | | 69 |
| Apr 2 | 07:41:14 | FV 04Jun | Fast | 112050 | | 70 |
| Apr 2 | 07:41:34 | FV 04Jun | Fast | 112030 | | 71 |
| Apr 2 | 07:42:11 | FV 04Jun | Fast | 112010 | | 72 |
| Apr 2 | 07:42:28 | FV 04Jun | Fast | 112005 | | 73 |
| Apr 2 | 07:42:30 | FV 04Jun | Fast | 112000 | | 74 |
| Apr 2 | 07:42:37 | FV 04Jun | Fast | 111315 | | 75 |
| Apr 2 | 07:42:51 | FV 04Jun | Fast | 111310 | | 76 |
| Apr 2 | 07:43:23 | FV 04Jun | Fast | 111305 | | 77 |
| Apr 2 | 07:43:29 | FV 04Jun | Fast | 111295 | | 78 |
| Apr 2 | 07:44:00 | FV 04Jun | Fast | 111300 | | 79 |
| Apr 2 | 07:44:32 | FV 04Jun | Fast | 111310 | | 80 |
| Apr 2 | 07:44:38 | FV 04Jun | Fast | 111305 | | 81 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Apr 2 | 07:44:39 | FV 04Jun | Fast | 111300 | | 82 |
| Apr 2 | 07:45:34 | FV 04Jun | Fast | 111280 | | 83 |
| Apr 2 | 07:45:57 | FV 04Jun | Fast | 111275 | | 84 |
| Apr 2 | 07:46:27 | FV 04Jun | Fast | 111270 | | 85 |
| Apr 2 | 07:46:55 | FV 04Jun | Fast | 111275 | | 86 |
| Apr 2 | 07:47:51 | FV 04Jun | Fast | 111250 | | 87 |
| Apr 2 | 07:48:27 | FV 04Jun | Fast | 111245 | | 88 |
| Apr 2 | 07:49:05 | FV 04Jun | Fast | 111250 | | 89 |
| Apr 2 | 07:49:50 | FV 04Jun | Fast | 111255 | | 90 |
| Apr 2 | 07:50:23 | FV 04Jun | Fast | 111260 | | 91 |
| Apr 2 | 07:51:01 | FV 04Jun | Fast | 111270 | | 92 |
| Apr 2 | 07:51:04 | FV 04Jun | Fast | 111275 | | 93 |
| Apr 2 | 07:51:15 | FV 04Jun | Fast | 111280 | | 94 |
| Apr 2 | 07:51:48 | FV 04Jun | Fast | 111275 | | 95 |
| Apr 2 | 07:52:28 | FV 04Jun | Fast | 111285 | | 96 |
| Apr 2 | 07:53:52 | FV 04Jun | Fast | 111290 | | 97 |
| Apr 2 | 07:53:55 | FV 04Jun | Fast | 111285 | | 98 |
| Apr 2 | 07:55:34 | FV 04Jun | | 111290 | | 99 |
| Apr 2 | 07:55:35 | FV 04Jun | | 111295 | | 100 |
| Apr 2 | 07:56:07 | FV 04Jun | | 111300 | | 101 |
| Apr 2 | 07:57:18 | FV 04Jun | | 111315 | | 102 |
| Apr 2 | 07:57:21 | FV 04Jun | | 112000 | | 103 |
| Apr 2 | 07:57:42 | FV 04Jun | | 112005 | | 104 |
| Apr 2 | 07:58:33 | FV 04Jun | | 112010 | | 105 |
| Apr 2 | 07:58:33 | FV 04Jun | | 112015 | | 106 |
| Apr 2 | 07:59:30 | FV 04Jun | | 112020 | | 107 |

Copyright © 2005.    Chicago Board of Trade.    All Rights Reserved.

# EXHIBIT F

1  activity in the 5-year pit on April 2nd, 2004?

2  **A.**   The case was prompted by the surveillance

3  observations of an individual in the investigations

4  department who was present in the 5-year pit on the

5  morning in question.   His surveillance observations

6  led him to believe that there may have been

7  noncompetitive trading activity regarding

8  Mr. Sklena and Mr. Sarvey.

9         Subsequent to that, we received an

10 anonymous referral suggesting that we review the

11 activity of John Flannery for the date in question.

12 **Q.**   Can you please refer to Exhibit 7 in the

13 OIA exhibit book.  Can you please identify this

14 document?

15 **A.**   This document is a diagram of the 5-year

16 treasury note futures pit with approximate pit

17 locations of certain individuals designated on

18 April 2nd of 2004.   Those locations were determined

19 or set based on testimony received during the

20 investigative phase of this case.

21 **Q.**   Where did Mr. Sarvey and Mr. Sklena stand

22 in relation to each other?

23 **A.**   Both members were located in the southeast

24 area of the pit.   Mr. Sarvey, whose acronym is

**EXHIBIT F**   46

1  S-A-R-V stood on the top step of the pit.

2  Mr. Sklena, whose acronym is D-S-G, mstood directly

3  to his right either on the top step or one step

4  down from the top step. His ECBOT terminal was

5  located one step down, so often he stood there.

6      Q.    What were Mr. Sarvey's and Mr. Sklena's

7  respective roles in the pit on April 2nd, 2004?

8      A.    Mr. Sarvey was a duel trader.  He traded

9  for his own account, both on ECBOT and in the pit,

10  as well as filled brokerage during this period.

11  Mr. Sklena was primarily a local, again, trading on

12  both platforms in the pit, as well as on ECBOT.

13      Q.    And did Mr. Sklena also fill orders?

14      A.    He occasionally filled orders, though that

15  was not his primary role.

16      Q.    How did Mr. Sarvey and Mr. Sklena access

17  the ECBOT market?

18      A.    Both of them had an ECBOT terminal of their

19  own.  Mr. Sarvey's was located directly in front of

20  him and as I said earlier, Mr. Sklena's was on that

21  second step, mounted on a railing there.

22      Q.    When did Steve Firch and John Flannery

23  stand in relationship to Mr. Sarvey?

24      A.    Mr. Firch, whose acronym is S-F-X, is in

47

1    the southeast corner of the pit as well. There was

2    a railing that separated, essentially, him and

3    Mr. Sklena.  So he was approximately two places to

4    Mr. Sarvey's right.  Mr. Flannery, whose acronym is

5    F-L-Z, stood directly to Mr. Sarvey's left on the

6    top step.

7        Q.    What were Mr. Firch's and Mr. Flannery's

8    roles in the pit in April 2004?

9        A.    Mr. Firch was primarily a broker, though he

10    as well traded in the pit as well as on ECBOT for

11    his own account.  Mr. Flannery was primarily a

12    local and he traded as well on both platforms.

13        Q.    Can you describe the role of Mr. Malek and

14    where he stood in relationship to Mr. Sarvey?

15        A.    Sure.  Mr. Malek's acronym was W-B-F.  At

16    one time he was an employee of Mr. Sarvey, however

17    on this date they had a loose relationship whereby

18    he provided backup brokerage services to Mr. Sarvey

19    as well as acted in a clerical capacity for

20    Mr. Sarvey.

21        MR. EARLY: Mr. Chairman, at this point I'm not

22    going to object to this witness' description of

23    what others do for a living and how they function,

24    as long as the understanding is this is her

Sullivan Reporting Company

1     MS. PULASKI: And the original version.

2                        (Audio recording played.)

3   BY MS. PULASKI:

4     Q.   Where was the screen market quote between

5   7:31:23 and 7:31:29?

6     A.   The screen market had hit it's lowest of

7   111.04 and a half and was trading up at that point

8   to as high as 111.13 and a half.

9     Q.   Referring to Page 17 in the transcript,

10  where was the pit quote at around this period,

11  7:31:23 to 7:31:29?

12    A.   7:31:28 an open auction price quote was

13  made at 111.07 and that is followed at 7:31:35 by a

14  quote of 111.05 and that is the pit low, that

15  111.05 price.

16    Q.   Up until this point, did you hear any

17  reference on the recordings to the 2474 contracts

18  sold by Mr. Sarvey at 111.06 and a half for the EC

19  stops?

20    A.   None.

21    Q.   Can you refer to Exhibit 48 and identify

22  that exhibit?

23    A.   Exhibit 48 is Mr. Sklena's next consecutive

24  trading card, No. 915, from April 2nd.

                                                      120

1    during the time period in this excerpt?

2        A.    111.23 and a half.

3        Q.    So at this point had the market rallied

4    well off it's lowest?

5        A.    Yes, that's correct.

6        Q.    Can you turn to Exhibit 52 and identify

7    this exhibit?

8        A.    This is Mr. Sklena's next personal trading

9    card No. 916 from April 2nd of 2004 with the

10   clearing records on the right-hand side.

11       Q.    And can you walk us through the first five

12   trades on that card?

13       A.    Sure.  The first transaction is a sale of

14   81 contracts at 111.25 and a half opposite

15   Mr. Firch.  Mr. Firch was filling an order that was

16   time stamped in at 7:35:07. The next transaction is

17   the purchase of 200 contracts at 112.06 opposite

18   Mr. Sarvey. Mr. Sarvey was filling an order that

19   was time stamped at 7:36:12.

20              The next transaction is the purchase of

21   2274 contracts at 111.06 and a half, opposite

22   Mr. Sarvey.  That's followed by the sale of 485

23   contracts at 111.07, opposite Mr. Sarvey's personal

24   account.  The next trade is a sale of 150 contracts

1    at 112.02 and a half, also opposite Mr. Sarvey,

2    opposite an order that was in at 7:38:10.

3            And then the last trade on that card is

4    the sale of 10 contracts at 112.03 opposite

5    Mr. Firch, an order that was in at 7:39:38.

6        Q.   Can you refer back to 33 for a minute,

7    Exhibit 33.  And what was the total quantity of the

8    EC stop orders Mr. Sarvey had to execute?

9        A.   The orders in blue, there were 2,474.

10       Q.   And what was the range of the stop levels?

11       A.   They range from 112.19 and a half down to

12   111.06 and a half.

13       Q.   Whom did Mr. Sarvey execute these orders

14   with?

15       A.   2274 were done opposite Mr. Sklena; 100

16   opposite Mr. Flannery and 100 opposite Mr. Firch.

17       Q.   And when were these orders elected in time

18   and sales?

19       A.   They were elected at different times

20   starting at 7:05:41 -- I'm sorry, the election time

21   is 7:30:34.  And the last election time was 7:31:35

22   which was the time of the low quote of 111.05 in

23   the open outcry time and sales.

24       Q.   Can you turn back to Exhibit 32.  When was

125

1  the fill price of 111.06 and a half active?

2   **A.**   The fill price specifically was not quoted,

3  but based on the fast market regulations, it would

4  have been active during two time frames.  If you

5  look at the time and sales representation on the

6  right side, that 6 and a half quote would have been

7  active on the way down between the 7:31:28 quote of

8  111.07 and the 7:31:35 quote of 111.05.

9       On the way up, the 06 and a half quote

10  would have been active between 7:31:35 and the next

11  quote at 7:31:51.  So in total you are talking

12  about from 7:31:28 to 7:31:51.

13   **Q.**   Can you refer now to Exhibit 53 and

14  identify that exhibit?

15   **A.**   Exhibit 53 is Mr. Sarvey's brokerage card

16  No. 83 from April 2nd.  This is the card on which

17  the execution of the 2474 contracts for the stop

18  orders is recorded, with the instructions at the

19  top and the three breakdowns of the individuals he

20  traded with on the card.

21   **Q.**   And what is the top left?

22   **A.**   As I said, the total of the quantity, 2474.

23   **Q.**   Can you turn back to the transcript and go

24  to Page 8, pit time 7:25:41, near the bottom.  What

126

1      THE WITNESS:  At 7:33:20 on Mr. Hallin's line

2   you hear him say, Hey, I added up all my stops at.

3   7:33, Down to -- and at 7:33:24, 7.  At 7:33:25 in

4   orange Mr. Hallin says, I need to sell 2478, it

5   comes out to, down to, uh, 03.

6      MS. PULASKI: This segment is Exhibit 55.

7            Mr. Silvas, would you play the cleaned

8   version of Segment 21.

9                    (Audio recording played.)

10     MS. PULASKI: The original version.

11                   (Audio recording played.)

12   BY MS. PULASKI:

13     Q.   Was this the first reference you heard on

14   the recordings to the EC stops that were elected in

15   the post number break?

16     A.   Yes.

17     Q.   And where was the screen trading during

18   this dialogue?

19     A.   The ECBOT market is trading from 111.23 to

20   111.24.

21     Q.   And what about the pit?

22     A.   There is an open auction quote at 7:33:29

23   of 111.24 and I believe the quote that preceded

24   that was 111.23.

                                            131

1  and a half.

2           And then you flip to the next page, at

3  7:36:59 Mr. Hallin asks, Should I fill them at 6

4  and a half?  Again, he asks at 7:37:08, Can I fill

5  this at 06 and a half?  To which he appears to

6  receive an affirmative response.  And at 7:37:14

7  Mr. Hallin says, 111.06 and a half.

8      Q.    Where was the market trading at that time?

9      MR. EARLY: Objection, again, clarification of

10  which market.

11  BY MS. PULASKI:

12      Q.    The screen market.

13      A.    The 7:37:14 the screen market was 112.02 to

14  112.02 and a half.

15      Q.    And where was the pit market?

16      A.    The pit market was last quoted at 112.01 at

17  7:37:10 and following that at 7:37:23 there was a

18  112.02 quote.

19      Q.    And did you previously testify that the

20  2474 EC stops were quick filled 3 seconds later at

21  7:37:27?

22      A.    Yes, that's correct.

23      Q.    Did it appear to you that the EC stop

24  orders had been executed at the time the market was

135

1   trading in the vicinity of 111.06 and a half?

2     MR. EARLY: Objection, we've gone over this, this

3   is the same question I objected to previously.

4     CHAIRMAN CZUPEK: It's only an opinion and she

5   phrased the question that way.  Well, you didn't

6   say opinion, but you said does it appear, so we're

7   going to let it continue.  We want to keep going

8   through this a little bit.

9     THE WITNESS: At 7:34:10 Mr. Hallin first says,

10  the quantity 2474.  And by this point the market

11  had obviously rallied well off the 111.06 and a

12  half quote. And he continually says, I need you to

13  sell, I could go -- sell all the way down to 3 and

14  a half.  And uses language that to me indicates

15  that he had not in fact filled the orders.

16          Mr. Sarvey also asks at that point,

17  what's the lowest stop order.  All that suggests to

18  me that the orders had not yet been executed and

19  were filled much later when the market had rallied

20  and was trading at a much higher level.

21    Q.   You testified earlier that the trade

22  following the 2274 lot on Mr. Sklena's card 916 was

23  a sale 485 at 111.07 opposite Mr. Sarvey's personal

24  account; is that correct?

136

1   the 2274 and the 485 are actually factored into

2   Mr. Sklena's count and that's the plus 3130.  And

3   then that follows through and the counts remain

4   consistent throughout the rest of the cards that

5   are represented in this exhibit.  So it's not until

6   this card 916 that those transactions are factored

7   into Mr. Sklena's count.

8       Q.    Can you identify Exhibit 64?

9       A.    Exhibit 64 is a chart that calculates

10  Mr. Sklena's profit on the offset of the 2274

11  purchase from Mr. Sarvey of 111.06 and a half.  And

12  it's calculated on a FIFO, first in, first out

13  basis.

14      Q.    And what was Mr. Sklena's profit on the

15  trade?

16      A.    His profit was $1,652,187.50.

17      MS. PULASKI: I think this is a good stopping

18  point for us.

19      CHAIRMAN CZUPEK: Ms. Pulaski, are you done with

20  this witness?

21      MS. PULASKI: Unfortunately, no.  We are about

22  three-quarters done with her.

23      CHAIRMAN CZUPEK: Can I have a discussion with

24  the Committee, if you don't mind, for a few

154

1  contracts at 111.30 in the pit, which leaves him

2  with a short 4 lot position at that point.

3      Q.   What was Mr. Sarvey's profit on the 485 lot

4  he purchased from Mr. Sklena at 111.07?

5      A.   It's represented on the right-hand side on

6  a first in first out basis, he made $357,250.

7      Q.   Does it appear that any of the four

8  participants involved in the 2474 and 485 lot

9  trades offset the resulting personal positions

10 prior to 7:37?

11     A.   No, they were all offset between 7:37 and

12 7:44.

13     Q.   Would you please turn to Exhibit 72 and

14 identify this exhibit.

15     A.   Exhibit 72 is a Mann EC order No. 275, an

16 order that was received on Mr. Sarvey's EC.  It's

17 an order to buy one contract at a limit price of

18 112.16.  It was accepted on the EC at 7:05:41

19 mfilled at a price of 112.02 by Mr. Sarvey opposite

20 Mr. Firch.

21     Q.   That's 72A?

22     A.   Yes, that's 72A.

23     Q.   And what is 72B?

24     A.   72N is a Revco order.  It is an order to

171

1   position and then at 7:43:47 Mr. Sarvey beginning

2   offsetting his position of the 485 by 100

3   transaction.

4       Q.   At 7:37:14, when Mr. Hallin firms that all

5   of the EC stops should be filled at 111.06 and a

6   half, where was the market trade, the screen

7   market?

8       A.   The screen market is trading between 112.02

9   and 112.02 and a half.

10      Q.   And what about the pit market?

11      A.   I believe the pit market was trading

12  similarly at that time.  I think it's sandwiched

13  between two quotes at those prices.

14      Q.   If Mr. Sarvey had filled the 2474 contracts

15  for his EC stops at 112.02 rather than 111.06 and a

16  half, how would his EC customers have been

17  impacted?

18      A.   Those customers would have received fills

19  of approximately $2.1 million better than the fills

20  that they received.

21      Q.   And more precisely would that be 27 and a

22  half tics on 2474 contracts or $2,126,093.75?

23      A.   That's correct.

24      Q.   And do you know what the combined profits

177

# EXHIBIT
# G



## CERTIFICATION

### With respect to: Edward Charles Sarvey

1.    I, Sandra A. Guard, am employed by National Futures Association ("NFA") as Document Research Supervisor. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (1994).

2.    Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (1994). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (1994), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.    Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.    As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.    Under my supervision, I have caused to be conducted a review of these official CFTC records from April 1988 to the present, which disclosed the following information:

> Edward Charles Sarvey ("Sarvey") was granted registration as a Floor Broker ("FB") effective June 14, 1988. Sarvey has remained registered as an FB since that date and Sarvey will remain so registered as long as he maintains granted trading privileges on a designated contract market.

**EXHIBIT
G**

- 2 -

The attached twenty-five (25) pages are true, correct and accurate copies of registration records for Edward Charles Sarvey. The originals are on file with National Futures Association, 200 West Madison Street, Chicago, Illinois 60606-3447.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: August 3, 2007

_____
Deputy Record Custodian

National Futures Association
200 West Madison Street
Chicago, Illinois 60606-3447

Attachments

# EXHIBIT
# H



# CERTIFICATION

### With respect to:  David George Sklena

1.     I, Sandra A. Guard, am employed by National Futures Association ("NFA") as Document Research Supervisor. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (1994).

2.     Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (1994). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (1994), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.     Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.     As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.     Under my supervision, I have caused to be conducted a review of these official CFTC records from June 1987 to the present, which disclosed the following information:

> David George Sklena ("Sklena") was granted registration as a Floor Broker ("FB") effective October 1, 1987. Sklena has remained registered as an FB since that date and Sklena will remain so registered as long as he maintains granted trading privileges on a designated contract market.

**EXHIBIT H**

CFTC 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

- 2 -

        The attached twenty-seven (27) pages are true, correct and accurate copies of registration records for David George Sklena. The originals are on file with National Futures Association, 200 West Madison Street, Chicago, Illinois 60606-3447.

        I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:   August 3, 2007

                         Deputy Record Custodian

                         National Futures Association
                         200 West Madison Street
                         Chicago, Illinois 60606-3447

Attachments

# EXHIBIT
# I

# Diagram of Five Year Treasury Note Futures Pit

## Approximate Pit Locations on April 2, 2004

North
South

Edward Sarvey – SRV
David Sklena - DSG
Steven Foertsch - SFX
William Malek – WBF
John Flannery – FLZ
Erika Gannon – EG
Richard Swanberg – SWY
Richard Harrigan – ROX
Christopher Ranney - ICE



ROX  FLZ  SRV
DSG
EG
SFX
SWY

EC
107  105  102
106         99

Headset line jack numbers are indicated in blue.

**EXHIBIT I**

# EXHIBIT
# J

L DD110   B4100

MAR  5, 2004

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

LAWRENCE-BONFITTO TRADING COMPANY
141 W. JACKSON BLVD
SUITE 2450
CHICAGO, IL  60604

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

## C O N F I R M A T I O N

THE FOLLOWING TRADES HAVE BEEN MADE THIS DAY FOR YOUR ACCOUNT AND RISK.

| TRADE | CARD | AT | BUY | SELL | CONTRACT DESCRIPTION | EX | PRICE | CC | DEBIT/CREDIT |
|-------|------|----|-----|------|---------------------|----|----|----|----|
| 3/05/4 | 759 | F1 | 50 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-03 | US | |
| 3/05/4 | 3277 | F1 | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 112-03.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 759 | F1 | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 112-03.5 | US | |
| 3/05/4 | 760 | F1 | | 159 | JUN 04 CBT 5Y T-NOTE | 01 | 112-26 | US | |
| 3/05/4 | 760 | F1 | | 200 | JUN 04 CBT 5Y T-NOTE | 01 | 112-27 | US | |
| 3/05/4 | 0830 | F1 | 50 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-29.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 1060 | F1 | 75 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-30 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 8337 | F1 | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 112-30 5 | US | |
| 3/05/4 | 4038 | F1 | 25 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-31 | US | |
| 3/05/4 | 0102 | F1 | 75 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-31.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 761 | F1 | 120 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-00 | US | |
| 3/05/4 | 8869 | F1 | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 113-00 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 6942 | F1 | 75 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-00.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 0658 | F1 | 98 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-01 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 2925 | F1 | | 75 | JUN 04 CBT 5Y T-NOTE | 01 | 113-01 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 3437 | F1 | 5 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 761 | F1 | 100 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| 3/05/4 | 4399 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 761 | F1 | | 50 | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| 3/05/4 | 3456 | F1 | 95 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-02 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 6529 | F1 | 21 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-02.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 8199 | F1 | | 50 | JUN 04 CBT 5Y T-NOTE | 01 | 113-02.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 9256 | F1 | 50 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-03 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 1597 | F1 | | 150 | JUN 04 CBT 5Y T-NOTE | 01 | 113-03 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 760 | F1 | | 109 | JUN 04 CBT 5Y T-NOTE | 01 | 113-03 | US | |
| 3/05/4 | 7178 | F1 | 350 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-03.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 0531 | F1 | | 100 | JUN 04 CBT 5Y T-NOTE | 01 | 113-03.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7702 | F1 | 350 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 765 | F1 | 11 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |

**EXHIBIT
J**

LAWRENCE-BONFITIO TRADING COMPANY
141 W. JACKSON BLVD.
SUITE 2450
CHICAGO, IL 60604

L 00110    84100

MAR  5, 2004

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

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

PAGE    2

| TRADE | CARD | AT | BUY | SELL | CONTRACT DESCRIPTION | EX | PRICE | CC | DEBIT/CREDIT |
|-------|------|----|----|------|---------------------|----|-------|----|--------------|
| 3/05/4 | 8501 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 764 | F1 | | 1 | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |
| 3/05/4 | 4715 | F1 | 115 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 765 | F1 | 1 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04.5 | US | |
| 3/05/4 | 765 | F1 | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04.5 | US | |
| 3/05/4 | 3275 | F1 | 1,075 | 717 | JUN 04 CBT 5Y T-NOTE | 01 | 113-05 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 764 | F1 | 297 | | JUN 04 CBT 5Y T-NOTE | 01 | | | |
| 3/05/4 | 2107 | F1 | | 500 | JUN 04 CBT 5Y T-NOTE | 01 | 113-05 | US | |
| | | | | | ACE TRADES | | 113-05 | US | |
| 3/05/4 | 765 | F1 | | 500 | JUN 04 CBT 5Y T-NOTE | 01 | 113-05 | US | |
| 3/05/4 | 8244 | F1 | 183 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-05.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 5925 | F1 | | 1,000 | JUN 04 CBT 5Y T-NOTE | 01 | 113-05.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 5438 | F1 | 110 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| 3/05/4 | 762 | F1 | 250 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| 3/05/4 | 0081 | F1 | | 545 | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 762 | F1 | 200 | 30 | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| 3/05/4 | 1576 | F1 | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 763 | F1 | 51 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| 3/05/4 | 2506 | F1 | 25 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7242 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 763 | F1 | | 1 | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| 3/05/4 | 2397 | F1 | 400 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-07 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 766 | F1 | 150 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-07 | US | |
| 3/05/4 | 2538 | F1 | | 125 | JUN 04 CBT 5Y T-NOTE | 01 | 113-07 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 6417 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-07.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 8334 | F1 | 100 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-09.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 2420 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-09.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 0163 | F1 | 470 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-10 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 770 | F1 | | 100 | JUN 04 CBT 5Y T-NOTE | 01 | 113-10 | US | |
| 3/05/4 | 769 | F1 | 100 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-10.5 | US | |
| 3/05/4 | 4160 | F1 | | 1 | JUN 04 CBT 5Y T-NOTE | 01 | 113-10.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 2460 | F1 | 161 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-11 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7569 | F1 | | 141 | JUN 04 CBT 5Y T-NOTE | 01 | 113-11 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 769 | F1 | | 9 | JUN 04 CBT 5Y T-NOTE | 01 | 113-11 | US | |
| 3/05/4 | 3195 | F1 | 594 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-11.5 | US | |
| | | | | | ACE TRADES | | | | |

LAWRENCE-BONFITTO TRADING COMPANY
141 W. JACKSON BLVD.
SUITE 2450
CHICAGO, IL  60604

L  00110    84100

MAR  5, 2004

335-46.6991

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

PAGE    3

| TRADE | CARD | AT | BUY | SELL | CONTRACT DESCRIPTION | EX | PRICE | CC | DEBIT/CREDIT |
|-------|------|----|----|------|---------------------|----|----|-----|--------------|
| 3/05/4 | 767 F1 | | 750 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-11.5 | US | |
| 3/05/4 | 768 F1 | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-11.5 | US | |
| 3/05/4 | 3761 F1 | | 50 | 1 | JUN 04 CBT 5Y T-NOTE | 01 | 113-12 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 768 F1 | | 101 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-12 | US | |
| 3/05/4 | 767 F1 | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-12 | US | |
| 3/05/4 | 9765 F1 | | 238 | 881 | JUN 04 CBT 5Y T-NOTE | 01 | 113-12.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 9333 F1 | | 700 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-13 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7692 F1 | | | 150 | JUN 04 CBT 5Y T-NOTE | 01 | 113-13 | US | |
| 3/05/4 | 768 F1 | | | | ACE TRADES | | | | |
| 3/05/4 | 0529 F1 | | 200 | 501 | JUN 04 CBT 5Y T-NOTE | 01 | 113-13 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-13.5 | US | |
| 3/05/4 | 8398 F1 | | 600 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-14 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7120 F1 | | 109 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-14.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 3899 F1 | | 98 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-15 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 767 F1 | | | 280 | JUN 04 CBT 5Y T-NOTE | 01 | 113-15 | US | |
| 3/05/4 | 4932 F1 | | | 200 | JUN 04 CBT 5Y T-NOTE | 01 | 113-15.5 | US | |
| | | | 8,176* | 8,176* | ACE TRADES | | | | |

AVERAGE LONG:    113.244
AVERAGE SHORT:   113.205

P U R C H A S E   &   S A L E

| TRADE | CARD | AT | BUY | SELL | CONTRACT DESCRIPTION | EX | PRICE | CC | DEBIT/CREDIT |
|-------|------|----|----|------|---------------------|----|----|-----|--------------|
| 3/05/4 | 759 F1 | | 50 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-03 | US | |
| 3/05/4 | 3277 F1 | | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 112-03.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 759 F1 | | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 112-03.5 | US | |
| 3/05/4 | 760 F1 | | | 159 | JUN 04 CBT 5Y T-NOTE | 01 | 112-25 | US | |
| 3/05/4 | 760 F1 | | | 200 | JUN 04 CBT 5Y T-NOTE | 01 | 112-27 | US | |
| 3/05/4 | 0630 F1 | | 50 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-29.5 | US | |
| 3/05/4 | 1080 F1 | | 75 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-30 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 8337 F1 | | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 112-30.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 4038 F1 | | 25 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-31 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 0102 F1 | | 75 | | JUN 04 CBT 5Y T-NOTE | 01 | 112-31.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 761 F1 | | 120 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-00 | US | |
| 3/06/4 | 8869 F1 | | | 25 | JUN 04 CBT 5Y T-NOTE | 01 | 113-00 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 8942 F1 | | 75 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-00.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 0658 F1 | | 98 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-01 | US | |
| | | | | | ACE TRADES | | | | |

LAWRENCE-BONFITTO TRADING COMPANY
141 W. JACKSON BLVD.
SUITE 2450
CHICAGO, IL 60604

L 00110    84100
MAR  5, 2004
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

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

PAGE    4

| TRADE | CARD | AI | BUY | SELL | CONTRACT DESCRIPTION | EX | PRICE | CC | DEBIT/CREDIT |
|-------|------|----|-----|------|---------------------|----|----|----|----|
| 3/05/4 | 2925 | F1 | | 75 | JUN 04 CBT 5Y T-NOTE | 01 | 113-01 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 3437 | F1 | 5 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 761 | F1 | 100 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| 3/05/4 | 4399 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 761 | F1 | 95 | 50 | JUN 04 CBT 5Y T-NOTE | 01 | 113-01.5 | US | |
| 3/05/4 | 3456 | F1 | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-02 | US | |
| 3/05/4 | 6529 | F1 | 21 | | ACE TRADES | | | | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-02.5 | US | |
| 3/05/4 | 8199 | F1 | | 50 | ACE TRADES | | | | |
| 3/05/4 | 9256 | F1 | 50 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-02.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 1597 | F1 | | 150 | JUN 04 CBT 5Y T-NOTE | 01 | 113-03 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 760 | F1 | | 109 | JUN 04 CBT 5Y T-NOTE | 01 | 113-03 | US | |
| 3/05/4 | 7178 | F1 | 350 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-03 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-03.5 | US | |
| 3/05/4 | 0531 | F1 | | 100 | ACE TRADES | | | | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-03.5 | US | |
| 3/05/4 | 7702 | F1 | 350 | | ACE TRADES | | | | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |
| 3/05/4 | 765 | F1 | 11 | | ACE TRADES | | | | |
| 3/05/4 | 8501 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |
| 3/05/4 | 764 | F1 | | 1 | ACE TRADES | | | | |
| 3/05/4 | 4715 | F1 | 115 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04.5 | US | |
| 3/05/4 | 765 | F1 | 1 | | ACE TRADES | | | | |
| 3/05/4 | 765 | F1 | | 717 | JUN 04 CBT 5Y T-NOTE | 01 | 113-04.5 | US | |
| 3/05/4 | 3275 | F1 | 1,075 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-04.5 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-05 | US | |
| 3/05/4 | 764 | F1 | 297 | | ACE TRADES | | | | |
| 3/05/4 | 2107 | F1 | | 500 | JUN 04 CBT 5Y T-NOTE | 01 | 113-05 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-05 | US | |
| 3/05/4 | 765 | F1 | | 500 | ACE TRADES | | | | |
| 3/05/4 | 6244 | F1 | 183 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-05 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-05.5 | US | |
| 3/05/4 | 5925 | F1 | | 1,000 | ACE TRADES | | | | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-05.5 | US | |
| 3/05/4 | 5438 | F1 | 110 | | ACE TRADES | | | | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| 3/05/4 | 762 | F1 | 250 | | ACE TRADES | | | | |
| 3/05/4 | 0081 | F1 | | 545 | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| 3/05/4 | 762 | F1 | | 30 | ACE TRADES | | | | |
| 3/05/4 | 763 | F1 | 51 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06 | US | |
| 3/05/4 | 2506 | F1 | 225 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| 3/05/4 | 7242 | F1 | | 300 | ACE TRADES | | | | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |
| 3/05/4 | 763 | F1 | | 1 | ACE TRADES | | | | |
| | | | | | JUN 04 CBT 5Y T-NOTE | 01 | 113-06.5 | US | |

LBTC402

LAWRENCE-BONFITTO TRADING COMPANY
141 W. JACKSON BLVD.
SUITE 2450
CHICAGO, IL 60604

L 00110    84100

MAR  5, 2004

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

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

PAGE    5

| TRADE | CARD | AT | BUY | SELL | CONTRACT DESCRIPTION | EX | PRICE | CC | DEBIT/CREDIT |
|---|---|---|---|---|---|---|---|---|---|
| 3/05/4 | 2397 | F1 | 400 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-07 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 766 | F1 | 150 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-07 | US | |
| 3/05/4 | 2538 | F1 | | 125 | JUN 04 CBT 5Y T-NOTE | 01 | 113-07 | US | |
| 3/05/4 | 6417 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-07.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 8334 | F1 | 100 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-09.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 2420 | F1 | | 300 | JUN 04 CBT 5Y T-NOTE | 01 | 113-09.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 0163 | F1 | 470 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-10 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 770 | F1 | | 100 | JUN 04 CBT 5Y T-NOTE | 01 | 113-10 | US | |
| 3/05/4 | 769 | F1 | 100 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-10.5 | US | |
| 3/05/4 | 4160 | F1 | | 1 | JUN 04 CBT 5Y T-NOTE | 01 | 113-10.5 | US | |
| 3/05/4 | 2480 | F1 | 161 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-11 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7569 | F1 | | 141 | JUN 04 CBT 5Y T-NOTE | 01 | 113-11 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 769 | F1 | | 9 | JUN 04 CBT 5Y T-NOTE | 01 | 113-11 | US | |
| 3/05/4 | 3195 | F1 | 594 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-11.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 767 | F1 | 250 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-11.5 | US | |
| 3/05/4 | 768 | F1 | | 1 | JUN 04 CBT 5Y T-NOTE | 01 | 113-11.5 | US | |
| 3/05/4 | 3761 | F1 | 50 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-12 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 788 | F1 | 101 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-12 | US | |
| 3/05/4 | 767 | F1 | | 881 | JUN 04 CBT 5Y T-NOTE | 01 | 113-12 | US | |
| 3/05/4 | 9765 | F1 | 238 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-12.6 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 9333 | F1 | 700 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-13 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7692 | F1 | | 150 | JUN 04 CBT 5Y T-NOTE | 01 | 113-13 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 788 | F1 | | 501 | JUN 04 CBT 5Y T-NOTE | 01 | 113-13 | US | |
| 3/05/4 | 0529 | F1 | 200 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-13.5 | US | |
| 3/05/4 | 6396 | F1 | 600 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-14 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 7120 | F1 | 109 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-14.5 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 3899 | F1 | 96 | | JUN 04 CBT 5Y T-NOTE | 01 | 113-15 | US | |
| | | | | | ACE TRADES | | | | |
| 3/05/4 | 767 | F1 | | 280 | JUN 04 CBT 5Y T-NOTE | 01 | 113-15 | US | |
| 3/05/4 | 4932 | F1 | | 200 | JUN 04 CBT 5Y T-NOTE | 01 | 113-15.5 | US | |
| | | | | | ACE TRADES | | | | |
| | F1 | | 8,176* | 8,176* | | | | | |

```
                                    COMMISSION US            817.60DR
                                 CLEARING FEES US            817.60DR
                                 EXCHANGE FEES US            252.25DR
                            GROSS PROFIT OR LOSS US      318,419.11DR
               NET PROFIT OR LOSS FROM TRADES US        320,306.56DR
```

LBTC403

LAWRENCE-BONFITTO TRADING COMPANY
141 W. JACKSON BLVD.
SUITE 2450
CHICAGO, IL 60604

L 00110    84100

MAR 5, 2004

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

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

PAGE    6

|  |  |
|---|---|
| | ** US DOLLARS ** |
| BEGINNING BALANCE | 295,421.39 |
| COMMISSION | 817.60DR |
| CLEARING FEES | 817.80DR |
| EXCHANGE FEES | 252.25DR |
| TOTAL FEES | 1,069.85DR |
| GROSS PROFIT OR LOSS | 318,419.11DR |
| NET PROFIT/LOSS FROM TRADES | 320,306.56DR |
| ENDING BALANCE | 24,885.17DR |
| TOTAL EQUITY | 24,885.17DR |
| ACCOUNT VALUE AT MARKET | 24,885.17DR |
| MARGIN DEFICIT | 24,885.17DR |

LAWRENCE BONFITTO TRADING COMPANY
141 W. JACKSON BLVD
SUITE 2450
CHICAGO, IL  60604

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

BEGINNING BALANCE
ENDING BALANCE
TOTAL EQUITY
ACCOUNT VALUE AT MARKET

MARGIN DEFICIT

** US DOLLARS **
29,136.74
291,169.82DR
291,169.82DR
291,169.82DR

291,169.82DR

LBTC397

LAWRENCE-BONFITTO TRADING COMPANY
141 W. JACKSON BLVD.
SUITE 2450
CHICAGO, IL 60604

1 00110 45464100
MAR 5, 2004

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

PAGE    2

* * * * * * * * * * RELATED MASTER SUMMARY STATEMENT * * * * * * * * * * * *

| | ACCOUNT BALANCE | OPEN TRADE EQUITY | TOTAL EQUITY | NET OPTION VALUE | NET LIQUIDATING VAL |
|---|---|---|---|---|---|
| 84100  F1 | 24,885.17- | 0.00 | 24,885.17- | 0.00 | 24,885.17- |
| 84101  F1 | 266,284.65- | 0.00 | 266,284.65- | 0.00 | 266,284.65- |
| TOTAL F1 | 291,169.82- | 0.00 | 291,169.82- | 0.00 | 291,169.82- |
| CONVERSION RATE TO US 1.00000000 | 291,169.82- | 0.00 | 291,169.82- | 0.00 | 291,169.82- |
| CONVERTED TOTAL | 291,169.82- | 0.00 | 291,169.82- | 0.00 | 291,169.82- |

# EXHIBIT
# K

SEP-24-2004  08:28                                                    P.02/03

 **Chicago Board of Trade**

April 1, 2004

BULLETIN TO MEMBERS
FOR THE PERIOD:                         March 16 through March 31, 2004

In accordance with the Rule or Regulation indicated below, this Bulletin includes lists of:

- Membership, Membership Interest and fractional participation Transfers and Sales (Regulation 249.01(e) or 296.06);

- Terminations of Delegations (Rule 221.00), Temporary Family Transfers (Regulation 249.01 (j) and/or Member Firm registrations (Regulation 249.01 (e));

- Applicants for Membership (Rule 201.00) and for Member Firm Registration (if applicable). (Regulation 230.02).

Members are reminded that, pursuant to Regulation 249.01, the last day for filing claims against the proceeds of the listed transactions, against the listed former delegates and former transferees, and/or against the terminated member/member firm registrants will be **April 15, 2004**. For further information on claims procedures, please contact the Office of Investigations and Audits (Sharon Weiss) (312) 341-3097.

Members who have comments concerning any of the listed individual or firm applicants are asked to contact the Department of Member Services:  Maria Fritz (312) 435-3485 or Nancy Dye (312) 435-3484 respectively.

Paul J. Draths
Vice President and Secretary

**EXHIBIT
K**

**EXHIBIT
7**

## CHICAGO BOARD OF TRADE

| | | |
|---|---|---|
| Last Sale of Full Membership | $650,000 | March 29, 2004 |
| Last Sale of Associate Membership | $260,000 | March 31, 2004 |
| Last Sale of 1/2 AM Participation | $ 89,000 | January 6, 2004 |
| Last Sale of COM Membership Interest | $ 63,000 | March 31, 2004 |
| Last Sale of IDEM Membership Interest | $ 23,000 | March 23, 2004 |

 **BURLING BANK**

May 10, 2004

Lawrence Bonfitto Trading Company
Attn: Joe Postel
141 W. Jackson Blvd., Ste #2450
Chicago, Illinois 60604

Re: DAVID G. SKLENA - $156,000.00 Guaranty

Dear Mr. Postel:

Attached is the cancelled original seat loan guaranty for **David G. Sklena** for
**$156,000.00**, dated April 1, 2004. This document is being returned to you because the
loan was **paid in full** on April 30, 2004.

If you have any questions, please feel free to contact the **loan department** at 312-408-
8400.

Sincerely,

Raphael B. Charles
Loan Operations

THE BOARD OF TRADE BUILDING        PHONE 312.408.8400
141 WEST JACKSON BOULEVARD     FAX 312.408.8442
CHICAGO, ILLINOIS. 60604          WWW.BURLINGBANK.COM

**GUARANTY**

FOR VALUE RECEIVED and in consideration of advances made or to be made, or credit given or to be given, or other financial accommodation afforded or to be afforded to DAVID G. SKLENA (hereinafter designated as "Debtor"), by BURLING BANK (hereinafter called the "Bank"), from time to time, the undersigned hereby guarantees the full and prompt payment to said Bank at maturity and at all times thereafter of the principal balance of that certain note made payable or payable in number _____ and any and all extensions or renewals thereof, and all interest and fees due and payable thereon; and the undersigned further agrees to pay all expenses, legal and/or otherwise (including court costs and attorneys fees), paid or incurred by said Bank in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this guaranty.

The Bank and the undersigned agree that this guaranty does not and will not guarantee the payment of any amounts advanced by the Bank to the Debtor increasing the principal balance of the Note, or interest on such amounts advanced, after the Note has been reduced by repayments or reductions from the Debtor.

In case of the death, incompetency, dissolution, liquidation or insolvency (however evidenced) of, or the institution of bankruptcy or receivership proceedings against said Debtor, all of said indebtedness, obligations and liabilities, then existing shall, at the option of the Bank, immediately become due or accrued and payable from the undersigned. The Undersigned agrees that the indebtedness of Debtor to Bank, guaranteed hereby, shall be prior to any claim that the Undersigned may now have or hereafter acquire against Debtor, whether or not Debtor becomes insolvent. Undersigned hereby expressly subordinates any claim Undersigned may have against Debtor, upon any account whatsoever, including but not limited to any claims accorded to the Undersigned pursuant to the applicable rules or regulations of a registered commodities exchange or stock exchange governing the distribution of the proceeds of sale of a membership in such an exchange standing in the name of the Debtor and securing the Note guaranteed by the Undersigned to any claim that the Bank may now or hereafter have against Debtor to the extent of this guaranty. In the event of insolvency and consequent liquidation of the assets of Debtor, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation or otherwise, the assets of Debtor, applicable to the payment of the claims of both Bank and the undersigned shall be paid to Bank and shall be first applied by Bank to the note of Debtor hereby guaranteed by the Undersigned. Undersigned does hereby assign to Bank all claims which it may have or acquire against Debtor or against any assignee or trustee in bankruptcy of Debtor, provided however, that such assignment shall be effective only for the purpose of assuring to Bank full payment in legal tender of the Note. If Debtor so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Debtor to the Undersigned shall be marked with a legend that the same are subject to this guaranty and shall be delivered to Bank. Undersigned agrees, and Bank hereby is authorized, in the name of the Undersigned, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Bank deems necessary or appropriate to perfect, preserve and enforce it's rights under this guaranty.

This guaranty shall be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until written notice of its discontinuance shall be actually received by said Bank and also until any and all said indebtedness, obligations and liabilities created or existing before receipt of such notice shall be fully paid. The death or dissolution of the undersigned shall not terminate this guaranty until notice of such death or dissolution shall have been actually received by said Bank, nor until all of said indebtedness, obligations and liabilities created or existing before receipt of such notice shall be fully paid.

The liability hereunder shall in no way be affected or impaired by (and said Bank is hereby expressly authorized to make from time to time, without notice to anyone), any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in modification or other disposition of any of said indebtedness, obligations and liabilities, either express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor. The liability hereunder shall in no way be affected or impaired by any acceptance by said Bank of any security for or other payments upon any said indebtedness, obligations or liabilities, or by any failure, neglect or omission on the part of the said Bank to realize upon or protect any of said indebtedness, obligations or liabilities or any collateral or security therefore, or to exercise any lien upon or right of appropriation of any moneys, credits or property of said Debtor, possessed by said Bank, toward the liquidation of said indebtedness, obligations or liabilities, or by application of any payments or credits thereon. Said Bank shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on said indebtedness, obligations and liabilities, or any part of them. In order to hold the undersigned liable hereunder, there shall be no obligation on the part of the said Bank, at any time, to resort to payment from said Debtor or to any other guaranty, or to any other person or corporations, their properties or estate, or resort to any collateral, security, property, liens or other rights or remedies whatsoever, and the Bank shall have the right to enforce this guaranty irrespective of whether or not other proceedings or steps are pending seeking resort to or realization upon or from any of the foregoing.

Diligence in collection or protection, and all presentment, demand, protest and/or notice, as to any and everyone, whether or not the Debtor or the undersigned or others, of dishonor and of default and of non-payments and of the creation and existence of any and all indebtedness, obligations and liabilities of Debtor to Bank, and of any and all security and collateral therefore, and of the acceptance of this guaranty, and of any and all extensions of credit and indulgence thereunder, are expressly waived.

The granting of credit from time to time by said Bank to said Debtor in excess of the amount to which the right of recovery under this guaranty is limited and without notice to the undersigned, is hereby also authorized and shall in no way affect or impair this guaranty.

Any payment by the undersigned of any amount pursuant to this guaranty shall not in any way entitle the undersigned to any right, title or interest (whether by way of subrogation or otherwise) in and to any of the indebtedness of the Debtor or any proceeds thereof or any security therefore unless and until the full amount owing to the Bank on the indebtedness of such Debtor has been fully paid.

No act of commission or omission of any kind, or at any time, upon the part of said Bank in respect to any matter whatsoever, shall in any way affect or impair this guaranty.

Said Bank may, without any notice whatsoever to any one, sell, assign or transfer all of said indebtedness, obligations and liabilities, or any part thereof, or grant participations therein, and in that event each and every immediate and successive assignee, transferee, or holder of or participant in all or any part of said indebtedness, obligations and liabilities, shall have the right to enforce this guaranty, by suit or otherwise, for the benefit of such assignee, transferee, holder or participant, as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits; but the said Bank shall have an unimpaired right to enforce this guaranty for the benefit of said Bank or any such participant, to which it has sold a participation.

This guaranty shall be construed according to the law of the State of Illinois, in which State it shall be performed by the undersigned. This guaranty and every part thereof, shall be binding upon the undersigned, and upon the heirs, legal representatives, successors and assigns of the undersigned, and shall inure to the benefit of said Bank, its successors, legal representatives and assigns.

SIGNED AND SEALED by the undersigned at _____ this 1st day of APRIL, 2004.

LAWRENCE-BONFITTO TRADING CO.    By: _____    ITS: Secretary-Treasurer

Print: Joseph Pastel