# EXHIBIT 5

1    MR. RUARK:  Okay.  No further questions,

2  Mr. Chairman.

3    CHAIRMAN RIECHERS:  Jim.

4    MR. SCHWARTZ:  No questions, Mr. Chairman.

5    CHAIRMAN RIECHERS:  George.

6    MR. BAKOURIS:  (Shaking head.)

7    CHAIRMAN RIECHERS:  Mr. Williams, thank you.

8              We'll take a quick two-minute break.

9                        (Whereupon, a break

10                       was taken.)

11            Mr. Jeske, we are waiting for

12  Mr. Early.

13    MR. JESKE:  I think we can go ahead.

14    CHAIRMAN RIECHERS:  Pat, would you please swear

15  in the witness.

16                        (Witness sworn.)

17            Okay.  Counsel.

18    MR. RUARK:  Mr. Risch is going to examine the

19  witness, Mr. Chairman.

20    CHAIRMAN RIECHERS:  Okay.

21                 WILLIAM McCLEAN,

22  Called as a witness herein, having been first duly

23  sworn, was examined and testified as follows:

24

```
1

2                    DIRECT EXAMINATION

3                    BY

4                    MR. RISCH:

5       Q.   Bill, could you give your name -- state your

6   name and spell it for the record, please.

7       A.   Sure.  William McClean, McClean.

8       Q.   Can you tell us or tell the panel, Bill,

9   what you do?

10      A.   I currently run a company called F100 (sic)

11  Tool Company and we provide support service to

12  trading firms.

13      Q.   Can you tell us briefly your background.

14      A.   Fairly standard trading career, starting as

15  a runner for DLJ in 1995, clerked for Susquehanna

16  (phonetic) for 2 1/2 years, then worked for a

17  start-up by the name of Peak 6 for a couple of years

18  trading for them, and became a member of the CBOE,

19  after that, left and started, in effect, with the

20  first generation of this company, which was an

21  investment vehicle housing cash and technology, made

22  investments into other firms and developed

23  technology.

24      Q.   Okay.  And were you given a task in
```

1  association with this case?

2      A.    Yes.

3      Q.    And what was that?

4      A.    I was asked to build a P & L of trading day

5  relative to a number of account records, built a

6  tool to put in an account record, have a running

7  total of P & L.

8      Q.    Was that for the trading activity of April

9  2nd in David Sklena's account?

10     MR. SCHWARTZ:   Counsel, could you speak up a

11  little.  I apologize.

12     MR. RISCH:  My fault.  You shouldn't have to

13  remind us that often, so it's our fault.  Excuse me.

14  And the question was was that account that you built

15  this tool for related to April 2nd David Sklena's

16  account.

17     THE WITNESS:   Yes.

18     MR. JESKE:  Mr. Chairman, I don't think the

19  witness, if I'm not mistaken, has been qualified as

20  an expert as this witness is not disclosed as such.

21  For the record, I object to his testimony, but

22  certainly it's the panel's choice if they want to

23  hear it.

24     CHAIRMAN RIECHERS:  So noted.

1              Go ahead, counsel.

2      MR. RISCH:  Q.  And what tools did you use to

3  complete the task?  What did you need?

4      A.    In terms of tool building, it was fairly

5  simple.  We accomplished it within the Excel

6  environment, so basically I built an Excel

7  spreadsheet.  I was handed an electronic record,

8  which I believe was from the CBOT, of all the trades

9  that were made in this day electronically, that was

10 the first cut, and it very quickly became evident to

11 me that I needed more information to create a P & L,

12 specifically the carded trades, so I requested what

13 became I guess a photocopy of all the tickets -- all

14 of the cards, and at that point those were the two

15 data sets that I was working with.

16     Q.    And could you turn to Exhibit 20 in the

17 respondent book.  And is this the spread sheet you

18 created?

19     A.    This is the end result of the work.

20     Q.    Okay.

21     MR. SCHWARTZ:  Is it 20 in the black book?

22     MR. RISCH:  Twenty in the black book, Page 204.

23 It's Tab 20.  The first page is 204.

24     MR. RISCH:  Q.  All right.  Now the electronic

1  record you were given was that just of David

2  Sklena's trading?

3     A.    Yes, at this point I had only the records

4  from David Sklena on the electronic set.

5     Q.    And now you have the cards, and I see, as I

6  look at this group, you sort of group the trades and

7  you put in the cards.  Can you tell us how you went

8  about doing that?

9     A.    Yes.   Actually, it was the other way around.

10  I put -- I simply placed -- looking at the cards,

11  looking at nothing but price data at this point,

12  because there's no time stamps on the cards, I just

13  went down and put the trades affected where they

14  looked like they would make sense from price only

15  and very quickly -- probably on this page is

16  represented by group one through six.  By about the

17  time I got to five, it seemed fairly obvious to me

18  there was a trading pattern emerging.

19     Q.    Now did you -- as you entered the card

20  trades, did you enter them in the sequence that they

21  were on the cards?

22     A.    One of the assumptions that I used building

23  this tool was that the trades on the cards were in

24  order how they happened in time.

1    Q.    And can you tell me did a pattern emerge?

2    A.    Yes.

3    Q.    And what was it?

4    A.    A pattern emerged of scalping, putting

5    opening contracts, closing contracts quickly and

6    with accuracy.

7    Q.    All right.  And just take us briefly through

8    the groups, go through and show what you mean by

9    scalping.

10    A.    Really we can stay on this first page and

11    kind of a few things jumps out at me, and these

12    things that did jump out carry through the entire

13    exhibit, and that was that the very first trade it

14    seemed like it was pretty obvious.  I didn't have to

15    do much thinking.  It was an electronic where 25

16    contracts are sold and 25 were purchased.

17            The second -- the second trade -- the

18    first trade that I put in was a 20 lot by 1304 1/2,

19    and this, again, seemed to follow this pattern of

20    opening risk and closing risk or scalping, and this

21    took us to zero.

22            Third and the fourth -- excuse me.  The

23    second and third carded trades seem to make perfect

24    sense here from both the quantity standpoint and

211

1  from the pricing standpoint.

2          As we continued this, the next trade on

3  the card was a 43 lot and, as a model builder, a 43

4  pops up.  It seems very obvious that it should go

5  there.  It also fits in terms of price and that also

6  nicely coincided with the 7 lot electronic buy.

7      Q.    Okay.  Now other than just -- I'm going to

8  direct you to this, sort of get through this.  Let's

9  go to trade Group 11 on Page 210.

10     A.    Okay.

11     Q.    Were there any other clues or tools that you

12 used to deciding, yes, this -- you know, this

13 appears to be an intentional pattern of getting

14 flat?

15     A.    There was a couple of events, if you will,

16 things that seem to me to be intentional in terms of

17 the process.  This entire story from me is nothing

18 more than process, how do these trades get on, how

19 do they get off.

20         Part of the process is -- one thing

21 that I noticed almost immediately was this

22 persistence of 25 lots throughout the day, both in

23 the buy and sell side, and it indicated to me that

24 there was a default key of some sort that launched a

1   25 lot.

2      Q.    Stop you right there.  When you talk about a

3   25 lot, you're talking electronic?

4      A.    Yes, on the electronic side.

5      Q.    Continue.

6      A.    So there was a lot of 25 lots were used.  As

7   I quickly scan down that, I noticed a couple of --

8   and this was actually before I ever put a carded

9   trade into the sequence.  There was a few things

10  that were just points of note.  One was a 6 lot,

11  another was a 12 lot, and, again, these are

12  electronic trades that don't fit into this pattern

13  of 25 lots.

14           One additional point of note, there was

15  also a time where the 25 lot went to 50 lot.  It was

16  a very clear change that was just noted at this

17  point.  In Trade Group 11, there becomes -- it

18  becomes evident that -- that the 81 -- sale of 81 at

19  1125 1/2 seems to fit in here from a price basis,

20  and from a process perspective, i.e., the actual

21  physical actions required to fill the pattern, which

22  I believe has been established at this point in my

23  own mind, which is scalping, it becomes necessary to

24  physically punch a 6 lot into the computer to again

1    reach a position of flat.

2              The one extra piece of information

3    that is clear is we noticed a series of what has

4    become -- what have become in my mind known as time

5    bumps or distances between electronic trades.

6    There's a 50-second gap directly after the trader

7    gets flat here.

8         Q.   All right.  Is there a time in this pattern

9    that you saw -- did there come a time where it

10   looked like someone was now trying to get rid of a

11   large lot?

12        A.   Actually, yes.  This very much became a

13   puzzle that was being built at this point.  It was

14   nothing more than that, and I had enough of a frame

15   built, enough of pieces on the inside fitted.  There

16   was one piece left and you could see the distance.

17   Right there we see that the quantity comes up to 50

18   on the actual physical cards.

19        Q.   Now you are talking about Trade Group --

20        A.   I'm  --

21        Q.   12 on Page 211?

22        A.   I didn't realize.  I'm sorry.  Yes.

23        Q.   Is that right?

24        A.   Yes.  So moving from Trade Group 11 to 12,

                                              214

1  in the progression along the actual cards, I'm now

2  at a trade of buying 200 or 2274 contracts and you

3  can see quite clearly that the price doesn't make

4  sense here.  My gain has come to a screeching halt,

5  because I'm using pretty much price at this point to

6  throw these trades in.

7              That being said, I literally pulled my

8  mouse down.  In the summation column Excel will drop

9  a total for each row that you pull it down, and

10  looking ahead I saw that that number looked like it

11  was going to fit right there.  It also coincided

12  with a change from 25 lot to 50 lot in terms of a

13  default change, probably not that difficult, most

14  likely just a move.  I'm not exactly sure.

15                        (A brief interruption.)

16              Should I pause here?

17      MR. EARLY:  Keep going.

18      THE WITNESS:  There was also another change, if

19  you will, from a simple process perspective, which

20  was in each one of these trade groupings, which --

21  each one of these has started with a quantity and

22  ended at zero, but the process that's involved is

23  buying either electronically and selling to the pit

24  or vice versa, so there's an arbitrage strategy that

1  seem to be employed, which is buying from a person,

2  selling electronically or selling to a person buying

3  electronically.  This pattern is changed here.

4          The next hedging run, if you will, the

5  next group of sales takes this quantity to exactly

6  zero, in addition to this little residual quantity

7  that's leftover from this trade group, but, again,

8  the exact same pattern materializes of a scalp.

9      Q.   Okay.  So here he's bumped up the quantity

10  to 50 from 25 --

11     A.   Yes.

12     Q.   -- each time he hits the key?

13     A.   Yes.

14     Q.   And he's now both selling electronically and

15  selling to the pit --

16     A.   Yes.

17     Q.   -- and ultimately hedges the position?

18     A.   Yes.  There's one more process note on this

19  trade, and that's simply that the 50 lot -- this

20  happened really fast, and at the end of this kind of

21  50 lot tear, if you will, the quantities get bumped

22  back down to 12.  It's almost as if there was a slow

23  down and then there's a physical -- what I think

24  must be a physical process of typing in the number

1  12 into the machine to again arrive at flat.

2     Q.    That's on Page 213 at the end of this group

3  an electronic sale of 12 to bring it flat?

4     A.    Correct.    At this point, if you flip one

5  more Page to 214, and you look at the time from the

6  last electronic trade, this time reflects the time

7  from the last electronic trade, which would have

8  been the 12-lot sale to get flat, and there's a

9  3-minute pause, which, again, leaves nothing but

10  process clues make sense that this is a distinct

11  trading idea.

12     Q.    I notice if we also go up to the beginning

13  of what you have got on Page 211 where you put in

14  the quantity of the 2274 by 916 card, sort of I

15  guess that line trade group suspended, there's a

16  similar pause right there, not quite as long but

17  about a minute pause; is that correct?

18     A.    That's correct.

19     Q.    All right.  Now Mr. Sklena testified that he

20  purchased these much earlier and there's nothing

21  that you have got that can say any different from

22  that; would that be fair?

23     A.    That's entirely correct.  I couldn't say

24  when these contracts were purchased.

1    Q.   So this analysis is to show when the risk

2    was assessed, would that be fair, or when the risk

3    was addressed?

4    A.   I think that is fair.  I think that this

5    process chain clearly identifies that this is the

6    spot where this risk was taken off.

7    Q.   So assuming that Mr. Sklena purchased these

8    back when they were trading at this price, which --

9    let's get to that place -- it would be at the

10   beginning of Trade Group 7 on Page 205, the time of

11   that trade is around 7 what is it?

12   A.   Which trade?  The electronic trade?

13   Q.   The first electronic.

14   A.   The first electronic sale in that group is

15   at 7:30:56.  There's 1,000, but we just kind of left

16   those out.

17   Q.   If we go to the time when he switches to 50

18   and becomes a seller to both the pit and the

19   electronic market, what's the time of that?

20   A.   The time of that is 7:37:23.

21   Q.   So this risk, represented by these

22   contracts, if they were purchased at the beginning

23   of Group 7, did not start getting really addressed

24   for about 6 1/2 minutes; is that correct?

1    A.    That's what the process is telling you, yes.

2    MR. RISCH:  No further questions.

3    MR. SCHWARTZ:  Would you repeat your last

4  question.

5    MR. RISCH:  So the risk represented by this long

6  position was not -- if it was purchased back at the

7  5 -- when the 500 and 200, the 500 one was

8  purchased, didn't get taken off for 6 1/2 minutes;

9  is that correct?

10    MR. SCHWARTZ:  Okay.

11    MR. RISCH:  I have no further questions.

12    CHAIRMAN RIECHERS:  Mr. Jeske, questions.

13                    CROSS EXAMINATION

14                    BY

15                    MR. JESKE:

16    Q.    Mr. McClean, my name is Jerry Jeske.  I'm

17  counsel for Mr. Sklena, and I don't think we have

18  ever met before.

19    A.    That's correct.

20    Q.    I'll try to keep my voice up, sir.  I'll

21  start off right where counsel left.

22           I believe we were on Page 205 of your

23  exhibit here, Tab 20.  I think counsel said that if

24  you place the 2200 lot purchased in the 485 lot sale

1   just after the 500 lot that there wouldn't be an

2   offset for 6 minutes; is that what I heard

3   correctly?

4       A.    If -- so, in other words, you put it right

5   before the 17 lot?

6       Q.    Right.

7       A.    That's correct.

8       Q.    I'm puzzled.  For 6 minutes the difference

9   between 7:30:48 and 7:30:56 is 8 seconds.  How is it

10  that you get 6 minutes out of that?

11      A.    The -- the next hedging run before the next

12  time bump, if you will, is exactly -- mitigates the

13  risk of exactly 600 contracts.

14      Q.    The first sale occurs at 7:30:56, is that

15  correct --

16      A.    That's correct.

17      Q.    -- and the time before that 7:30:48, is that

18  correct, referring to your exhibit?

19      A.    That's correct.

20      Q.    And if you place Mr. Sklena's 2200 lot

21  purchase and 485 lot sale after the 500 lot, it

22  would occur between those two time frames, would it

23  not?

24      A.    Yes.

1    Q.   Okay.  Then we move on.  I want to ask you

2  about some of the tools you use.  I think you said

3  you used the Board of Trade's electronic data,

4  correct?

5    A.   Yes.

6    Q.   And you also used the pit cards, correct?

7    A.   Yes.

8    Q.   And then you used Mr. Sklena's electronic

9  record, vis-a-vis what the Board of Trade gave you.

10  They gave you some disks or something like that, his

11  electronic trades on them?

12    A.   I think I got the subset -- I think I got

13  all of the electronic trades and then the subset of

14  the trader's trades.

15    Q.   Now you would have -- now I'll ask you to

16  turn to Tab 16 in your black binder, if you will.

17    A.   Okay.

18    Q.   Are you there?

19    A.   Yes.

20    Q.   Tab 16, please.  There you go.  Now on Tab

21  16 is Time and Sales from the Chicago Board of Trade

22  for the morning of April 2nd of 2004.

23    A.   Yes.

24    Q.   You, of course, used this Time and Sales in

1  your analysis also, didn't you?

2      A.    I did not.

3      Q.    You did not?

4      A.    No.

5      Q.    So you chose not to use this analysis in

6  your analysis?

7      A.    That's correct.

8      Q.    Now turning back to Tab 1, I would like you

9  to just do a comparison, because rather than zipping

10  back and forth, we do have the luxury of having two

11  books.

12            Please compare Tab 1 in your black book

13  to Tab 3 in the blue book before you and tell me if

14  those cards are, in fact, the same cards.

15  CHAIRMAN RIECHERS:  Anybody want to stipulate

16  they are the same?

17    MR. RUARK:  I would be happy to.  I stipulate.

18    MR. JESKE:  That would be great.  Thank you.

19    MR. JESKE:  Q.  I'm going to use the blue book so

20  we can keep your analysis in front of us and the

21  cards as well.

22      A.    Okay.

23      Q.    I'm sorry.  Where is your analysis?

24    MR. RUARK:  Tab 20.

1       MR. JESKE:  Thank you, sir.

2       MR. JESKE:  Q.  Your analysis is on Tab 20 and

3   you have got the color copies of Mr. Sklena's cards

4   here.

5       A.   Yes.

6       Q.   Correct?

7            Now I'm going to Page 211 of your

8   analysis.  I think, if I understood you correctly,

9   you said you took the trades that had been recorded

10  on Mr. Sklena's cards and placed them in your

11  analysis with his electronic trades, right?

12      A.   Yes.

13      Q.   So you had to make some subjective decisions

14  about where to place them, didn't you?

15      A.   Absolutely.

16      Q.   So that's your opinion?

17      A.   Yes.

18      Q.   Board of Trade didn't tell you where to

19  place those?

20      A.   Correct.

21      Q.   You decided where to place them?

22      A.   Yes.

23      Q.   And in placing the 2200 lot position at --

24  on Page 211 and the short 45 in the spot that you

1  picked, I see the market activity is at 112.05 1/2;

2  is that right?

3      A.    That's correct.

4      Q.    But these trades occurred at 1106 1/2 and

5  1107, right?

6      A.    Yes.

7      Q.    All right.  Now I would like you to take a

8  look at the cards for a second in the blue book.

9  Card 916 there's trades there at 1106 1/2 and 1107,

10 the 2200 lot that we have been speaking about, the

11 485 lot sale, correct?

12     A.    Yes.

13     Q.    Okay.  Now with regard to those two trades,

14 do you see those prices of 112.05 occurring on that

15 card as well, card 916?

16     A.    If you are referring to the 200 lot buy,

17 yes.  You are talking about the same thing?

18     Q.    Sure, 200 lot buy, and there's also, I

19 believe, 150 lot sale.

20     A.    Yes.

21     Q.    Now those transactions you didn't place

22 right there, did you, right there with the 227 and

23 the 485?

24     A.    No.

1    Q.    You placed them later, didn't you?

2    A.    Yes.

3    Q.    Now you did some type of -- I think counsel

4  called it -- a risk tick analysis; is that right?

5    A.    Yes.

6    Q.    Now isn't it true that if at that point in

7  time Mr. Sklena would have placed that 2200 lot

8  position when the market was at 112.05 with the

9  price of 1106 1/2, that would be a trade worth over

10  $2 million, wouldn't it?

11    A.    Yes.

12    Q.    Pretty profitable trade, right?

13    A.    I suppose depending upon where you are

14  starting from, but for me, yes.

15    Q.    Fair enough.

16            With regard to your analysis, did you

17  incorporate that $2 million figure?

18    A.    I don't understand the question.

19    Q.    Did you incorporate that $2 million

20  profitable figure in your analysis?

21    A.    No.

22    Q.    Did you also -- now before that trade,

23  assuming that they occurred in the sequence in which

24  they were recorded -- I'll refer you to Card No.

1    914.  Do you see the second trade there, the 140 lot

2    sale and hundred lot purchase on 914?  Are you with

3    me?

4       A.    Yes.

5       Q.    A hundred and forty lot sale of

6    112.16 1/2 --

7       A.    Yes.

8       Q.    -- and the hundred lot purchase at 111.07?

9       A.    Yes.

10      Q.    That's a profit of about a hundred thousand

11   dollars, right?

12      A.    Sure.  Yes.

13      Q.    Did you incorporate that hundred thousand

14   dollar profit in your analysis before you placed

15   these trades?

16      A.    It depends on which analysis you are

17   speaking, because we have a risk analysis, which is

18   based solely off of the position size on a 32-tick

19   look, and then there's also a running total of

20   profit, not including the account equity coming into

21   the day.

22      Q.    Okay. N ow this running total profit  --

23   CHAIRMAN RIECHERS:  Could you repeat that.

24   THE WITNESS:  There's really two analysis that

226

1  are being done.  One is simply to say if you have 10

2  contracts open, regardless of how much money you

3  have, what does that imply risk-wise, and the

4  calculator allows you to put in how ever many ticks

5  you want.  I was instructed to run 32 ticks.

6           There's also a running total P & L,

7  which -- so there's a little -- there's almost two

8  things that I think we make sure we have clear, so

9  that's the reason -- I'll stop there.  You go ahead.

10    MR. JESKE:  Sir, do you have any follow-up?

11    CHAIRMAN RIECHERS:  All I want to hear is the

12  first part.

13    MR. JESKE:  Q.  With regard to the profit here of

14  a hundred thousand dollars, did you incorporate it

15  in your analysis-  --

16    A.    I incorporated it in  --

17    Q.    -- your P & L?

18    A.    -- my P & L analysis, and that's reflected

19  by the way that we have this model right now $90,000

20  profit.  At that point, there was a $5,000 tick risk

21  because the position had been effectively hedged

22  flat.

23    Q.  Well, I don't quite understand you, but I'll

24  just move on.

1          How about the card 915?  As you see

2   there, there's a 224 lot purchase and a 307 lot

3   purchase both at 13 1/2 and 15 1/2.  Do you see

4   those two?

5      A.   I see those on the ticket, yes.

6      Q.   And also there's a 200 lot sale, one at

7   111.22 and one at 111.25 --

8      A.   Yes.

9      Q.   --  profitable at $156,000, isn't it?

10      A.   I think -- I think that if you had purchased

11   200 there and sold 200 there and that's all you had

12   done all day long, that analysis is true.

13      Q.   With regard to these two trades, he made

14   $156,000 on those two transactions?

15      A.   Yes.

16      Q.   So the hundred thousand dollars and $156,000

17   occurs on cards 914 and 915 are both prior to the

18   time in which you placed the 2200 lot transaction,

19   right?

20      A.   At the time, my running total of P & L at

21   the later trade that you just referenced, which

22   would be the 200 lot sale at 1125 on the card, which

23   we have -- in Trade Group 10, which would be on

24   Page 210, at that point the running total of P & L

1  on the day is roughly $180,000. It works out to

2  about $180,000 at that point.

3      Q. Okay. Now you do know that there's a

4  difference between the Time and Sales that existed

5  on the electronic system and Time and Sales that

6  existed in the pit, right?

7      A. I'm not aware of a discrepancy in Time and

8  Sales.

9      Q. But you didn't use the Time and Sales from

10 the Board of Trade in connection with the pit for

11 your analysis; is that right?

12     A. The only Time and Sales that I felt was

13 reliable for this project was the electronic Time

14 and Sales. That's why it seemed to me that the open

15 outcry Time and Sales would have been -- really

16 didn't locate trades in time because of a fast

17 market condition that existed throughout this entire

18 period. It just wasn't reliable enough,

19 particularly when we have trades that are being

20 called back. There was actually evidence of changed

21 prices, I think it was the 03 half print -- 1103

22 1/2, that it seemed to me that there was a lot going

23 on in the pit right there and I wanted to get away

24 from that record.

1    Q.   So I thought you told me earlier you didn't

2  use that record.

3    A.   I didn't use it -- well, I guess I used it

4  to eliminate it, but that's it.

5    MR. JESKE:   I have no further questions,

6  Mr. Chairman.

7    CHAIRMAN RIECHERS:   Any redirect, counsel?

8    MR. RISCH:   I have got one redirect.

9                     REDIRECT EXAMINATION

10                    BY

11                    MR. RISCH:

12    Q.   Are there any places, other than where you

13  put this trade in Trade Group 12, where

14  Mr. Sklena -- well, first of all, let's ask this

15  question.  The net of the two trades, buying 2274,

16  sell 485, how much is that?

17    A.   Seventeen eighty-four, I think was the

18  number.

19    Q.   Seventeen eighty-nine maybe?

20    A.   Well, I have Excel next to me.  It's

21  embarassing not to do it right -- 1789.

22    Q.   Are there any places, other than where you

23  start paying off the 50s, where Dave Sklena sold 789

24  contracts?

1    A.    No.

2    MR. RISCH:  I have no further questions.

3    CHAIRMAN RIECHERS:  Questions from the committee?

4    MR. WALLACE:  No.

5    CHAIRMAN RIECHERS:  Jimmy.

6    MR. SCHWARTZ:  I have a question.  I'm not

7    extremely computer illiterate.

8                        EXAMINATION

9                        BY

10                       MR. SCHWARTZ:

11   Q.    If you look at card 916 and look at the blue

12   book, Section 3 -- you got it there -- card 916 --

13   A.    Yes, got it.

14   Q.    -- now the petitioner claims that the two

15   trades of the 2274 buy and 485 sale were

16   inadvertently put on this card and should have been

17   put in earlier.

18            Does your analysis -- in any way, can

19   your analysis determine if it appears that the

20   trades were made at the time that they were put on

21   this card?  Do you understand my question?

22   A.    I think I do, and, unfortunately, my

23   analysis cannot speak to that.  I can't tell you,

24   and, quite frankly, it doesn't matter from where I'm

231

1    sitting.  I can only tell you when it appears the

2    risk from that contract was mitigated or from that

3    combination of contracts but not when it was traded.

4        Q.    When that risk of that trade was mitigated,

5    time-wise, where would that place it then?

6        A.    Exactly 6 1/2 minutes after the time that

7    was quoted by counsel.

8        Q.    Which would place it where it is on the

9    card?

10       A.    Yes.  The reason -- the coincidence of where

11   it is on the card and where it ended up in my

12   analysis, it just worked.  It ended up being in the

13   puzzle piece that fit.  There was about that many

14   contracts that needed to come off right then.

15            Again, it just -- it makes no -- and I

16   think the other counsel pointed out the price

17   doesn't make any sense there at all, and from my

18   analysis standpoint, it doesn't matter where you

19   traded it.  That's where it came off.

20       Q.    I understand that.  And if you work back

21   from where it came off, that's the most logical

22   place it would have started; is that what you are

23   saying?

24       A.    Again, I don't think -- I don't think I can

1   comment on that.  I don't think that I could say

2   that with any degree of certainty.

3      Q.    But you can maybe with certainty as to when

4   the risk?

5      A.    It's really placed there in this

6   spreadsheet to keep the process story straight.  I

7   needed a reason to stick it there.  It happened to

8   wind up there.  It happened to be near a time bump.

9   It happened to be in a place where the contracts

10  balance to zero on, again, a straight Delta run or a

11  straight, you know, selling run.  It fit --

12     Q.    Thank you.

13     A.    -- except for price.

14  CHAIRMAN RIECHERS:  George.

15                    (No verbal response.)

16                    EXAMINATION

17                    BY

18                    CHAIRMAN RIECHERS:

19     Q.    Mr. McClean, I just want to confirm with you

20  your risk factor you built into this spreadsheet is

21  evidenced by the final column what you call your ABS

22  (sic).  What does ABS stand for?

23     A.    That's absolute risk.  If you were short a

24  contract --

1    Q.    Okay.  Absolute risk.

2            It's a 32-tick parameter.  It was kind

3    of bumped in there just to give you a look what

4    would happen if the thing rallied or broke a point,

5    correct?

6    A.    Yes.

7    Q.    That's it?  That's an absolute number?

8    A.    You could either make or lose that based on

9    your position size irregardless of how much dough

10   you made.

11   Q.    Are you in agreement with the fact that the

12   maximum point of risk, according to your

13   calculation, so we understand where you are, was

14   when Dave Sklena took the 600 contracts?  That's

15   your highest ABS risk number 595,000?  Was that  --

16   is that, in your mind, the maximum point of risk

17   before he started unloading those contracts, the

18   600?

19   A.    Up to that point, that's his maximum risk.

20   There is another place in the time sequence where

21   the price doesn't make any sense down in idea 12.

22   Q.    That I know of.

23   A.    That's big.  I think that there was

24   a --

1    Q.    That was the biggest number without me

2  looking through the whole thing?

3    A.    Pretty much.  If you want to move the trade

4  up there, that number gets a little bigger I

5  believe.

6    Q.    Okay.  Now if we -- let's say we operate

7  under the assumption, in your own words, that Dave

8  was pretty effective as a trader on a 600 lot, doing

9  the type of trading that he does, could it be

10 possible that that risk becomes minimal on that 600

11 lot contract if he's immediately selling them on the

12 screen?

13   A.    I think that's entirely accurate.  I think

14 that he actually mitigated the 600 contracts in

15 about 20 second.

16   CHAIRMAN RIECHERS:  That's all I have.  Jimmy.

17   MR. SCHWARTZ:  No.  No, I'm done.

18   CHAIRMAN RIECHERS:  Mr. McClean, thank you.

19   MR. RUARK:  You are done.

20         Mr. Chairman, I have one more witness.

21   CHAIRMAN RIECHERS:  Okay.  Pat, would you swear

22 in the witness, please.

23

24

# EXHIBIT 5A

AMB.
Exhibit 20

| Description | BUY Order Price | BUY Qty | BUY Order ID | Trade Quantity | Trade Price | Net Position | SELL Order ID | SELL Qty | SELL Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by trade | Running Total | ABS RISK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Trade Group 1** | 113.0450 | 25 | 8264414662 | -25 | 113.0500 | -25 | 8264414151 | 25 | 113.0500 | 07:21:32 | 0:01:20 | 0 | 0 | 25.000 |
| | 113.0450 | 25 | 8264414662 | 5 | 113.0450 | -20 | | | | 07:22:52 | 0:00:01 | 391 | 391 | 20.000 |
| | | 20 | | 20 | 113.0450 | 0 | 8264416945 | | 113.0400 | 07:22:53 | 0:00:01 | 0 | 391 | 20.000 |
| Trade Group 1 Completed | | | | | | | | | | | | | | |
| **Trade Group 2** | | 20 | | -20 | 113.0400 | -20 | 8264416945 | 20 | 113.0400 | 07:24:28 | 0:01:35 | 0 | 0 | 20.000 |
| | | 20 | Card913 | 20 | 113.045 | 0 | | | | 07:24:28 | | -313 | 78 | 78 |
| Trade Group 2 Completed | | | | | | | | | | | | | | |
| **Trade Group 3** | | 3 | Card913 | 3 | 113.04 | 3 | | | | :: | | 0 | 78 | 3.000 |
| | | 1 | Card913 | 1 | 113.04 | 4 | | | | :: | | 0 | 78 | 4.000 |
| | | | | -4 | 113.0400 | 0 | 8264417635 | 4 | 113.0400 | 07:24:49 | 0:00:21 | 0 | 78 | |
| Trade Group 3 Completed | | | | | | | | | | | | | | |
| **Trade Group 4** | | | | -2 | 112.2400 | -2 | 8264421328 | 25 | 112.2400 | 07:28:34 | 0:03:45 | 0 | 78 | 2.000 |
| | | | | -23 | 112.2400 | -25 | 8264421328 | 25 | 112.2400 | 07:28:34 | 0:00:00 | 0 | 78 | 25.000 |
| | | | | -18 | 112.2450 | -43 | 8264421688 | 25 | 112.2400 | 07:28:40 | 0:00:06 | -391 | -313 | 43.000 |
| | | | | -7 | 112.2400 | -50 | 8264421688 | 25 | 112.2400 | 07:28:40 | 0:00:00 | 672 | 359 | 50.000 |
| | 112.2550 | 43 | Card914 | 43 | 112.23 | -7 | | | | 07:29:00 | 0:00:20 | 1,563 | 1,922 | 7.000 |
| | 112.2550 | 7 | 8264412465 | 7 | 112.2550 | 0 | | | | 07:29:00 | | -547 | 1,375 | |
| Trade Group 4 Completed | | | | | | | | | | | | | | |
| **Trade Group 5** | 112.2650 | 25 | 8264422973 | 25 | 112.2650 | 25 | | | | 07:29:20 | 0:00:20 | 0 | 1,375 | 25.000 |
| | 112.2650 | 25 | 8264422967 | 25 | 112.2650 | 50 | | | | 07:29:20 | 0:00:00 | 0 | 1,375 | 50.000 |
| | | | Partial | -5 | 112.2750 | 45 | 8264423906 | 25 | 112.2750 | 07:29:57 | 0:00:37 | 1,563 | 2,938 | 45.000 |
| | | | | -6 | 112.2700 | 39 | 8264423939 | 25 | 112.2700 | 07:29:57 | 0:00:00 | -703 | 2,234 | 39.000 |
| | | | | -9 | 112.2700 | 30 | 8264423939 | 25 | 112.2700 | 07:29:57 | 0:00:00 | 0 | 2,234 | 30.000 |
| | | | | -6 | 112.2700 | 24 | 8264423939 | 25 | 112.2700 | 07:29:57 | 0:00:00 | 0 | 2,234 | 24.000 |
| | | | | -5 | 112.2700 | 19 | 8264423944 | 25 | 112.2700 | 07:29:58 | 0:00:01 | 0 | 2,234 | 19.000 |
| | | | | -4 | 112.2700 | 15 | 8264423939 | 25 | 112.2700 | 07:29:58 | 0:00:00 | 0 | 2,234 | 15.000 |
| | | | | -20 | 112.2700 | -5 | 8264423944 | 25 | 112.2700 | 07:29:59 | 0:00:01 | 0 | 2,234 | 5.000 |
| Trade Group 5 Completed | | | | | | | | | | | | | | |
| **Trade Group 6** | | | | -100 | 112.165 | -105 | Card 914 | 140* | | :: | | 1,641 | 3,875 | 105.000 |
| | 112.0550 | 25 | 8264425951 | 25 | 112.0000 | -80 | | | 112.0000 | 07:30:18 | 0:00:19 | 54,141 | 58,016 | 80.000 |
| | 112.0550 | 25 | 8264425974 | 25 | 112.0000 | -55 | | | 112.0000 | 07:30:19 | 0:00:00 | 0 | 58,016 | 55.000 |
| | 111.1550 | 21 | 8264427495 | 21 | 111.1550 | -34 | | | 111.1550 | 07:30:36 | 0:00:17 | 28,359 | 86,375 | 34.000 |
| | 111.1550 | 4 | 8264427495 | 4 | 111.1550 | -30 | | | 111.1550 | 07:30:36 | 0:00:00 | 0 | 86,375 | 30.000 |
| | 111.1100 | 25 | 8264428347 | 25 | 111.1100 | -5 | | | 112.2700 | 07:30:48 | 0:00:12 | 4,219 | 90,594 | 5.000 |
| Trade Group 6 Completed | | | | | | | | | | | | | | |

Risk — RISK TICKS: 32 — ABS RISK

Profit & Loss — TOTAL: 1,778,688

204

# Trade Group 7

| Description | BUY | | | Trade Information | | | | SELL | | | | | Profit & Loss | | Risk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Order Price | Qty | Order ID | Trade Quantity | Trade Price | Net Position | Order ID | Qty | Order Price | Electronic Order Exec Time | Time from last Electronic Trade | | P&L by trade | Running Total | ABS RISK / RISK TICKS 32 |
| Trade Group 7 | | 100 | Card914 | 100 | 111.07 | 95 | | | | | | | 625 | 91,219 | 95,000 |
| | | 500 | Card914 | 500 | 111.07 | 595 | | | | | | | 0 | 91,219 | 595,000 |
| | | | | -17 | 111.0800 | 578 | 8264429035 | 25 | 111.0800 | 07:30:56 | 0:00:08 | | 18,594 | 109,813 | 578,000 |
| | | | | -2 | 111.0950 | 576 | 8264429035 | 25 | 111.0800 | 07:30:56 | 0:00:00 | | 27,094 | 136,906 | 576,000 |
| | | | | -6 | 111.0800 | 570 | 8264429035 | 25 | 111.0800 | 07:30:56 | 0:00:00 | | -27,000 | 109,906 | 570,000 |
| | | | | -24 | 111.0800 | 546 | 8264429048 | 25 | 111.0800 | 07:30:56 | 0:00:00 | | 0 | 109,906 | 546,000 |
| | | | | -1 | 111.0800 | 545 | 8264429048 | 25 | 111.0800 | 07:30:56 | 0:00:00 | | 0 | 109,906 | 545,000 |
| | | | | -4 | 111.0900 | 541 | 8264429067 | 25 | 111.0900 | 07:30:56 | 0:00:01 | | 17,031 | 126,938 | 541,000 |
| | | | | -6 | 111.0800 | 535 | 8264429067 | 25 | 111.0800 | 07:30:57 | 0:00:00 | | -16,906 | 110,031 | 535,000 |
| | | | | -10 | 111.0800 | 525 | 8264429067 | 25 | 111.0800 | 07:30:57 | 0:00:00 | | 0 | 110,031 | 525,000 |
| | | | | -5 | 111.0800 | 520 | 8264429079 | 25 | 111.0800 | 07:30:57 | 0:00:00 | | 0 | 110,031 | 520,000 |
| | | | | -15 | 111.0800 | 505 | 8264429106 | 25 | 111.0800 | 07:30:57 | 0:00:00 | | 0 | 110,031 | 505,000 |
| | | | | -25 | 111.0800 | 480 | 8264429079 | 25 | 111.0800 | 07:30:57 | 0:00:00 | | 0 | 110,031 | 480,000 |
| | | | | -10 | 111.0800 | 470 | 8264429133 | 25 | 111.0800 | 07:30:57 | 0:00:00 | | 0 | 110,031 | 470,000 |
| | | | | -21 | 111.0800 | 449 | 8264429133 | 25 | 111.0800 | 07:30:58 | 0:00:00 | | 0 | 110,031 | 449,000 |
| | | | | -1 | 111.0800 | 448 | 8264429133 | 25 | 111.0800 | 07:30:58 | 0:00:01 | | 0 | 110,031 | 448,000 |
| | | | | -3 | 111.0800 | 445 | 8264429135 | 25 | 111.0800 | 07:30:58 | 0:00:00 | | 0 | 110,031 | 445,000 |
| | | | | -1 | 111.0800 | 444 | 8264429135 | 25 | 111.0800 | 07:30:58 | 0:00:01 | | 0 | 110,031 | 444,000 |
| | | | | -6 | 111.0800 | 438 | 8264429135 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 438,000 |
| | | | | -18 | 111.0800 | 420 | 8264429151 | 25 | 111.0800 | 07:30:59 | 0:00:01 | | 0 | 110,031 | 420,000 |
| | | | | -20 | 111.0800 | 400 | 8264429151 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 400,000 |
| | | | | -5 | 111.0800 | 395 | 8264429152 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 395,000 |
| | | | | -17 | 111.0800 | 378 | 8264429152 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 378,000 |
| | | | | -8 | 111.0800 | 370 | 8264429172 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 370,000 |
| | | | | -25 | 111.0800 | 345 | 8264429200 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 345,000 |
| | | | | -2 | 111.0800 | 343 | 8264429200 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 343,000 |
| | | | | -25 | 111.0800 | 318 | 8264429183 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 318,000 |
| | | | | -3 | 111.0800 | 315 | 8264429217 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 315,000 |
| | | | | -25 | 111.0800 | 290 | 8264429200 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 290,000 |
| | | | | -20 | 111.0800 | 270 | 8264429201 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 270,000 |
| | | | | -25 | 111.0800 | 245 | 8264429736 | 25 | 111.0800 | 07:30:59 | 0:00:00 | | 0 | 110,031 | 245,000 |
| | | | | -3 | 111.0900 | 242 | 8264429736 | 25 | 111.0900 | 07:31:06 | 0:00:07 | | 7,656 | 117,688 | 242,000 |
| | | | | -9 | 111.0900 | 233 | 8264429750 | 25 | 111.0900 | 07:31:07 | 0:00:01 | | 0 | 117,688 | 233,000 |
| | | | | -22 | 111.0900 | 211 | 8264429768 | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 211,000 |
| | | | | -25 | 111.0900 | 186 | 8264429786 | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 186,000 |
| | | | | -15 | 111.0900 | 171 | 8264429768 | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 171,000 |
| | | | | -24 | 111.0900 | 147 | 8264429786 | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 147,000 |
| | | | | -1 | 111.0900 | 147 | 8264429787 | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 147,000 |
| | | | | -1 | 111.0900 | 146 | 8264429818 | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 146,000 |
| | | | | -25 | 111.0900 | 145 | 8264429806 | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 145,000 |
| | | | | -9 | 111.0900 | 120 | | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 120,000 |
| | | | | -25 | 111.0900 | 111 | | 25 | 111.0900 | 07:31:07 | 0:00:00 | | 0 | 117,688 | 111,000 |
| | | | | | | 86 | | | | | | | 0 | 117,688 | 86,000 |

TOTAL 1,778,688

| Description | BUY Order Price | BUY Qty | BUY Order ID | Trade Quantity | Trade Price | Net Position | Order ID | SELL Qty | SELL Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by Trade | Running Total | ABS RISK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (Cont) | | | | -19 | 111.0900 | 67 | 8264429842 | 25 | 111.0900 | 07:31:07 | 0:00:00 | 0 | 117,688 | 67,000 |
| Trade Group 7 (cont) | | | | -25 | 111.0900 | 42 | 8264429819 | 25 | 111.0900 | 07:31:07 | 0:00:00 | 0 | 117,688 | 42,000 |
| | | | | -16 | 111.0900 | 26 | 8264429818 | 25 | 111.0900 | 07:31:07 | 0:00:00 | 0 | 117,688 | 26,000 |
| | | | | -5 | 111.0900 | 21 | 8264429842 | 25 | 111.0900 | 07:31:07 | 0:00:00 | 0 | 117,688 | 21,000 |
| | | | | -1 | 111.0900 | 20 | 8264429842 | 25 | 111.0900 | 07:31:07 | 0:00:00 | 0 | 117,688 | 20,000 |
| Trade Group 7 Completed (~20 Seconds) | | | | -25 | 111.0950 | -5 | 8264429712 | 25 | 111.0950 | 07:31:08 | 0:00:01 | 313 | 118,000 | 5,000 |

**Trade Information** | **Profit & Loss** TOTAL 1,778,688 | **Risk** RISK TICKS 32

206

| Description | BUY Order Price | BUY Qty | BUY Order ID | Trade Quantity | Trade Price | Net Position | Order ID | SELL Qty | SELL Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by trade | Running Total | ABS RISK | RISK TICKS (32) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Trade Group 8 | | 202 | Card914 | 202 | 111.09 | 197 | | | | | | 78 | 118,078 | 197,000 | 197.000 |
| | | | | -5 | 111.1300 | 192 | 8264428620 | 25 | 111.1300 | 07:31:16 | 0:00:08 | 24,625 | 142,703 | 192,000 | 192.000 |
| | | | | -20 | 111.1300 | 172 | 8264428620 | 25 | 111.1300 | 07:31:17 | 0:00:01 | 0 | 142,703 | 172,000 | 172.000 |
| | | | | -5 | 111.1300 | 167 | 8264428631 | 25 | 111.1300 | 07:31:17 | 0:00:00 | 0 | 142,703 | 167,000 | 167.000 |
| | | | | -20 | 111.1300 | 147 | 8264428631 | 25 | 111.1300 | 07:31:17 | 0:00:00 | 0 | 142,703 | 147,000 | 147.000 |
| | | | | -25 | 111.1300 | 122 | 8264428778 | 25 | 111.1300 | 07:31:17 | 0:00:00 | 0 | 142,703 | 122,000 | 122.000 |
| | | | | -25 | 111.1300 | 97 | 8264428643 | 25 | 111.1300 | 07:31:17 | 0:00:00 | 0 | 142,703 | 97,000 | 97.000 |
| | | | | -25 | 111.1300 | 72 | 8264428790 | 25 | 111.1300 | 07:31:17 | 0:00:00 | 0 | 142,703 | 72,000 | 72.000 |
| | 111.0500 | 25 | 8264431274 | 25 | 111.0500 | 97 | | | | 07:31:24 | 0:00:07 | -18,000 | 124,703 | 97,000 | 97.000 |
| | 111.0500 | 25 | 8264431287 | 25 | 111.0500 | 122 | | | | 07:31:25 | 0:00:01 | 0 | 124,703 | 122,000 | 122.000 |
| | | | | -25 | 111.1150 | 97 | 8264431879 | 25 | 111.1150 | 07:31:34 | 0:00:09 | 24,781 | 149,484 | 97,000 | 97.000 |
| | | | | -25 | 111.1150 | 72 | 8264431888 | 25 | 111.1150 | 07:31:34 | 0:00:00 | 0 | 149,484 | 72,000 | 72.000 |
| | | | | -3 | 111.1150 | 69 | 8264431908 | 25 | 111.1150 | 07:31:35 | 0:00:01 | 0 | 149,484 | 69,000 | 69.000 |
| | | | | -22 | 111.1150 | 47 | 8264431908 | 25 | 111.1150 | 07:31:35 | 0:00:00 | 0 | 149,484 | 47,000 | 47.000 |
| | | | | -25 | 111.1150 | 22 | 8264431926 | 25 | 111.1150 | 07:31:35 | 0:00:00 | 0 | 149,484 | 22,000 | 22.000 |
| | | | | -25 | 111.1350 | 3 | 8264432174 | 25 | 111.1250 | 07:31:38 | 0:00:03 | 1,375 | 150,859 | 3,000 | 3.000 |
| Trade Group 8 Completed (~30 Seconds) | | | | | | | | | | | | | | | |
| Trade Group 9 | | | | -25 | 111.1350 | -28 | 8264432188 | 25 | 111.1250 | 07:31:38 | 0:00:00 | 0 | 150,859 | 28,000 | 28.000 |
| | | | | -25 | 111.1350 | -53 | 8264432198 | 25 | 111.1250 | 07:31:38 | 0:00:00 | 0 | 150,859 | 53,000 | 53.000 |
| Probable Trade Check Event | | | | -40 | 112.165 | -93 | Card 914 | 140** | | | | -57,969 | 92,891 | | |
| Trade Group 9a | | 224 | Card915 | 224 | 111.135 | 131 | 8264433156 | | | | | 101,719 | 194,609 | 131,000 | 131.000 |
| | | | | -23 | 111.1500 | 108 | 8264433156 | 25 | 111.1500 | 07:31:54 | 0:00:16 | 6,141 | 200,750 | 108,000 | 108.000 |
| | | | | -2 | 111.1500 | 106 | 8264433156 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 106,000 | 106.000 |
| | | | | -25 | 111.1500 | 81 | 8264433168 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 81,000 | 81.000 |
| | | | | -3 | 111.1500 | 78 | 8264433183 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 78,000 | 78.000 |
| | | | | -25 | 111.1500 | 53 | 8264433201 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 53,000 | 53.000 |
| | | | | -10 | 111.1500 | 43 | 8264433202 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 43,000 | 43.000 |
| | | | | -22 | 111.1500 | 21 | 8264433183 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 21,000 | 21.000 |
| | | | | -10 | 111.1500 | 11 | 8264433202 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 11,000 | 11.000 |
| | | | | -10 | 111.1500 | 1 | 8264433218 | 25 | 111.1500 | 07:31:54 | 0:00:00 | 0 | 200,750 | 1,000 | 1.000 |
| | | | | -5 | 111.1500 | -4 | 8264433202 | 25 | 111.1500 | 07:31:55 | 0:00:01 | 0 | 200,750 | 4,000 | 4.000 |
| | | | | -15 | 111.1500 | -19 | 8264433218 | 25 | 111.1500 | 07:31:55 | 0:00:00 | 0 | 200,750 | 19,000 | 19.000 |
| | | | | -15 | 111.1500 | -34 | 8264433224 | 25 | 111.1500 | 07:31:55 | 0:00:00 | 0 | 200,750 | 34,000 | 34.000 |
| | | | | -25 | 111.1500 | -59 | 8264433225 | 25 | 111.1500 | 07:31:55 | 0:00:00 | 0 | 200,750 | 59,000 | 59.000 |
| | | | | -10 | 111.1500 | -69 | 8264433224 | 25 | 111.1500 | 07:31:55 | 0:00:00 | 0 | 200,750 | 69,000 | 69.000 |
| | | | | -11 | 111.1600 | -80 | 8264433102 | 25 | 111.1600 | 07:31:55 | 0:00:00 | 0 | 198,594 | 80,000 | 80.000 |
| | | | | -14 | 111.1600 | -94 | 8264433102 | 25 | 111.1600 | 07:31:55 | 0:00:00 | 0 | 198,594 | 94,000 | 94.000 |
| Group 9a Completed (~17 Seconds) | | [9a -225] | | | | | | | | | | -2,156 | 198,594 | | |
| | | 307 | Card915 | 307 | 111.15 | 213 | 8264433947 | | | | | 2,938 | 211,516 | 188,000 | 188.000 |
| | | | | -25 | 111.1650 | 188 | 8264433947 | 25 | 111.1650 | 07:32:02 | 0:00:07 | 9,984 | 211,516 | 163,000 | 163.000 |
| | | | | -25 | 111.1650 | 163 | 8264433927 | 25 | 111.1650 | 07:32:02 | 0:00:00 | 0 | 211,516 | 148,000 | 148.000 |
| | | | | -15 | 111.1650 | 148 | 8264433963 | 25 | 111.1650 | 07:32:03 | 0:00:01 | 0 | 211,516 | 145,000 | 145.000 |
| | | | | -3 | 111.1650 | 145 | 8264433963 | 25 | 111.1650 | 07:32:03 | 0:00:00 | 0 | 211,516 | 120,000 | 120.000 |
| | | | | -25 | 111.1650 | 120 | 8264433999 | 25 | 111.1650 | 07:32:03 | 0:00:00 | 0 | 211,516 | 120,000 | 120.000 |

TOTAL: 1,778,688

4

| | BUY | | | Trade Information | | | | SELL | | Electronic | Time from last | Profit & Loss | | Risk |
| Description | Order Price | Qty | Order ID | Trade Quantity | Trade Price | Net Position | Order ID | Qty | Order Price | Order Exec Time | Electronic Trade | P&L by trade | Running Total | ABS RISK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | TOTAL 1,778,688 | | RISK TICKS 32 |
| (cont) | | | | -25 | 111.1650 | 95 | 8264433975 | 25 | 111.1650 | 07:32:03 | 0:00:00 | 0 | 211,516 | 95,000 |
| Trade Group 9 (cont) | | | | -7 | 111.1650 | 88 | 8264433963 | 25 | 111.1650 | 07:32:03 | 0:00:00 | 0 | 211,516 | 88,000 |
| | | | | -25 | 111.1650 | 63 | 8264433977 | 25 | 111.1650 | 07:32:03 | 0:00:00 | 0 | 211,516 | 63,000 |
| | | | | -6 | 111.1700 | 57 | 8264433454 | 25 | 111.1650 | 07:32:10 | 0:00:07 | 984 | 212,500 | 57,000 |
| | | | | -15 | 111.1650 | 42 | 8264433454 | 25 | 111.1650 | 07:32:10 | 0:00:00 | -891 | 211,609 | 42,000 |
| | | | | -4 | 111.1650 | 38 | 8264433461 | 25 | 111.1650 | 07:32:10 | 0:00:00 | 0 | 211,609 | 38,000 |
| | | | | -25 | 111.1650 | 13 | | 25 | 111.1650 | 07:32:10 | 0:00:00 | 0 | 211,609 | 13,000 |
| Trade Group 9 Completed | | | | -16 | 111.1800 | -3 | 8264427036 | 25 | 111.1800 | 07:32:13 | 0:00:03 | 609 | 212,219 | 3,000 |

208

Trade Group 10

| Description | BUY Order Price | BUY Qty | BUY Order ID | Trade Quantity | Trade Price | Net Position | Order ID | SELL Qty | SELL Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by trade | Running Total | ABS RISK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Trade Group 10 | | | | | | | | | | | | TOTAL 1,778,688 | | RISK TICKS 32 |
| | | | | -25 | 111.1800 | -28 | 8264427013 | 25 | 111.1800 | 07:32:13 | 0:00:00 | 0 | 212,219 | 28,000 |
| | | | | -25 | 111.1800 | -53 | 8264426995 | 25 | 111.1800 | 07:32:13 | 0:00:00 | 0 | 212,219 | 53,000 |
| | | | | -9 | 111.1800 | -62 | 8264427036 | 25 | 111.1800 | 07:32:14 | 0:00:01 | 0 | 212,219 | 62,000 |
| | | | | -6 | 111.1800 | -68 | 8264427059 | 25 | 111.1800 | 07:32:14 | 0:00:00 | 0 | 212,219 | 68,000 |
| | | | | -15 | 111.1800 | -83 | 8264427059 | 25 | 111.1800 | 07:32:14 | 0:00:00 | 0 | 212,219 | 83,000 |
| | | | | -4 | 111.1800 | -87 | 8264427059 | 25 | 111.1800 | 07:32:14 | 0:00:00 | 0 | 212,219 | 87,000 |
| | | | | -5 | 111.1800 | -92 | 8264427093 | 25 | 111.1800 | 07:32:14 | 0:00:00 | 0 | 212,219 | 92,000 |
| | | | | -25 | 111.1800 | -117 | 8264427072 | 25 | 111.1800 | 07:32:14 | 0:00:00 | 0 | 212,219 | 117,000 |
| | | | | -3 | 111.1800 | -120 | 8264427093 | 25 | 111.1800 | 07:32:14 | 0:00:00 | 0 | 212,219 | 120,000 |
| | | | | -10 | 111.1800 | -130 | 8264427093 | 25 | 111.1800 | 07:32:15 | 0:00:00 | 0 | 212,219 | 130,000 |
| | | | | -7 | 111.1800 | -137 | 8264427093 | 25 | 111.1800 | 07:32:15 | 0:00:01 | 0 | 212,219 | 137,000 |
| | | | | -25 | 111.1800 | -148 | 8264427094 | 25 | 111.1800 | 07:32:15 | 0:00:00 | 0 | 212,219 | 148,000 |
| | | | | -25 | 111.1800 | -173 | 8264427208 | 25 | 111.1800 | 07:32:15 | 0:00:00 | 0 | 212,219 | 173,000 |
| | | | | -14 | 111.1800 | -187 | 8264427094 | 25 | 111.1800 | 07:32:15 | 0:00:00 | 0 | 212,219 | 187,000 |
| | | | | -25 | 111.1800 | -212 | 8264427231 | 25 | 111.1800 | 07:32:15 | 0:00:00 | 0 | 212,219 | 212,000 |
| | | | | -200 | 111.22 | -412 | Card915 | 200 | 111.1800 | :: | | -26,500 | 185,719 | 412,000 |
| | 111.2050 | 25 | 8264435504 | 25 | 111.2050 | -387 | | | | 07:32:25 | 0:00:10 | 19,313 | 205,031 | 387,000 |
| | 111.2100 | 25 | 8264435797 | 25 | 111.2100 | -362 | | | | 07:32:30 | 0:00:05 | -6,047 | 198,984 | 362,000 |
| | 111.2100 | 25 | 8264435806 | 25 | 111.2100 | -337 | | | | 07:32:30 | 0:00:00 | 0 | 198,984 | 337,000 |
| | 111.2100 | 25 | 8264435808 | 25 | 111.2100 | -312 | | | | 07:32:30 | 0:00:00 | 0 | 198,984 | 312,000 |
| | 111.2300 | 25 | 8264436599 | 25 | 111.2300 | -287 | | | | 07:32:41 | 0:00:11 | -19,500 | 179,484 | 287,000 |
| | 111.2300 | 25 | 8264436614 | 25 | 111.2300 | -262 | | | | 07:32:41 | 0:00:00 | 0 | 179,484 | 262,000 |
| | 111.2300 | 25 | 8264437856 | 25 | 111.2300 | -237 | | | | 07:33:03 | 0:00:22 | 0 | 179,484 | 237,000 |
| | 111.2300 | 25 | 8264437870 | 16 | 111.2250 | -221 | | | | 07:33:03 | 0:00:00 | 3,703 | 183,188 | 221,000 |
| | 111.2300 | 25 | 8264437870 | 9 | 111.2300 | -212 | | | | 07:33:03 | 0:00:00 | -3,453 | 179,734 | 212,000 |
| | 111.2300 | 25 | 8264437882 | 25 | 111.2250 | -187 | | | | 07:33:03 | 0:00:00 | 3,313 | 183,047 | 187,000 |
| | 111.2300 | 25 | 8264437892 | 21 | 111.2250 | -166 | | | | 07:33:04 | 0:00:01 | 0 | 183,047 | 166,000 |
| | 111.2300 | 25 | 8264437892 | 4 | 111.2250 | -162 | | | | 07:33:04 | 0:00:00 | 0 | 183,047 | 162,000 |
| | 111.2300 | 25 | 8264437893 | 24 | 111.2300 | -138 | | | | 07:33:04 | 0:00:00 | -2,531 | 180,516 | 138,000 |
| | 111.2300 | 25 | 8264437893 | 1 | 111.2250 | -137 | | | | 07:33:04 | 0:00:00 | 2,156 | 182,672 | 137,000 |
| | 111.2200 | 25 | 8264436520 | 2 | 111.2250 | -135 | | | | 07:33:04 | 0:00:00 | 2,141 | 184,813 | 135,000 |
| | 111.2200 | 25 | 8264436499 | 25 | 111.2200 | -110 | | | | 07:33:06 | 0:00:02 | 0 | 184,813 | 110,000 |
| | 111.2200 | 25 | 8264436520 | 15 | 111.2200 | -95 | | | | 07:33:06 | 0:00:00 | 0 | 184,813 | 95,000 |
| | 111.2200 | 25 | 8264436535 | 4 | 111.2200 | -91 | | | | 07:33:08 | 0:00:02 | 0 | 184,813 | 91,000 |
| | 111.2200 | 25 | 8264436535 | 8 | 111.2200 | -83 | | | | 07:33:08 | 0:00:00 | 0 | 184,813 | 83,000 |
| | 111.2200 | 25 | 8264436535 | 15 | 111.2200 | -68 | | | | 07:33:11 | 0:00:03 | 0 | 184,813 | 68,000 |
| | 111.2200 | 25 | 8264436535 | 6 | 111.2200 | -62 | | | | 07:33:11 | 0:00:00 | 0 | 184,813 | 62,000 |
| | 111.2400 | 25 | 8264439082 | 25 | 111.2350 | -37 | | | | 07:33:24 | 0:00:13 | -2,906 | 181,906 | 37,000 |
| | 111.2400 | 25 | 8264439098 | 10 | 111.2400 | -27 | | | | 07:33:24 | 0:00:00 | -578 | 181,328 | 27,000 |
| | 111.2400 | 25 | 8264439098 | 12 | 111.2350 | -15 | | | | 07:33:24 | 0:00:00 | 422 | 181,750 | 15,000 |
| | 111.2400 | 25 | 8264439098 | 3 | 111.2350 | -12 | | | | 07:33:24 | 0:00:00 | | 181,750 | 12,000 |
| | 111.2350 | 25 | 8264439212 | 4 | 111.2350 | -8 | | | | 07:33:32 | 0:00:08 | | 181,750 | 8,000 |

209

(Cont)

| Description | BUY Order Price | BUY Qty | BUY Order ID | Trade Quantity | Trade Price | Net Position | SELL Order ID | SELL Qty | SELL Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by trade | Running Total (TOTAL 1,778,688) | ABS RISK (RISK TICKS 32) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Trade Group 10 (cont) | 111.2350 | 25 | 8264439212 | 15 | 111.2350 | 7 | | | | 07:33:32 | 0:00:00 | 0 | 181,750 | 7,000 |
| | 111.2350 | 25 | 8264439212 | 6 | 111.2350 | 13 | | | | 07:33:32 | 0:00:00 | 0 | 181,750 | 13,000 |
| | 111.2350 | 25 | 8264439280 | 25 | 111.2350 | 38 | | | | 07:33:32 | 0:00:00 | 0 | 181,750 | 38,000 |
| | 111.2500 | 25 | 8264440096 | 25 | 111.2500 | 63 | | | | 07:33:42 | 0:00:10 | 1,781 | 183,531 | 63,000 |
| | 111.2500 | 25 | 8264440175 | 25 | 111.2450 | 88 | | | | 07:33:43 | 0:00:01 | -984 | 182,547 | 88,000 |
| | 111.2400 | 25 | 8264439926 | 25 | 111.2400 | 113 | | | | 07:33:44 | 0:00:01 | -1,375 | 181,172 | 113,000 |
| | 111.2350 | 25 | 8264439753 | 25 | 111.2350 | 138 | | | | 07:33:44 | 0:00:00 | -1,766 | 179,406 | 138,000 |
| | 111.2350 | 25 | 8264439743 | 25 | 111.2350 | 163 | | | | 07:33:44 | 0:00:00 | 0 | 179,406 | 163,000 |
| | 111.2400 | 25 | 8264439936 | 25 | 111.2400 | 188 | | | | 07:33:44 | 0:00:00 | 2,547 | 181,953 | 188,000 |
| | 111.2350 | 25 | 8264439763 | 25 | 111.2350 | 213 | | | | 07:33:44 | 0:00:00 | -2,938 | 179,016 | 213,000 |
| | | | | -200 | 111.25 | 13 | Card915 | 200 | 111.2450 | :: | | 9,984 | 189,000 | 13,000 |
| | | | | -11 | 111.2450 | 2 | 8264441070 | 25 | 111.2450 | 07:33:59 | 0:00:15 | -203 | 188,797 | 2,000 |
| | | | | -2 | 111.2450 | 0 | 8264441081 | 25 | 111.2450 | 07:33:59 | 0:00:00 | 0 | 188,797 | |
| Trade Group 10 Completed | | | | -14 | 111.2450 | -14 | 8264441070 | 25 | 111.2450 | 07:33:59 | 0:00:00 | 0 | 188,797 | 14,000 |
| Position Group 10 Overhedge | | | | -23 | 111.2450 | -37 | 8264441081 | 25 | 111.2450 | 07:33:59 | 0:00:00 | 0 | 188,797 | 37,000 |
| Trade Group 11 | Buy | Card915 | | 312 | 111.23 | 275 | | | | :: | | 1,734 | 190,531 | 275,000 |
| | Buy | Card915 | | 50 | 111.23 | 325 | | | 7 3 4 :09 | :: | | 0 | 190,531 | 325,000 |
| | | | | -25 | 111.2300 | 300 | 8264441660 | 25 | 111.2300 | 07:34:11 | 0:00:12 | 0 | 190,531 | 300,000 |
| | | | | -25 | 111.2300 | 275 | 8264441643 | 25 | 111.2300 | 07:34:11 | 0:00:00 | 0 | 190,531 | 275,000 |
| | | | | -25 | 111.2300 | 250 | 8264441651 | 25 | 111.2300 | 07:34:11 | 0:00:00 | 0 | 190,531 | 250,000 |
| | | | | -25 | 111.2300 | 225 | 8264441670 | 25 | 111.2300 | 07:34:11 | 0:00:00 | 0 | 190,531 | 225,000 |
| | | | | -25 | 111.2400 | 200 | 8264441922 | 25 | 111.2400 | 07:34:17 | 0:00:06 | 7,031 | 197,563 | 200,000 |
| | | | | -25 | 111.2400 | 175 | 8264441934 | 25 | 111.2400 | 07:34:17 | 0:00:00 | 0 | 197,563 | 175,000 |
| | | | | -25 | 111.2550 | 150 | 8264442497 | 25 | 111.2550 | 07:34:30 | 0:00:13 | 8,203 | 205,766 | 150,000 |
| | | | | -25 | 111.2550 | 125 | 8264442507 | 25 | 111.2550 | 07:34:30 | 0:00:00 | 0 | 205,766 | 125,000 |
| | | | | -23 | 111.2500 | 102 | 8264442827 | 25 | 111.2500 | 07:34:37 | 0:00:07 | -1,953 | 203,813 | 102,000 |
| | | | | -2 | 111.2500 | 100 | 8264442827 | 25 | 111.2500 | 07:34:38 | 0:00:01 | 0 | 203,813 | 100,000 |
| | | | | -25 | 111.2550 | 75 | 8264444419 | 25 | 111.2550 | 07:35:07 | 0:00:29 | 1,563 | 205,375 | 75,000 |
| | | | | -81 | 111.255 | -6 | Card916 | 81 | | 07:35:24 | :: | 0 | 205,375 | 6,000 |
| | 111.3050 | 6 | 8264446192 | 3 | 111.3050 | -3 | | | | 07:35:24 | 0:00:17 | -938 | 204,438 | 3,000 |
| | 111.3050 | 6 | 8264446192 | 2 | 111.3050 | -1 | | | | 07:35:24 | 0:00:00 | 0 | 204,438 | 1,000 |
| Trade Group 11 Completed | 111.3050 | 6 | 8264446192 | 1 | 111.3050 | 0 | | | | 07:35:24 | 0:00:00 | 0 | 204,438 | |

210

| | | | Trade Information | | | | | | | | Profit & Loss | | Risk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **BUY** | | | | | | | **SELL** | | | | **TOTAL** 1,778,688 | **RISK TICKS** 32 |
| Description | Order Price | Qty | Order ID | Trade Quantity | Trade Price | Net Position | Order ID | Qty | Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by trade — Running Total | ABS RISK |
| Trade Group 12 | | 200 | Card916 | 200 | 112.05 | 200 | | | | :: | | 0 — 204,438 | 200,000 |
| | | | | -2 | 112.0450 | 198 | 8264449810 | 25 | 112.0450 | 07:36:14 | 0:00:50 | -3,125 — 201,313 | 198,000 |
| | | | | -5 | 112.0450 | 193 | 8264449810 | 25 | 112.0450 | 07:36:15 | 0:00:01 | 0 — 201,313 | 193,000 |
| | | | | -6 | 112.0450 | 187 | 8264449810 | 25 | 112.0450 | 07:36:16 | 0:00:01 | 0 — 201,313 | 187,000 |
| | | | | -12 | 112.0450 | 175 | 8264449810 | 25 | 112.0450 | 07:36:16 | 0:00:00 | 0 — 201,313 | 175,000 |
| | | | | -25 | 112.0450 | 150 | 8264449821 | 25 | 112.0450 | 07:36:16 | 0:00:00 | 0 — 201,313 | 150,000 |
| | | | | -25 | 112.0450 | 125 | 8264449831 | 25 | 112.0450 | 07:36:16 | 0:00:00 | 0 — 201,313 | 125,000 |
| | | | | -18 | 112.0550 | 107 | 8264450399 | 25 | 112.0550 | 07:36:25 | 0:00:09 | 3,906 — 205,219 | 107,000 |
| Partial*** | | | | -8 | 112.0550 | 99 | 8264450405 | 25 | 112.0550 | 07:36:25 | 0:00:00 | 0 — 205,219 | 99,000 |
| | | | | -7 | 112.0550 | 92 | 8264450399 | 25 | 112.0550 | 07:36:25 | 0:00:00 | 0 — 205,219 | 92,000 |
| Partial**** | | | | -9 | 112.0550 | 83 | 8264450405 | 25 | 112.0550 | 07:36:27 | 0:00:02 | 0 — 205,219 | 83,000 |
| Trade Group 12 Suspended | | | | | | | | | | | | | |
| Trade Group 12a | | 2274 | Card916 | 2274 | 111.065 | 2357 | Card916 | | | :: | | -80,406 — 124,813 | 2,357,000 |
| | | | | -485 | 111.07 | 1872 | Card916 | 485 | 112.0200 | 07:37:23 | 0:00:56 | 36,828 — 161,641 | 1,872,000 |
| | | | | -6 | 112.0200 | 1866 | 8264453659 | 50 | 112.0200 | 07:37:24 | 0:00:01 | 1,579,500 — 1,741,141 | 1,866,000 |
| | | | | -44 | 112.0200 | 1822 | 8264453659 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,822,000 |
| | | | | -14 | 112.0200 | 1808 | 8264453671 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,808,000 |
| | | | | -32 | 112.0200 | 1776 | 8264453671 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,776,000 |
| | | | | -4 | 112.0200 | 1772 | 8264453684 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,772,000 |
| | | | | -5 | 112.0200 | 1767 | 8264453684 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,767,000 |
| | | | | -15 | 112.0200 | 1752 | 8264453684 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,752,000 |
| | | | | -16 | 112.0200 | 1736 | 8264453684 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,736,000 |
| | | | | -14 | 112.0200 | 1722 | 8264453684 | 50 | 112.0200 | 07:37:24 | 0:00:00 | 0 — 1,741,141 | 1,722,000 |
| | | | | -150 | 112.025 | 1572 | Card916 | 150 | 112.0200 | 07:37:25 | 0:00:01 | 26,906 — 1,768,047 | 1,572,000 |
| | | | | -22 | 112.0250 | 1550 | 8264453552 | 50 | 112.0250 | 07:37:26 | 0:00:01 | 0 — 1,768,047 | 1,550,000 |
| | | | | -1 | 112.0250 | 1549 | 8264453562 | 50 | 112.0250 | 07:37:26 | 0:00:00 | 0 — 1,768,047 | 1,549,000 |
| | | | | -50 | 112.0250 | 1499 | 8264453552 | 50 | 112.0250 | 07:37:26 | 0:00:00 | 0 — 1,768,047 | 1,499,000 |
| | | | | -50 | 112.0250 | 1449 | 8264454040 | 50 | 112.0250 | 07:37:26 | 0:00:00 | 0 — 1,768,047 | 1,449,000 |
| | | | | -27 | 112.0250 | 1422 | 8264454049 | 50 | 112.0250 | 07:37:26 | 0:00:00 | 0 — 1,768,047 | 1,422,000 |
| | | | | -50 | 112.0250 | 1372 | 8264454049 | 50 | 112.0250 | 07:37:31 | 0:00:05 | 0 — 1,768,047 | 1,372,000 |
| | | | | -3 | 112.0250 | 1369 | 8264454049 | 50 | 112.0250 | 07:37:32 | 0:00:01 | 0 — 1,768,047 | 1,369,000 |
| | | | | -6 | 112.0250 | 1363 | 8264454099 | 50 | 112.0250 | 07:37:32 | 0:00:00 | 0 — 1,768,047 | 1,363,000 |
| | | | | -15 | 112.0250 | 1348 | 8264454099 | 50 | 112.0250 | 07:37:32 | 0:00:00 | 0 — 1,768,047 | 1,348,000 |
| | | | | -1 | 112.0250 | 1347 | 8264454097 | 50 | 112.0250 | 07:37:32 | 0:00:00 | 0 — 1,768,047 | 1,347,000 |
| | | | | -15 | 112.0250 | 1332 | 8264454597 | 50 | 112.0250 | 07:37:39 | 0:00:07 | 0 — 1,768,047 | 1,332,000 |
| | | | | -10 | 112.0250 | 1322 | 8264454597 | 50 | 112.0250 | 07:37:39 | 0:00:00 | 0 — 1,768,047 | 1,322,000 |
| | | | | -4 | 112.0200 | 1318 | 8264454597 | 50 | 112.0200 | 07:37:39 | 0:00:00 | 0 — 1,768,047 | 1,318,000 |
| | | | | -21 | 112.0200 | 1297 | 8264454597 | 50 | 112.0200 | 07:37:39 | 0:00:00 | -20,656 — 1,747,391 | 1,297,000 |
| | | | | -25 | 112.0200 | 1272 | 8264454597 | 50 | 112.0200 | 07:37:39 | 0:00:00 | 0 — 1,747,391 | 1,272,000 |
| | | | | -5 | 112.0200 | 1267 | 8264455607 | 50 | 112.0200 | 07:37:39 | 0:00:01 | 0 — 1,747,391 | 1,267,000 |
| | | | | -30 | 112.0200 | 1237 | 8264455607 | 50 | 112.0200 | 07:37:40 | 0:00:00 | 0 — 1,747,391 | 1,237,000 |
| | | | | -1 | 112.0200 | 1236 | 8264456615 | 50 | 112.0200 | 07:37:40 | 0:00:01 | 0 — 1,747,391 | 1,236,000 |
| | | | | -6 | 112.0200 | 1230 | 8264456615 | 50 | 112.0200 | 07:37:40 | 0:00:00 | 0 — 1,747,391 | 1,230,000 |

211

| Description | BUY Order Price | BUY Qty | BUY Order ID | Trade Quantity | Trade Price | Net Position | Order ID | SELL Qty | SELL Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by trade | Running Total | ABS RISK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (Cont) | | | | -14 | 112.0200 | 1216 | 8264454607 | 50 | 112.0200 | 07:37:40 | 0:00:00 | 0 | 1,747,391 | 1,216,000 |
| Trade Group 12a (cont) | | | | -15 | 112.0200 | 1201 | 8264454615 | 50 | 112.0200 | 07:37:40 | 0:00:00 | 0 | 1,747,391 | 1,201,000 |
| | | | | -29 | 112.0200 | 1172 | 8264454615 | 50 | 112.0200 | 07:37:40 | 0:00:00 | 0 | 1,747,391 | 1,172,000 |
| | | | | -50 | 112.0150 | 1122 | 8264455004 | 50 | 112.0150 | 07:37:48 | 0:00:08 | -18,313 | 1,729,078 | 1,122,000 |
| | | | | -50 | 112.0150 | 1072 | 8264455018 | 50 | 112.0150 | 07:37:49 | 0:00:01 | 0 | 1,729,078 | 1,072,000 |
| | | | | -3 | 112.0150 | 1069 | 8264455019 | 50 | 112.0150 | 07:37:50 | 0:00:01 | 0 | 1,729,078 | 1,069,000 |
| | | | | -36 | 112.0150 | 1033 | 8264455019 | 50 | 112.0150 | 07:37:50 | 0:00:00 | 0 | 1,729,078 | 1,033,000 |
| | | | | -6 | 112.0150 | 1027 | 8264455022 | 50 | 112.0150 | 07:37:50 | 0:00:00 | 0 | 1,729,078 | 1,027,000 |
| | | | | -25 | 112.0150 | 1002 | 8264455022 | 50 | 112.0150 | 07:37:50 | 0:00:00 | 0 | 1,729,078 | 1,002,000 |
| | | | | -11 | 112.0150 | 991 | 8264455019 | 50 | 112.0150 | 07:37:50 | 0:00:00 | 0 | 1,729,078 | 991,000 |
| | | | | -19 | 112.0150 | 972 | 8264455022 | 50 | 112.0150 | 07:37:51 | 0:00:01 | 0 | 1,729,078 | 972,000 |
| | | | | -17 | 112.0150 | 955 | 8264455023 | 50 | 112.0150 | 07:37:51 | 0:00:00 | 0 | 1,729,078 | 955,000 |
| | | | | -33 | 112.0150 | 922 | 8264455023 | 50 | 112.0150 | 07:37:51 | 0:00:00 | 0 | 1,729,078 | 922,000 |
| | | | | -50 | 112.0200 | 872 | 8264455408 | 50 | 112.0200 | 07:37:59 | 0:00:08 | 14,406 | 1,743,484 | 872,000 |
| | | | | -50 | 112.0200 | 822 | 8264455419 | 50 | 112.0200 | 07:37:59 | 0:00:00 | 0 | 1,743,484 | 822,000 |
| | | | | -50 | 112.0200 | 772 | 8264455430 | 50 | 112.0200 | 07:37:59 | 0:00:00 | 0 | 1,743,484 | 772,000 |
| | | | | -50 | 112.0200 | 722 | 8264455431 | 50 | 112.0200 | 07:37:59 | 0:00:00 | 0 | 1,743,484 | 722,000 |
| | | | | -50 | 112.0200 | 672 | 8264455400 | 50 | 112.0200 | 07:38:19 | 0:00:20 | 0 | 1,743,484 | 672,000 |
| | | | | -18 | 112.0250 | 654 | 8264456474 | 50 | 112.0250 | 07:38:19 | 0:00:00 | 10,500 | 1,753,984 | 654,000 |
| | | | | -4 | 112.0250 | 650 | 8264456474 | 50 | 112.0250 | 07:38:20 | 0:00:01 | 0 | 1,753,984 | 650,000 |
| | | | | -7 | 112.0250 | 643 | 8264456474 | 50 | 112.0250 | 07:38:20 | 0:00:00 | 0 | 1,753,984 | 643,000 |
| | | | | -17 | 112.0250 | 626 | 8264456474 | 50 | 112.0250 | 07:38:20 | 0:00:00 | 0 | 1,753,984 | 626,000 |
| | | | | -4 | 112.0250 | 622 | 8264456474 | 50 | 112.0250 | 07:38:20 | 0:00:00 | 0 | 1,753,984 | 622,000 |
| | | | | -50 | 112.0250 | 572 | 8264456483 | 50 | 112.0250 | 07:38:20 | 0:00:00 | 0 | 1,753,984 | 572,000 |
| | | | | -30 | 112.0250 | 542 | 8264457158 | 50 | 112.0250 | 07:38:33 | 0:00:13 | 0 | 1,753,984 | 542,000 |
| | | | | -15 | 112.0250 | 527 | 8264457158 | 50 | 112.0250 | 07:38:33 | 0:00:00 | 0 | 1,753,984 | 527,000 |
| | | | | -5 | 112.0250 | 522 | 8264457158 | 50 | 112.0250 | 07:38:33 | 0:00:00 | 0 | 1,753,984 | 522,000 |
| | | | | -8 | 112.0250 | 514 | 8264457170 | 50 | 112.0250 | 07:38:33 | 0:00:00 | 0 | 1,753,984 | 514,000 |
| | | | | -3 | 112.0250 | 511 | 8264457170 | 50 | 112.0250 | 07:38:33 | 0:00:00 | 0 | 1,753,984 | 511,000 |
| | | | | -30 | 112.0250 | 481 | 8264457170 | 50 | 112.0250 | 07:38:33 | 0:00:00 | 0 | 1,753,984 | 481,000 |
| | | | | -9 | 112.0250 | 472 | 8264457170 | 50 | 112.0250 | 07:38:33 | 0:00:00 | 0 | 1,753,984 | 472,000 |
| | | | | -2 | 112.0250 | 470 | 8264458581 | 50 | 112.0250 | 07:38:57 | 0:00:24 | 0 | 1,753,984 | 470,000 |
| | | | | -18 | 112.0250 | 452 | 8264458581 | 50 | 112.0250 | 07:38:57 | 0:00:00 | 0 | 1,753,984 | 452,000 |
| | | | | -2 | 112.0250 | 450 | 8264458581 | 50 | 112.0250 | 07:38:57 | 0:00:00 | 0 | 1,753,984 | 450,000 |
| | | | | -9 | 112.0250 | 441 | 8264458581 | 50 | 112.0250 | 07:38:58 | 0:00:01 | 0 | 1,753,984 | 441,000 |
| | | | | -19 | 112.0250 | 422 | 8264458581 | 50 | 112.0250 | 07:38:58 | 0:00:00 | 0 | 1,753,984 | 422,000 |
| | | | | -31 | 112.0250 | 391 | 8264458594 | 50 | 112.0250 | 07:38:58 | 0:00:00 | 0 | 1,753,984 | 391,000 |
| | | | | -19 | 112.0250 | 372 | 8264458594 | 50 | 112.0250 | 07:38:59 | 0:00:01 | 0 | 1,753,984 | 372,000 |
| | | | | -10 | 112.03 | 362 | Card0916 | 10 | 112.0350 | :: | 0:00:11 | 5,813 | 1,759,797 | 362,000 |
| | | | | -50 | 112.0350 | 312 | 8264459204 | 50 | 112.0350 | 07:39:10 | 0:00:11 | 5,656 | 1,765,453 | 312,000 |
| | | | | -50 | 112.0350 | 262 | 8264459197 | 50 | 112.0350 | 07:39:10 | 0:00:00 | 0 | 1,765,453 | 262,000 |
| | | | | -50 | 112.0400 | 212 | 8264459783 | 50 | 112.0400 | 07:39:25 | 0:00:15 | 4,094 | 1,769,547 | 212,000 |

**Risk / RISK TICKS: 32**

**TOTAL: 1,778,688**

7a

212

6

| | BUY | | | Trade Information | | | | SELL | | Electronic Order Exec Time | Time from last Electronic Trade | Profit & Loss TOTAL 1,778,688 | | Risk RISK TICKS 32 |
| Description | Order Price | Qty | Order ID | Trade Quantity | Trade Price | Net Position | Order ID | Qty | Order Price | | | P&L by trade | Running Total | ABS RISK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | -25 | 112.0400 | 187 | 8264459800 | 50 | 112.0400 | 07:39:25 | 0:00:00 | 0 | 1,769,547 | 187,000 |
| (Cont) | | | | -24 | 112.0400 | 163 | 8264459800 | 50 | 112.0400 | 07:39:25 | 0:00:00 | 0 | 1,769,547 | 163,000 |
| | | | | -1 | 112.0400 | 162 | 8264459800 | 50 | 112.0400 | 07:39:25 | 0:00:00 | 0 | 1,769,547 | 162,000 |
| Trade Group 12a (con) | | | | -10 | 112.0550 | 152 | 8264460617 | 50 | 112.0550 | 07:39:34 | 0:00:09 | 7,594 | 1,777,141 | 152,000 |
| | | | | -30 | 112.0550 | 122 | 8264460617 | 50 | 112.0550 | 07:39:35 | 0:00:01 | 0 | 1,777,141 | 122,000 |
| | | | | -10 | 112.0550 | 112 | 8264460617 | 50 | 112.0550 | 07:39:35 | 0:00:00 | 0 | 1,777,141 | 112,000 |
| | | | | -22 | 112.0550 | 90 | 8264460623 | 50 | 112.0550 | 07:39:35 | 0:00:00 | 0 | 1,777,141 | 90,000 |
| | | | | -28 | 112.0550 | 62 | 8264460623 | 50 | 112.0550 | 07:39:35 | 0:00:00 | 0 | 1,777,141 | 62,000 |
| | | | | -25 | 112.0600 | 37 | 8264461209 | 25 | 112.0600 | 07:39:46 | 0:00:11 | 969 | 1,778,109 | 37,000 |
| | | | | -25 | 112.0600 | 12 | 8264461279 | 25 | 112.0600 | 07:39:48 | 0:00:02 | 0 | 1,778,109 | 12,000 |
| Trade Group 12 and 12a Completed | | | | -12 | 112.0650 | 0 | 8264461848 | 12 | 112.0650 | 07:39:57 | 0:00:09 | 188 | 1,778,297 | - |

10

| Description | BUY Order Price | BUY Qty | BUY Order ID | Trade Quantity | Trade Price | Net Position | Order ID | SELL Qty | SELL Order Price | Electronic Order Exec Time | Time from last Electronic Trade | P&L by trade | Running Total | ABS RISK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | **TOTAL** 1,778,688 | | **RISK TICKS** 32 |
| Trade Group 13 | | | | | | | | | | | | | | |
| | | | | -5 | 111.3000 | -5 | 8264473288 | 5 | 111.3000 | 07:43:24 | 0:03:27 | 0 | 1,778,297 | 5,000 |
| | | | | -25 | 111.3050 | -30 | 8264477285 | 25 | 111.3050 | 07:44:40 | 0:01:16 | -78 | 1,778,219 | 30,000 |
| | | | | -10 | 111.3050 | -40 | 8264477299 | 25 | 111.3050 | 07:44:41 | 0:00:01 | 0 | 1,778,219 | 40,000 |
| | | | | -1 | 111.3050 | -41 | 8264477299 | 25 | 111.3050 | 07:44:41 | 0:00:00 | 0 | 1,778,219 | 41,000 |
| | | | | -9 | 111.3050 | -50 | 8264477299 | 25 | 111.3050 | 07:44:41 | 0:00:00 | 0 | 1,778,219 | 50,000 |
| | 111.3000 | 25 | 8264477605 | 25 | 111.3000 | -25 | | | | 07:44:48 | 0:00:07 | 781 | 1,779,000 | 25,000 |
| | 111.3000 | 25 | 8264477619 | 4 | 111.3000 | -21 | | | | 07:44:48 | 0:00:00 | 0 | 1,779,000 | 21,000 |
| | 111.3000 | 25 | 8264477619 | 3 | 111.3000 | -18 | | | | 07:44:48 | 0:00:00 | 0 | 1,779,000 | 18,000 |
| | 111.3000 | 25 | 8264477619 | 18 | 111.3000 | 0 | | | | 07:44:48 | 0:00:00 | - | 1,779,000 | - |
| | | | | -5 | 111.2950 | -5 | 8264478190 | 5 | 111.2950 | 07:44:57 | 0:00:09 | 0 | 1,779,000 | 5,000 |
| | | 5 | Card918 | 5 | 111.315 | 0 | | | | :: | | -313 | 1,778,688 | - |
| Trade Group 13 Completed | | | | | | | | | | | | | | |

* Card 914 reflects quantity change from -100 to -140. Electronic purchase of 100 here indicates DSG originally knew -100 lots as trade and later adjusted to -140.
**Card 914 quantity adjustment. Insertion here brings Trade Group 9 from 37 to -3, Trade Group 10 from 40 to 0, Trade group 11 from 40 to zero, etc.
***April02040OrderHeader.xls from Lawrence-Bonfitto Trading Company indicates a cancel event here.
****Second Partial on cancel event.

11

213-A

# EXHIBIT 6

L 00110 4548410U

APR 2, 2004

LAWRENCE-BONFITTO TRADING COMPANY
141 W. JACKSON BLVD.
SUITE 2450
CHICAGO, IL  60604

DAVID G. SKLENA
9237 KEELER
SKOKIE, IL 60076

```
                              ** US DOLLARS **
BEGINNING BALANCE                 21,538.01
ENDING BALANCE                 1,798,915.24
TOTAL EQUITY                   1,798,915.24
ACCOUNT VALUE AT MARKET        1,798,915.24

EXCESS EQUITY                  1,798,915.24
```

107

LBTC487

# EXHIBIT 7

# RULEBOOK



## CHICAGO BOARD OF TRADE

AS OF SEPTEMBER 1, 2004

authorizing the nonclearing member to make trades on Change for the account of the clearing member, must also be filed with the Member Services Department. Thereafter, such clearing member acting as commission merchant, shall be liable upon all trades made by the non-clearing member for the account of the clearing member (unless authorization is revoked as provided for in (c) below) and shall be a party to all disputes arising from trades between the authorized non-clearing member and another member or member firm made for the account of the clearing member.

(c)     **REVOCATION OF AUTHORIZATION.** A revocation of authorization, either by a Primary Clearing Member or another clearing member, must, to be effective, be in writing and be posted by the Secretary upon the bulletin board of the Exchange. A non-clearing member whose Primary Clearing Member has revoked authorization shall be denied access to the Floor until another clearing member has designated itself as the non-clearing member's Primary Clearing Member, pursuant to (a) above. Revocation of a non-clearing member's authorization to execute transactions through the e-cbot system shall be in accordance with 9B.08.

(d)     The non-clearing member will not be permitted to submit a new primary clearing member authorization or clear trades through a new primary clearing member until such time as the former primary clearing member files a release with the Member Services Department. A primary clearing member who has revoked primary clearing member status to a non-clearing member must give the non-clearing member release upon the non-clearing member's request when the non-clearing member has obtained a new primary clearing member unless (1) the non-clearing member has current debts related to the conduct of business as a broker, trader or commission merchant at the primary clearing member equal to or greater than the amount specified in Rule 286.00; or (2) the clearing member is the guarantor under an existing valid guarantee of a loan which had been made to the non-clearing member exclusively for the purpose of financing the purchase of the non-clearing member's membership, such guarantee in an amount equal to or greater than the amount specified in Rule 286.00.

(e)     **PRIORITY OF DEBTS FOR PURPOSES OF RULE 252.00.** Upon transfer of the non-clearing member's membership, any indebtedness owed to a former Primary Clearing Member at the time of revocation which was incurred subsequent to authorization and which continues to be owed such former Primary Clearing Member(s) shall be paid in the chronological order of revocation (oldest debt first), in the manner and to the extent allowed under Rule 252.00. 204 (11/01/03)

**333.01      Error Accounts -**

(a)     Each non-clearing member who acts as a floor broker or is registered with the Commodity Futures Trading Commission or a registered futures association as a floor broker (i) shall maintain a personal account with his Primary Clearing Member into which he places brokerage errors; (ii) may maintain personal error accounts at one or more secondary clearing members, in addition to his Primary Clearing Member, provided he has written permission to do so from his Primary Clearing Member on file with Member Services Department.

(b)     Each clearing member who carries an error account agrees to accept and clear the broker's trades involving brokerage errors. A written authorization must be filed with the Member Services Department authorizing the broker, without qualification, to submit trades involving brokerage errors through such clearing member. Such clearing member shall be liable upon all trades involving brokerage errors that are submitted to the error account (unless authorization is revoked as provided herein) and shall be a party to all disputes involving trades between the broker, in his capacity as a broker, and another member or member firm that may ultimately be submitted to the error account. Revocation of authorization granted pursuant to this Regulation must be filed in writing with the Member Services Department and will become effective when written notice thereof is posted on the Exchange bulletin board by the Secretary. (08/01/94)

**333.03      Funds in Trading Accounts Carried by Clearing Members** - The following shall apply to trading accounts which are carried for non-clearing members by clearing members pursuant to Rule

333.00:

(a)    If a non-clearing member trades in excess of written limits prescribed by the carrying clearing member, and/or if the non-clearing member is alleged to have engaged in reckless and unbusinesslike dealing inconsistent with just and equitable principles of trade, the disposition of any and all funds in the applicable trading accounts(s) may be suspended by the carrying clearing member, or by the Association through the Board of Directors, Executive Committee, Floor Governors Committee or Arbitration Executive Committee pending a determination by the Arbitration Committee regarding the appropriateness of the non-clearing member's conduct.

Any Arbitration Committee decision to release trading account funds to the non-clearing member shall include the payment of interest by the clearing member to the non-clearing member as determined by the Arbitration Committee.

(b)    Either the carrying clearing member or the Association may direct that the disposition of trading account funds be suspended pursuant to subparagraph a) of this regulation. However, if such suspension is initiated by the clearing member the suspension will be subject to review within one business day by the Board or one of the Committees designated in paragraph (a). The purpose of this review will be determine if sufficient grounds exist to warrant continuation of the suspension pending a final determination by the Arbitration Committee. Association proceedings in this regard will be conducted in accordance with Regulation 540.60 "Procedures for Member Responsibility Actions". (05/01/94)

**334.00    Trades of Non-Clearing Members** - (See 431.00) (08/01/94)

**335.00    Bids and Offers in Commodities Subject to First Acceptance -** Any offer made on Change to buy or sell any commodity for future delivery is subject to immediate acceptance by any other member. All such offers shall be general offers and shall not be specified for acceptance by particular members. 254 (08/01/94)

**336.00    Bids and Offers in Commodities Subject to Partial Acceptance** - If an offer is made on Change (the Exchange) to buy or sell any specified quantity of any commodity for future delivery, such offer shall be deemed an offer to buy or sell all or any part of such specified quantity and, if not immediately accepted for the entire quantity, it may be accepted for a quantity less than specified. Orders or offers to buy or sell a specified quantity or none shall not be allowed, except as specifically provided in Regulation 331.03. 255 (07/01/00)

**336.01    Guaranteeing Terms of Execution** - Any member or member firm who receives an order to buy or sell a futures contract or option on a futures contract for execution on the Exchange is prohibited from directly or indirectly guaranteeing the execution of the order or any of its terms such as the quantity or price. A member may only report an execution that has occurred as a result of open outcry or has been effected through an Exchange approved automated order entry facility.

This regulation shall not be construed to prevent a member or member firm from assuming or sharing in the losses resulting from an error or mishandling of an order. (08/01/94)

**337.01    Orders Involving Cancellations Accepted on a 'Not Held' Basis** - All orders involving cancellations that reach the Trading Floor 10 minutes or less before the opening or resumption of the market, as applicable and all orders involving cancellations that reach the Trading Floor 10 minutes or less before the close of the market may involve extraordinary problems and hence will be accepted solely at the risk of the customer on a 'not held' basis.

All orders must be received by the floor broker within a reasonable time prior to the opening, the resumption or the close of the market, as applicable. Such other orders not received by the floor broker within a reasonable time prior to the opening, the resumption or the close of the market will be accepted solely at the risk of the customer on a 'not held' basis. 1847 (09/01/98)

**350.00    Trade Checking Penalties** - (See 563.00) (08/01/94)

**350.01    Failure to Check Trades** - If any member, firm or corporation is unable with diligent

# EXHIBIT 8

# ☰FOLEY

FOLEY & LARDNER LLP
ATTORNEYS AT LAW

321 NORTH CLARK STREET
SUITE 2800
CHICAGO, IL  60610-4764
312.832.4500 TEL
312.832.4700 FAX
www.foley.com

WRITER'S DIRECT LINE
312.832.4352
searly@foley.com EMAIL

CLIENT/MATTER NUMBER
069953-0103

May 4, 2004

VIA FACSIMILE (312) 341-7779 AND MESSENGER

Mr. Joseph Bonfitto
Lawrence-Bonfitto Trading Company
141 West Jackson Boulevard
Suite 2450
Chicago, Illinois 60604

       Re:   Mr. David Sklena

Dear Mr. Bonfitto:

      Please be advised that this firm represents Mr. David Sklena.  Mr. Sklena has filed new Primary Clearing Member ("PCM") authorizations at First Futures Division of Refco Group Ltd., LLC ("First Futures") with the Chicago Board of Trade.  It is our understanding that you have refused to release Mr. Sklena from Lawrence-Bonfitto Trading Company to First Futures and suspended transfer of the proceeds of Mr. Sklena's trading account.  We hereby demand that you approve these releases immediately.

      This correspondence is intended to provide you with notice that if PCM status is not released by the close of business (5:00 p.m. CST) tomorrow, May 5, 2004, we have been authorized to proceed on Mr. Sklena's behalf to petition for the Exchange to compel the release of both PCM status and the proceeds of Mr. Sklena's trading account pursuant to Exchange Regulation 333.03(b).

      Sincerely,

      Foley & Lardner LLP

By: _Scott E. Early_

      Scott E. Early
      Counsel for David Sklena

cc:   Mr. Sean Gallagher
     Mr. Dean Payton
     Ms. Nancy Binion Dye

BRUSSELS
CHICAGO
DETROIT
JACKSONVILLE

LOS ANGELES
MADISON
MILWAUKEE

ORLANDO
SACRAMENTO
SAN DIEGO
SAN DIEGO/DEL MAR

SAN FRANCISCO
SILICON VALLEY
TALLAHASSEE

TAMPA
TOKYO –
WASHINGTON, D.C.
WEST PALM BEACH

011.1194366.1

314

# EXHIBIT 9

# HOLLAND & KNIGHT LLP

| | |
|---|---|
| Annapolis | San Antonio |
| Atlanta | San Francisco |
| Bethesda | Seattle |
| Boston | Tallahassee |
| Bradenton | Tampa |
| Chicago | Washington, D.C. |
| Fort Lauderdale | West Palm Beach |
| Jacksonville | |
| Lakeland | International Offices: |
| Los Angeles | Caracas* |
| Miami | Helsinki |
| New York | Mexico City |
| Northern Virginia | Rio de Janeiro |
| Orlando | São Paulo |
| Portland | Tel Aviv* |
| Providence | Tokyo |
| St. Petersburg | |
| | *Representative Office |

131 South Dearborn Street
30th Floor
Chicago, Illinois 60603

312-263-3600
312-578-6666 Fax
www.hklaw.com

JERRY HOLISKY
Senior Counsel
312-715-5787
jerry.holisky@hklaw.com

May 5, 2004

**Via Facsimile (312-832-4700)**
Mr. Scott E. Early
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764

     Re:    David Sklena

Dear Mr. Early:

As you know, this firm represents Lawrence-Bonfitto Trading Company ("LBTC"). We reviewed your letter to Joe Bonfitto dated May 4, 2004, which was delivered to LBTC at about 4 p.m. yesterday.

In March 2004, Joe Bonfitto, president of LBTC, met with David Sklena regarding Mr. Sklena's trading. Mr. Sklena had been suffering trading losses and had recently been forced to sell his AM membership. At this meeting, Mr. Bonfitto instructed Mr. Sklena to reduce the size of his trading.

The Federal government's March 2004 jobs report was released on Friday, April 2, 2004. In the two minutes immediately <u>prior</u> to the release, June T-Bonds dropped over a full point. Following the release of the report, futures continued to fall.

Notwithstanding Mr. Bonfitto's prior instructions, Mr. Sklena then put LBTC at substantial risk by putting on a long position of 2,975 June 5 Year T-Notes, including buying 2,274 T-Notes in a single transaction, at a time when the net liquidating equity in his trading account was just over $20,000. Even though Mr. Sklena had recently been able to repurchase an AM Membership, the size of his position in the volatile market on April 2d clearly represented reckless and unbusinesslike dealing inconsistent with just and equitable principles of trade on the part of Mr. Sklena.

315

Mr. Scott E. Early
May 5, 2004
Page 2

Such trading activity by Mr. Sklena is within the scope of CBOT Regulation 333.03(a), and is a violation of both long-standing practices and principles of trade at the CBOT and Mr. Sklena's Account Agreement with LBTC. As soon as Mr. Bonfitto learned of Mr. Sklena's trading activities on April 2, he forcefully informed Mr. Sklena that LBTC objected to certain trades and the substantial risk they had created for the firm. Mr. Bonfitto then advised Mr. Sklena that he would not be able to retain the profit on the trades in question. For the reasons stated above and based on general principles of equity, the clearing firm, LBTC, is entitled to recover the benefits of such trading activity by the non-clearing member.

On Monday, April 5, LBTC and Mr. Sklena reached an oral agreement pursuant to which Mr. Sklena agreed to give up part of the profit on the transactions in question. LBTC agreed to accept $778,683.38, out of Mr. Sklena's $1,778,683.38 total gross profits from trades on April 2, and a transfer of that amount was made from Mr. Sklena's trading account to LBTC that day. On Thursday, April 29, 2004, Mr. Sklena announced to Joe Bonfitto that the settlement he had agreed to more than three weeks earlier wasn't a good deal for him and, therefore, he was reneging on it.

Joe Bonfitto responded by revoking Mr. Sklena's trading privileges with LBTC. In your letter to Mr. Bonfitto, you demand that LBTC release both its PCM status vis-à-vis Mr. Sklena, and the "proceeds of Mr. Sklena's trading account."

First, LBTC is not required to release PCM status because Mr. Sklena may have "current debts related to the conduct of business as a trader" depending on the resolution of the parties' dispute regarding their April 5 settlement. See Rule 333.00(d). Second, given the egregious nature of Mr. Sklena's reckless conduct – in violation of both CBOT rules and limits established by LBTC, there is clearly ample grounds to suspend the disposition of funds in Mr. Sklena's trading account until this dispute is fully and finally resolved.

Nonetheless, and without prejudice to any of its rights as described in this letter, LBTC is today releasing its PCM status in order to demonstrate its good faith intent to reach an amicable resolution of the parties' current disputes. A copy of the Release is enclosed with this letter.

Sincerely yours,

HOLLAND & KNIGHT LLP

Jerry Holisky

JH/dm

cc: Joseph Bonfitto

Encls:

316

# EXHIBIT 10

## BEFORE THE ARBITRATION
## EXECUTIVE COMMITTEE
## OF THE CHICAGO BOARD OF TRADE

DAVID SKLENA,                              )
                                          )
        Claimant,                        )
                                          )
vs.                                       )
                                          )
LAWRENCE-BONFITTO TRADING                 )
COMPANY and JOSEPH BONFITTO               )
                                          )
        Respondents.                     )
                                          )

*RECEIVED*
*MAY 1 1 2001*
*Per Cr-*

### STATEMENT OF CLAIM

Now comes Claimant, DAVID SKLENA ("Sklena"), by and through his attorneys, Foley & Lardner LLP, as and for his Statement of Claim requests that this Committee enter a decision awarding Sklena all of the proceeds from his trading account at Respondent Lawrence-Bonfitto Trading Company ("L/B") which proceeds are being fraudulently withheld by the firm at the direction of Respondent Joseph Bonfitto ("Bonfitto"). In support thereof, Sklena states as follows:

### Factual Background

1. David Sklena ("Sklena") has been a member of the Exchange since 1990. He currently owns an Associate Membership.

2. For nine (9) years, Sklena has been a substantial broker and local trader in the Ten Year Treasury Note pit clearing his trades through L/B.

3. Throughout that time, Sklena's trading has resulted in substantial profits and substantial debits with both profits and debits amounting to several hundred thousand dollars. All debits have been promptly and fully satisfied by Sklena.

4.    L/B and Sklena have never agreed to any written (or oral) limitations regarding Sklena's trading.

5.    On April 2, 2004, Sklena occupied his usual spot in the Ten Year Treasury Note pit at the opening of trade. As has been his recent practice, Sklena had immediate access to his computer in the pit to allow him to trade electronically.

6.    That morning, rumors were circulating regarding a premature release of the unemployment data. As a result, trading was active and prices began to move downward just prior to the release of the unemployment data at 7:30 a.m. CST.

7.    After the release of the unemployment data at 7:30 a.m. CST, the market continued to decline sharply. As a consequence of this market activity, Sklena observed a significant difference develop between prices that were bid on the computer and those offers prevailing in the pit.

8.    Sklena noticed various brokers in the pit actively offering to sell below the prevailing bids on the computer screen. In reliance upon these price differentials, Sklena lifted a broker's offer. Upon lifting the broker's offer, the broker confirmed the quantity of the trade to be 2,274 contracts.

9.    Sklena immediately offset 500 contracts in the pit to limit his exposure. He then proceeded to sell the remainder of his long position in 50-lot increments on the computer until he had evened out his position. In total, Sklena flattened his position within eight (8) minutes.

10.    All trades were promptly checked, confirmed without exception and cleared on the April 2, 2004 morning clearing run without any problems whatsoever.

11.    On April 2, 2004 Sklena earned proceeds in his trading account at L/B resulting from these trades totaling in excess of $1,778,000.

12.    On April 5, 2004, David Sklena met with Joseph Bonfitto, President and principal shareholder of L/B, at Bonfitto's request.

13.    Bonfitto told Sklena that Sklena's trades that day were too large and that, as a result, Bonfitto was being forced by the Clearing Corporation to deposit additional funds to continue his clearing business.  As a consequence, Bonfitto stated that he intended to close L/B as a clearing firm rather than have the Exchange "do it for him."

14.    Bonfitto further told Sklena that all his trading profits were being confiscated by L/B to "pay all the people you [Sklena] just put out of work."

15.    On information and belief, neither L/B nor Bonfitto has ever been told by the Exchange clearing officers that Sklena's trades had created a problem for L/B with regard to clearing.

16.    After continued discussions on April 5, 2004, regarding Sklena's trading proceeds, Bonfitto stated that he would be willing to accept $778,683 of the $1,778,683 in Sklena's trading account and would allow Sklena to withdraw $1,000,000 of the trading proceeds that he had earned.

17.    Bonfitto subsequently offered Sklena a legal release in an attempt to legitimize his efforts to extract in excess of $778,000 from Sklena.  Sklena never signed the release that Bonfitto presented to Sklena.

011.1195217.1

18.    On April 29, 2004, after Sklena had an opportunity to seek counsel and observed the fact that Bonfitto was not being "forced to close his clearing firm," Sklena told Bonfitto that L/B had no right to any of Sklena's trading account proceeds. Bonfitto consequently told Sklena he had confiscated $778,683 from Sklena's trading account and he would sue Sklena for the entire $1,778,683.

19.    On April 30, 2004, Sklena caused to be filed with the Exchange new primary clearing registration forms whereby First Futures Division of Refco Group Ltd., LLC ("First Futures") has agreed to become Sklena's new primary clearing member.

20.    On May 4, 2004, Sklena demanded the release of his trading proceeds and the release of his primary clearing member status from L/B and Bonfitto. (Attached hereto as Exhibit A is a copy of Sklena's demand notice).

21.    On May 5, 2004, in response to Sklena's demand, counsel for L/B and Bonfitto stated that L/B and Bonfitto was refusing to release the proceeds of Sklena's trading account (funds that L/B and Bonfitto had wrongfully confiscated) but would release Sklena's primary clearing member status. (Attached hereto as Exhibit B is a copy of L/B and Bonfitto's response to Sklena's demand notice).

22.    On May 6, 2004, L/B and Bonfito released Sklena's primary clearing member status allowing Sklena to trade through First Futures. L/B and Bonfitto have continued to wrongfully withhold the release of Sklena's funds.

011.1195217.1

## PRAYER FOR RELIEF

WHEREFORE, Sklena requests this Committee enter a Decision providing that:

a) L/B and Bonfitto release the $778,683 in trading proceeds earned by Sklena and previously maintained in his trading account (with interest) from April 2, 2004;

b) L/B and Bonfitto pay Sklena all his legal fees and expenses incurred in obtaining this Committee's Decision; and

c) Such further relief as the Committee considers to be just and proper.

May 11, 2004

Respectfully submitted,

DAVID SKLENA

By _____
    Foley & Lardner LLP
    Counsel for David Sklena

Scott E. Early, Esq.
Jerald L. Jeske, Esq.
Foley & Lardner, LLP
321 North Clark Avenue
Suite 2800
Chicago, IL 60610
Phone (312) 832-4500
Fax     (312) 832-4700

# FOLEY

FOLEY & LARDNER LLP
ATTORNEYS AT LAW

321 NORTH CLARK STREET
SUITE 2800
CHICAGO, IL  60610-4764
312.832.4500 TEL
312.832.4700 FAX
www.foley.com

WRITER'S DIRECT LINE
312.832.4352
searly@foley.com EMAIL

CLIENT/MATTER NUMBER
069953-0103

May 4, 2004

VIA FACSIMILE (312) 341-7779 AND MESSENGER

Mr. Joseph Bonfitto
Lawrence-Bonfitto Trading Company
141 West Jackson Boulevard
Suite 2450
Chicago, Illinois 60604

Re:    Mr. David Sklena

Dear Mr. Bonfitto:

Please be advised that this firm represents Mr. David Sklena.  Mr. Sklena has filed new Primary Clearing Member ("PCM") authorizations at First Futures Division of Refco Group Ltd., LLC ("First Futures") with the Chicago Board of Trade.  It is our understanding that you have refused to release Mr. Sklena from Lawrence-Bonfitto Trading Company to First Futures and suspended transfer of the proceeds of Mr. Sklena's trading account.  We hereby demand that you approve these releases immediately.

This correspondence is intended to provide you with notice that if PCM status is not released by the close of business (5:00 p.m. CST) tomorrow, May 5, 2004, we have been authorized to proceed on Mr. Sklena's behalf to petition for the Exchange to compel the release of both PCM status and the proceeds of Mr. Sklena's trading account pursuant to Exchange Regulation 333.03(b).

Sincerely,

Foley & Lardner LLP

By:  _Scott E. Early_
       Scott E. Early
       Counsel for David Sklena

cc:    Mr. Sean Gallagher
       Mr. Dean Payton
       Ms. Nancy Binion Dye

BRUSSELS          LOS ANGELES       ORLANDO           SAN FRANCISCO     TAMPA
CHICAGO           MADISON           SACRAMENTO        SILICON VALLEY    TOKYO
DETROIT           MILWAUKEE         SAN DIEGO         TALLAHASSEE       WASHINGTON, D.C.
                                    SAN DIEGO/DEL MAR                   WEST PALM BEACH

011.1194366.1

# HOLLAND & KNIGHT LLP

| | |
|---|---|
| Annapolis | San Antonio |
| Atlanta | San Francisco |
| Bethesda | Seattle |
| Boston | Tallahassee |
| Bradenton | Tampa |
| Chicago | Washington, D.C. |
| Fort Lauderdale | West Palm Beach |
| Jacksonville | |
| Lakeland | International Offices: |
| Los Angeles | Caracas* |
| Miami | Helsinki |
| New York | Mexico City |
| Northern Virginia | Rio de Janeiro |
| Orlando | São Paulo |
| Portland | Tel Aviv* |
| Providence | Tokyo |
| St. Petersburg | *Representative Office |

131 South Dearborn Street
30th Floor
Chicago, Illinois 60603

312-263-3600
312-578-6666 Fax
www.hklaw.com

JERRY HOLISKY
Senior Counsel
312-715-5787
jerry.holisky@hklaw.com

May 5, 2004

**Via Facsimile (312-832-4700)**
Mr. Scott E. Early
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764

    Re:   David Sklena

Dear Mr. Early:

    As you know, this firm represents Lawrence-Bonfitto Trading Company ("LBTC"). We reviewed your letter to Joe Bonfitto dated May 4, 2004, which was delivered to LBTC at about 4 p.m. yesterday.

    In March 2004, Joe Bonfitto, president of LBTC, met with David Sklena regarding Mr. Sklena's trading. Mr. Sklena had been suffering trading losses and had recently been forced to sell his AM membership. At this meeting, Mr. Bonfitto instructed Mr. Sklena to reduce the size of his trading.

    The Federal government's March 2004 jobs report was released on Friday, April 2, 2004. In the two minutes immediately _prior_ to the release, June T-Bonds dropped over a full point. Following the release of the report, futures continued to fall.

    Notwithstanding Mr. Bonfitto's prior instructions, Mr. Sklena then put LBTC at substantial risk by putting on a long position of 2,975 June 5 Year T-Notes, including buying 2,274 T-Notes in a single transaction, at a time when the net liquidating equity in his trading account was just over $20,000. Even though Mr. Sklena had recently been able to repurchase an AM Membership, the size of his position in the volatile market on April 2d clearly represented reckless and unbusinesslike dealing inconsistent with just and equitable principles of trade on the part of Mr. Sklena.

Mr. Scott E. Early
May 5, 2004
Page 2

Such trading activity by Mr. Sklena is within the scope of CBOT Regulation 333.03(a), and is a violation of both long-standing practices and principles of trade at the CBOT and Mr. Sklena's Account Agreement with LBTC. As soon as Mr. Bonfitto learned of Mr. Sklena's trading activities on April 2, he forcefully informed Mr. Sklena that LBTC objected to certain trades and the substantial risk they had created for the firm. Mr. Bonfitto then advised Mr. Sklena that he would not be able to retain the profit on the trades in question. For the reasons stated above and based on general principles of equity, the clearing firm, LBTC, is entitled to recover the benefits of such trading activity by the non-clearing member.

On Monday, April 5, LBTC and Mr. Sklena reached an oral agreement pursuant to which Mr. Sklena agreed to give up part of the profit on the transactions in question. LBTC agreed to accept $778,683.38, out of Mr. Sklena's $1,778,683.38 total gross profits from trades on April 2, and a transfer of that amount was made from Mr. Sklena's trading account to LBTC that day. On Thursday, April 29, 2004, Mr. Sklena announced to Joe Bonfitto that the settlement he had agreed to more than three weeks earlier wasn't a good deal for him and, therefore, he was reneging on it.

Joe Bonfitto responded by revoking Mr. Sklena's trading privileges with LBTC. In your letter to Mr. Bonfitto, you demand that LBTC release both its PCM status vis-à-vis Mr. Sklena, and the "proceeds of Mr. Sklena's trading account."

First, LBTC is not required to release PCM status because Mr. Sklena may have "current debts related to the conduct of business as a trader" depending on the resolution of the parties' dispute regarding their April 5 settlement. See Rule 333.00(d). Second, given the egregious nature of Mr. Sklena's reckless conduct – in violation of both CBOT rules and limits established by LBTC, there is clearly ample grounds to suspend the disposition of funds in Mr. Sklena's trading account until this dispute is fully and finally resolved.

Nonetheless, and without prejudice to any of its rights as described in this letter, LBTC is today releasing its PCM status in order to demonstrate its good faith intent to reach an amicable resolution of the parties' current disputes. A copy of the Release is enclosed with this letter.

Sincerely yours,

HOLLAND & KNIGHT LLP

Jerry Holisky

JH/dm

cc: Joseph Bonfitto

Encls: