

# Exhibit F

Attorney No. 13864

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE:  THE MARRIAGE OF:                    )
                                            )
SUSAN SARVEY                                )
    Petitioner,                         )
                                            )
    and                                 )    NO. 07 D5 30118
                                            )
EDWARD C. SARVEY                            )
    Respondent.                         )

## ORDER

THIS CAUSE coming to be heard for hearing on Petitioner's Petitions for Rule to Show Cause and Motion for Default Judgment, due notice having been given, the parties being in agreement, Court having jurisdiction of the parties and the subject matter and having been fully advised in the premises;

THE COURT HEREBY FINDS:

1.    That pursuant to the Judgment for Legal Separation entered on July 10, 2007, Susan Sarvey was awarded 12,000 shares of Edward's Chicago Board of Trade (CBOT) stock.
2.    That the CBOT later merged with the Chicago Mercantile Exchange (CME), converting Susan's shares to 4,500 shares of CME stock.
3.    That Edward signed all necessary papers to effectuate the transfer of the 4,500 shares of CME stock to Susan.
4.    That Fortis issued 4,500 shares of CME stock to Susan, as sole owner of said shares of stock.
5.    That Edward has no right, title, interest or claim to Susan's shares.

IT IS HEREBY ORDERED that Edward C. Sarvey has no further claim or interest to Susan Sarvey's 4,500 shares of Chicago Mercantile Exchange Stock.

ENTERED:_____
                        JUDGE

Feinberg & Barry, P.C.
Attorneys for Susan Sarvey
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 444-1050
Atty No. 13864

# Exhibit G

STATE OF ILLINOIS     )
                         ) S.S.
COUNTY OF COOK    )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| IN RE: THE MARRIAGE OF: ) | |
| ) | |
| SUSAN SARVEY, ) | |
|   Petitioner, ) | |
| ) | |
|       and ) | NO. 07 D5 30018 |
| ) | |
| EDWARD C. SARVEY ) | |
|   Respondent. ) | |

### DECLARATION OF EDWARD SARVEY

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct:

I have no right, title, interest or claim to any of the 4500 CME shares of stock held by Fortis Clearing Americas, LLC ("Fortis") in the name of Susan Sarvey. All shares of CME stock in Susan Sarvey's name held by Fortis were transferred to Susan Sarvey by me pursuant to a Judgment for Legal Separation entered by the Honorable Daniel Riley on July 10, 2007.


_____
                  EDWARD C. SARVEY

# Exhibit H

# GOZDECKI & DEL GIUDICE, LLP

EUGENE E. GOZDECKI
RICHARD A. DEL GIUDICE
DAVID S. AMERICUS
EARL E. FARKAS
JOHN K. BURNETT III
MARIE R. SPACCAROTELLA

R.DELGIUDICE@GOZDEL.COM

ATTORNEYS AT LAW
221 NORTH LA SALLE STREET
SUITE 2200
CHICAGO, ILLINOIS 60601

TEL: (312) 782-5010
FAX: (312) 782-4324

OF COUNSEL

JOSEPH P. MULHERN
CLIFFORD A. HARSTAD

July 29, 2008

**VIA EMAIL & U.S. MAIL**

Camille M. Arnold, Esq.
Commodity Futures Trading Commission
525 West Monroe Street
Suite 1100
Chicago, IL  60661
carnold@cftc.gov

Scott E. Early, Esq.
Lisa L Tharpe, Esq.
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, IL  60601
searly@foley.com and ltharpe@foley.com

Re:  **Susan Sarvey/CFTC and Fortis**

Counselors:

Susan Sarvey has retained this law firm to litigate the issue of U.S. Commodity Futures Trading Commission's ("CFTC") and Fortis Clearing Americas, LLC's ("Fortis") refusal to release Ms. Sarvey's CME stock to her.  We have reviewed the facts and issues related to this matter and we have prepared (1) a Motion for Leave to Intervene and (2) a Motion to Clarify the Consent Order.  We plan on filing the Motions tomorrow.

Based on our review of the facts and background, we are not aware of any basis for CFTC's position that Ms. Sarvey is not entitled to what are clearly and unequivocally her CME shares.  We also do not see any basis in Fortis's refusal to release those shares to Ms. Sarvey, or its position that it must have CFTC's consent in order to do so.  As stated above, our initial action will be to intervene and move the Court to clarify that the Consent Order does not affect any of Susan's assets, including her CME shares.  However, we are also considering Ms. Sarvey's options to bring direct actions against CFTC and Fortis for her damages.

Ms. Sarvey's preference is (and has been) to resolve this matter amicably without the need for court intervention or litigation.  The facts, of which CFTC and Fortis are fully aware, relating to Ms. Sarvey and her CME shares are straightforward.  Mr. Sarvey has no right or interest in Ms. Sarvey's CME shares, and there is no basis for the withholding of Ms. Sarvey's shares.  We understand you have previously communicated with attorney Lending about this matter, and you are aware that Ms. Sarvey needs this asset in order to support herself and her young children.

Camille M. Arnold, Esq.
Scott E. Early, Esq.
Lisa L. Tharpe, Esq.                    -2-                    July 29, 2008


    Please give me a call today, if possible, if you wish to discuss this matter and attempt to resolve this issue prior to Ms. Sarvey's intervention in the litigation.

                            Very truly yours,

                            Richard A. Del Giudice

RDG/djm

cc:    John K. Burnett III, Esq.
       Ms. Susan Sarvey, via email
       Randy Lending, Esq., via email

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>       Plaintiff,<br><br>       v.<br><br>EDWARD C. SARVEY and DAVID G. SKELENA,<br><br>       Defendants,<br><br>LAWRENCE-BONFITTO TRADING COMPANY, and JOSEPH J. BONFITTO,<br><br>       Relief Defendants,<br><br>SUSAN SARVEY,<br><br>       Movant-Intervenor | Case No. 08 C 0192<br><br>Judge Kendall<br><br>Magistrate Judge Ashman |

## AFFIDAVIT OF SUSAN SARVEY

I, Susan Sarvey, being duly sworn, depose and state as follows:

1. I am submitting this affidavit in support of my Motion and Memorandum to Intervene for the Limited Purpose of Clarifying the Consent Order of Preliminary Injunction, and the accompanying Motion to Clarify the Consent Order.

2. Edward C. Sarvey and I were legally separated in July 2007.

3. Pursuant to the terms of my legal separation from Mr. Sarvey, I was granted sole custody of our two children.

4. I am the sole owner of 4,500 shares of CME Group, Inc. stock ("Shares"), which was allocated to me under the terms of my legal separation from Mr. Sarvey.

5. On October 30, 2007, Fortis Clearing Americas, LLC ("Fortis") informed me and

my attorney that Fortis had received the certificate issuing 4,500 shares of CME stock to me ("Certificate"), and that it would forward the Certificate to me via overnight carrier.

6. I never received the package enclosing the Certificate, which Fortis sent on October 30, 2007, because Fortis recalled the package before it was delivered to me.

7. On or about November 1, 2007, Fortis informed me and my attorney that it would not release my Shares because Mr. Sarvey had margin debt on his clearing account totally approximately $700,000.

8. In early January 2008, Fortis informed me and my attorney that Mr. Sarvey's margin debt had been satisfied and that I could pick up my Shares once the U.S. Commodity Futures Trading Commission ("CFTC") cleared Fortis to release the stock.

9. I instructed my attorneys to provide CFTC and Fortis with any and all documentation requested or needed by CFTC and Fortis to have my Shares released.

10. Fortis has never released the Shares to me.

11. I have never received or reviewed any letter from CFTC that cleared Fortis to release the Shares to me.

12. I must rely on the Shares to support myself and my children because I am the primary caregiver for my children, Mr. Sarvey is not current on his child support payments, I am currently unemployed, and I have not received the full amounts due and owing to me from Mr. Sarvey under the terms of our legal separation.

13. Recently, in order to support my children and myself, it was essential that I borrow thousands of dollars from my family.

14. I certify, under penalty of perjury, that the foregoing is true and correct to the best of my personal knowledge, information, and belief.

Executed on this _30_ day of July, 2008.

_Susan Sarvey_
Susan Sarvey

Subscribed and sworn before me
this _30_ day of July, 2008

_____
Notary Public

'OFFICIAL SEAL'
Brian Paone
Notary Public, State of Illinois
Will County
My Commission Expires July 7, 2010

3

# Exhibit J

The Depository Trust Company
55 Water Street, 1SL
New York, NY 10041

The Depository Trust Company is a subsidiary of
The Depository Trust & Clearing Corporation

**PARTICIPANT NAME  /  NUMBER**

## SECURITIES MAILING LIST

Please examine the enclosed securities immediately.  DTC shall consider the securities indicated on this Securities Mailing List received UNLESS DTC's Interface Department receives a report of discrepancies by 5:00 P.M., E.T. on the day of receipt of this shipment by Participant.  Direct all inquiries to DTC at (212) 855-8766.

DATE 10/29/07
PAGE 1

FCALLC/RET          941                        REGISTERED SECURITIES

| CUSIP NUMBER | SECURITY NAME | QUANTITY | ACTIVITY TYPE | | VALUE OF LISTING |
|---|---|---|---|---|---|
| 12572Q-10-5 | CME GROUP INC | 4,500 | TRF | | $2,983,500 |
| | | | SUB TOTAL | | $2,983,500 |
| | 1 ITEMS ** GRAND TOTAL ** | | | | $2,983,500 |

**WHITE – INTERFACE   BLUE – PARTICIPANT   GREEN – RECONCILIATION**



# FORTIS

Member: ALL PRINCIPAL EXCHANGES
175 W Jackson Blvd Suite 400 Chicago IL 60604 312-604-8000 Fax 312-604-8111

## STATEMENT OF YOUR ACCOUNT

Susan M. Sarvey
1277 Chatham Drive
Lemont, IL 60439

CASH ACCOUNT

### STATEMENT SUMMARY

| Statement Period | Last Statement Date |
|---|---|
| 3/1/2008 To 3/31/2008 | 2/29/2008 |

Account Number
EA2

## ACCOUNT SUMMARY

|  | Opening Balance | Closing Balance |
|---|---|---|
| **Securities Market Value** | 2,309,850.00 | 2,110,950.00 |
| **Account Balance** | 0.00 | 0.00 |
| **Unsettled Mark to Market** | 0.00 | 0.00 |
| **Total Account Equity** | 2,309,850.00 | 2,110,950.00 |

## INCOME SUMMARY

|  | This Month | Year to Date |
|---|---|---|
| **Interest Inc** | 0.00 | 0.00 |
| **Interest Exp** | 0.00 | 0.00 |
| **Sh Stock Inc** | 0.00 | 0.00 |
| **Ordinary Div** | 0.00 | 0.00 |
| **Dividend Exp** | 0.00 | 0.00 |
| **Qualified Div** | 0.00 | 0.00 |

## POSITION SUMMARY

| Type | Symbol | Description | Quantity | Price | Market Value |
|---|---|---|---|---|---|
|  | CME | CME GROUP INC COM | 4,500 | 469.1000 | 2,110,950.00 |

** End of Position Summary **

** End of Statement **

# Exhibit K

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD C. SARVEY and<br>DAVID G. SKELENA,<br><br>Defendants,<br><br>LAWRENCE-BONFITTO TRADING COMPANY, and<br>JOSEPH J. BONFITTO,<br><br>Relief Defendants,<br><br>SUSAN SARVEY,<br><br>Movant-Intervenor | Case No.  08 C 0192<br><br>Judge Kendall<br><br>Magistrate Judge Ashman |

## SUSAN SARVEY'S MOTION TO CLARIFY THE CONSENT ORDER OF PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF

Movant-Intervenor Susan Sarvey ("Susan"), by and through her attorneys, Gozdecki and Del Giudice, LLP, respectfully requests that this Court interpret and clarify the Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Edward C. Sarvey and David G. Sklena ("Consent Order"), which was approved and entered by this Court on February 15, 2008.  (The Consent Order is attached as Exhibit A.)  Specifically, Susan seeks to Clarify that the Consent Order (1) does not contemplate a freeze on any of her assets, including her ownership interest in the CME Group, Inc. ("CME") as of February 15, 2008, the date the Consent Order was entered by this Court, and (2) does not preclude the immediate distribution or release of any shares of CME to Susan.  In support of her Motion, Susan states as follows:

## INTRODUCTION

On February 15, 2008, this Court entered and approved the Consent Order, which resolved Plaintiff U.S. Commodity Futures Trading Commission's ("CFTC") Motion for a Preliminary Injunction against Defendants Mr. Sarvey and Mr. Sklena.  Although Susan is not part of the above-captioned matter, nor enjoined under the Consent Order, CFTC and Fortis Clearing Americas, LLC ("Fortis"), without any basis, have rebuffed Susan's efforts to have her 4,500 Shares of CME stock ("Shares") released to her.  Susan and her attorneys have unsuccessfully attempted to resolve this matter with CFTC and Fortis.  However, CFTC has refused to issue a release letter to Fortis stating that Susan's Shares are not subject to the Consent Order, despite Susan and her attorneys having forwarded all requested documents, including a court Order and Mr. Sarvey's declaration that both state, in no uncertain terms, Mr. Sarvey does not have any right, title, claim or interest in Susan's Shares.  Under the circumstances, CFTC and Fortis have no proper justification for failing to release the Shares to Susan upon her request. Accordingly, Susan respectfully requests this Court enter an order that clarifies the Consent Order does not apply to Susan's assets, including the Shares, and order CFTC and Fortis to release the Shares to Susan immediately.

## **BACKGROUND FACTS**

1.      In July 2007, Mr. Sarvey and Susan were legally separated and they are currently attempting to finalize their divorce. (*See* Judgment for Legal Separation and Legal Separation Settlement Agreement ("Judgment") entered on July 10, 2008, attached as Exhibit B.)[1]

2.      Pursuant to the Judgment and terms of the Sarveys' legal separation, Susan was granted sole custody of the Sarveys' two children, and she was allocated certain property,

---

[1] In September 2007, the court entered a Corrected Judgment for Legal Separation ("Corrected Judgment"), which, for purposes of this Motion, was substantially similar in its terms.  (A copy of the Corrected Judgment and accompanying Order are attached as Exhibit C.)

including, *inter alia*, half of the Sarveys' 24,000 shares of the Chicago Board of Trade ("CBOT") stock ("Shares").[2]  (Exs. B and C at §§ 3.2, 9.3.)  Importantly, Mr. Sarvey was ordered to transfer the Shares to Susan within thirty (30) days of the entry of the Judgment. (Exs. B and C at § 9.3(A)(ii).)

3.    On October 17, 2007, pursuant to the Judgment, Mr. Sarvey requested that Fortis, the clearing entity that Mr. Sarvey utilized to clear his trading positions, issue to Susan the Shares and to move the Shares from Mr. Sarvey's Fortis Clearing Account to Susan's account with another financial entity.  (*See* Letter from E. Sarvey to Fortis (Oct. 17, 2007), attached as Exhibit D.)

4.    Mr. Sarvey has no ownership interest or right in Susan's Shares.  On October 22, 2007, the Shares were issued to Susan, as the sole owner.  (*See* a copy of Susan's certificate for 4,500 shares of CME stock ("Certificate"), attached as Exhibit E.)  Moreover, the court entered an Order on May 12, 2008 stating that "[Mr. Sarvey] has no right, title, interest or claim to Susan's [S]hares."  (*See* May 12, 2008 Order, attached as Exhibit F.)  Additionally, Mr. Sarvey executed a declaration, under penalties set forth in Section 1-109 of the Illinois Code of Civil Procedure, stating that he "has no right, title, interest or claim" to the Shares and that the Shares were transferred to Susan pursuant to the Judgment.  (*See* Decl. of E. Sarvey, attached as Exhibit G.)

5.    On October 30, 2007, Fortis informed Susan that it received the CME stock certificate issuing 4,500 shares of CME stock to Susan and that Fortis would forward the Certificate to her via overnight carrier.  (*See* Aff. of S. Sarvey at ¶ 5, attached as Exhibit H.) However, Fortis recalled the package, including the Certificate, before it was delivered to Susan. (*Id.* at ¶ 6.)

---

[2]    On or about July 12, 2007, CBOT and the Chicago Mercantile Exchange merged to form a new entity, and thus, Susan's 12,000 shares of CBOT stock were converted into 4,500 shares of CME stock.

3

6.    On or about November 1, 2007, Fortis stated that it would not release Susan's Shares because Mr. Sarvey had margin debt on his account totaling approximately $700,000. (*Id.* at ¶ 7.)

7.    On November 8, 2007, Fortis stated that it could release to Susan 2,500 shares of CME stock, but that it needed to retain the remaining 2,000 shares of CME Stock to secure Mr. Sarvey's margin debt. (*See* Letter from P. Cooper to C. Berry (Nov. 08, 2007), attached as Exhibit I.)

8.    On November 9, 2007, Susan's attorney requested that, in the interim, Fortis release 2,500 shares of CME stock to Susan. (*See* Letter from C. Berry to P. Cooper (Nov. 09, 2007), attached as Exhibit J.) However, Fortis never released any of Susan's Shares. (*See* Ex. H at ¶ 10.)

9.    In early January 2008, Fortis informed Susan that the margin debt on Mr. Sarvey's account had been satisfied and informed Susan that she could pick up her Shares once CFTC cleared them to release the stock. (*Id.* at ¶ 8.)

10.    On January 9, 2008, CFTC instituted this lawsuit against Mr. Sarvey and Mr. Sklena.

11.    On January 16, 2008, Fortis sent a letter to Susan's counsel explaining that CFTC "tentatively believes" that Susan's Shares "appear to belong" to Mr. Sarvey, and thus, her Shares are subject to CFTC's motion for preliminary injunction. (*See* Letter and Encl. from P. Cooper to C. Berry (Jan. 16, 2008), attached as Exhibit K.) Additionally, Fortis requested various documents and information to verify that Mr. Sarvey did not have any interest or claim in Susan's Shares, via the enclosure of CFTC's letter dated January 15, 2008. (*See id.*)

12.    On January 21, 2008, Susan's counsel forwarded the requested documents and information to CFTC, and also requested that CFTC release Susan's Shares. (*See* Letter from C.

Berry to C. Arnold (Jan. 21, 2008), attached as Exhibit L.) Additionally, Susan has forwarded to Fortis and CFTC all additional requested information and has repeatedly attempted to have Fortis and CFTC release Susan's Shares. (*See* Ex. H at ¶ 9.)

13.    Mr. Sarvey has no ownership interest or right in Susan's Shares, which is evidenced by: (1) Fortis causing all of the Shares to be issued to Susan (*see* Ex. E); (2) the order entered by the court on May 12, 2008 stating, in pertinent part, that "[Mr. Sarvey] has no right, title, interest or claim to Susan's [S]hares" (*see* Ex. F); and (3) Mr. Sarvey's declaration, executed under penalties set forth in Section 1-109 of the Illinois Code of Civil Procedure, stating that he "has no right, title, interest or claim" to the Shares and that the Shares were transferred to Susan pursuant to the Judgment (*see* Ex. G).

## ANALYSIS

14.    Despite CFTC and Fortis being apprised of the Judgment, the May 12, 2008 court Order and Mr. Sarvey's declaration, which definitively state that Mr. Sarvey has no right, title, interest or claim to the Shares (*see* Letter from R. Lending to C. Arnold (June 13, 2008) (enclosing both the May 12, 2008 Order and Mr. Sarvey's declaration), attached as Exhibit M), and Susan being neither a named defendant in the above-captioned matter, nor an enjoined party under the Consent Order, Fortis and CFTC continue to improperly freeze Susan's Shares.

15.    Significantly, the plain language of the Consent Order is unambiguous and does not contemplate a freeze on Susan's assets, including her Shares. The Consent Order states, in pertinent part:

> [Mr. Sarvey and Mr.Sklena], and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of the [Mr. Sarvey and Mr. Sklena] and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with [Mr. Sarvey and Mr. Sklena], is further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly … [t]ransferring, selling, or disposing of, in any manner, any membership interests in [CME].

(Ex. A, at § III(3)(C).)

16. Accordingly, no basis exists for CFTC's and Fortis' "tentative" assertion that Susan's Shares are subject to the Consent Order. Indeed, the Sarveys have been legally separated since July 2007 (*see* Ex. B), well before this suit was instituted, Susan's Shares are held solely in her name (*see* Ex. E), and the court Order and Mr. Sarvey's declaration state definitively that Mr. Sarvey has no right, title, interest, or claim in the Shares (*see* Exs. F and G). CFTC's and Fortis' apparent position that Mr. Sarvey has an interest in Susan's Shares is unsupported and completely contradicts the evidence Susan provided to both CFTC and Fortis upon their requests.

17. CFTC and Fortis have no valid reason for failing to release Susan's Shares and their wrongful actions have unduly damaged and prejudiced Susan because she must rely on the Shares to support herself and her children.[3] (*See* Ex. H at ¶ 12.) Furthermore, Susan has been unjustly harmed by CFTC's and Fortis' failure to release the Shares because the value of Susan's Shares has plummeted since she first attempted to have her shares released to her. (*See* Fortis Securities Transfer Mailing (Oct. 29, 2007) and Fortis Statement of Account (Mar. 31, 2008) (showing CME stock declined in value approximately $850,000 over that time period), attached as Exhibit N.)

18. The Consent Order contains no language that affects Susan's assets, including her Shares, and therefore, does not preclude CFTC or Fortis from releasing the Shares to Susan. Accordingly, CFTC and Fortis should immediately release the Shares to Susan.

WHEREFORE, Susan Sarvey respectfully requests that this Court enter an Order that:

---

[3]    To date, Mr. Sarvey has failed to pay Susan the amounts due pursuant to the Judgment, which renders her ability to sell her Shares essential to the continued support of herself and her children. (Ex. H at ¶ 12.) Due to Susan's financial constraints, Susan has been forced to borrow money from her family to support herself and her children while Fortis and CFTC refuse to release to Susan her Shares. (*Id.* at ¶ 13.)

a.  Interprets and clarifies that the Consent Order does not affect any of Susan's assets, including her interest in the CME Group, Inc.;

b.  Order CFTC and Fortis to immediately release to Susan her Shares of CME stock; and

c.  Grants any further or other relief that this Court deems just and proper.

Dated:  August 5, 2008                                SUSAN SARVEY


                                        BY:  _____
                                             One of her Attorneys


Richard A. Del Giudice (ARDC #6190103)
John K. Burnett III (ARDC # 6285845)
**GOZDECKI & DEL GIUDICE, LLP**
221 North LaSalle Street
Suite 2200
Chicago, IL  60601
312.782.5010 (tel.)
312.782.4324 (fax)
ATTORNEYS FOR SUSAN SARVEY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD C. SARVEY and<br>DAVID G. SKELENA,<br><br>Defendants,<br><br>LAWRENCE-BONFITTO TRADING COMPANY, and<br>JOSEPH J. BONFITTO,<br><br>Relief Defendants,<br><br>SUSAN SARVEY,<br><br>Movant-Intervenor | Case No.  08 C 0192<br><br>Judge Kendall<br><br>Magistrate Judge Ashman |

## EXHIBIT LIST—MOTION TO CLARIFY

| | | |
|---|---|---|
| 1. | Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Edward C. Sarvey and David G. Sklena | Exhibit A |
| 2. | Judgment for Legal Separation and Legal Separation Settlement Agreement entered on 7/10/08 | Exhibit B |
| 3. | Corrected Judgment and Accompanying Order entered on 9/25/07 | Exhibit C |
| 4. | 10/17/07 Letter from Mr. Sarvey to Fortis | Exhibit D |
| 5. | Copy of Susan's Certificate for 4,500 Shares of CME Group, Inc. Stock | Exhibit E |
| 6. | 5/12/08 Order | Exhibit F |
| 7. | Declaration of E. Sarvey | Exhibit G |
| 8. | Affidavit of S. Sarvey | Exhibit H |

| | | |
|---|---|---|
| 9. | 11/08/07 Letter from P. Cooper to C. Berry | Exhibit I |
| 10. | 11/09/07 Letter from C. Berry to P. Cooper | Exhibit J |
| 11. | 1/16/08 Letter and Enclosure from P. Cooper to C. Berry | Exhibit K |
| 12. | 1/21/08 Letter from C. Berry to C. Arnold | Exhibit L |
| 13. | 6/13/08 Letter from R. Lending to C. Arnold | Exhibit M |
| 14. | 10/29/07 Fortis Securities Transfer Mailing and 3/31/08 Fortis Statement of Account | Exhibit N |

# Exhibit A



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** | **No. 08 CIV 192** |
| Plaintiff, | |
| v. | **District Judge Kendall** |
| **EDWARD C. SARVEY** and **DAVID G. SKLENA,** | **Magistrate Ashman** |
| Defendants; | |
| **LAWRENCE-BONFITTO TRADING COMPANY** and **JOSEPH J. BONFITTO,** | |
| Relief Defendants. | |

## CONSENT ORDER OF PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS EDWARD C. SARVEY AND DAVID G. SKLENA

### I.

### INTRODUCTION

On January 9, 2008, Plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint against Defendants Edward C. Sarvey ("Sarvey") and David G. Sklena ("Sklena") (collectively "Defendants"), seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 *et seq.* (2002) and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et. seq.* (2007).

Sarvey and Sklena, without admitting or denying the allegations of the Complaint for the purposes of this Consent Order of Preliminary Injunction and Other Ancillary Relief ("Order"), except as to jurisdiction and venue, which they admit, consent to the entry of this Order and state

that the consent is entered voluntarily and that no promise or threat has been made by the

Commission or any member, officer, agent or representative thereof, to induce them to consent

to this Order.

## II.

## FINDINGS

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

1.        This Court has jurisdiction over the subject matter of this action and Defendants

Sarvey and Sklena hereto pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes

the CFTC to seek injunctive relief against any person whenever it shall appear that such person

has engaged, is engaging or is about to engage in any act or practice constituting a violation of

any provision of the Act or any rule, regulation or order thereunder.

2.        Venue properly lies with this Court pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1, in that Defendants Sarvey and Sklena are found in, inhabit, or transact

business in this district, and the acts and practices alleged to be in violation of the Act have

occurred, are occurring, or are about to occur within this district, among other places.

3.        Defendants enter their appearances and acknowledge receipt of the Summons and

Complaint.

4.        Defendants waive the entry of findings of facts and conclusions of law for

purposes of this Order pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## III.

### RELIEF GRANTED

**IT IS THEREFORE ORDERED THAT:**

1.      The Defendants, and any person insofar as he or she is acting in the capacity of an

officer, agent, servant, employee or attorney of the Defendants and any person who receives

actual notice of this Order by personal service or otherwise insofar as he or she is acting in

concert or participation with the Defendants, is restrained, enjoined and prohibited, until further

order of the Court, from directly or indirectly:

      A. Cheating, defrauding or deceiving or attempting to cheat, defraud or deceive
other persons in or in connection with any order to make, or the making of
any contract of sale of any commodity for future delivery, made, or to be
made, for or on behalf of any other person, in violation of Section 4b(a)(2)(i)
and (iii) of the Act; 7 U.S.C. § 6b(a)(2)(i) and (iii);

      B. Bucketing or filling any order by offset against the order or orders of any
other person, or willfully and knowingly and without the prior consent of
any person, becoming the buyer in respect to any selling order of such person
or becoming the seller in respect to any buying order of such person, in
violation of Section 4b(a)(2)(iv) of the Act, 7 U.S.C. § 6b(a)(2)(iv).

      C. Failing to execute the purchases and sales of commodity futures and options
contracts openly and competitively by open outcry or posting of bids and
offers or by other equally open and competitive methods, in violation of
Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a).

2.      Defendant Sklena and any person insofar as he or she is acting in the capacity of

an officer, agent, servant, employee or attorney of Sklena and any person who receives actual

notice of this Order by personal service or otherwise insofar as he or she is acting in concert or

participation with Sklena, is further restrained, enjoined and prohibited, until further order of the

Court, from directly or indirectly:

      A. Offering to enter into, entering into or confirming the execution of any
transaction that is, is of the character of, or is commonly know to the trade as
an "accommodation trade" involving the purchase or sale of any commodity
for future delivery, in violation of Section 4c(a) of the Act, 7 U.S.C. § 6c(a).

3

3.      The Defendants, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of the Defendants and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with the Defendants, is further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

> A. Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of the Defendants, wherever located, including all such records concerning the Defendants' business operations; and

> B. Refusing to permit authorized representatives of the Commission to inspect, when and as requested by those representatives, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of the Defendants, wherever located, including all such records concerning Defendants' business operations.

> C. Transferring, selling, or disposing of, in any manner, any membership interests in the CME Group, Inc.

4.      The Defendants, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of the Defendants and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with the Defendants, is further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

> A.      Engaging in, controlling, or directing the trading of any commodity futures or options account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

> B.      Soliciting, receiving or accepting any funds from any person in connection with the purchase or sale of any commodity futures or options and/or using any funds received from third parties for the purpose of trading commodity futures or options;

> C.      Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29); entering into any commodity futures or options transaction for any personal account of

Sarvey or Sklena, or for any account in which either Sarvey or Sklena has a direct or indirect interest unless their activities are restricted to electronic trading off of the trading floor, and are subject to a supervision agreement in a form acceptable to the parties and the Court, executed and submitted to the Commission by a Commission registrant or a principal of a Commission registrant ("Sponsor") through whom they will trade. Immediately upon the Sponsor's ceasing to serve as Sarvey and/or Sklena's Sponsor, Sarvey and/or Sklena shall stop trading until their activities are once again subject to a supervision agreement in a form acceptable to the parties and the Court and executed and submitted to the Commission by a qualified Sponsor.

5.      The Defendants shall prepare, sign and file with the Court, within 20 days, a complete and accurate accounting of their current assets, and shall prepare, sign and file with the Court, within 45 days, a complete and accurate accounting for the period of January 9, 2008, to the date of such accounting, which shall be no earlier than the date of this Order. Such accountings shall include, without limitation, the identification of:

A.      All funds, securities, commodity interests, assets and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly by the Defendants, whether individually or jointly, including accounts or assets of the Defendants held by financial institutions located outside the territorial United States;

B.      All funds, securities, commodity interests, assets and other property received directly or indirectly by the Defendants, describing the source, amount, disposition, and current location of each listed item, including accounts or assets of the Defendants held by financial institutions located outside the territorial United States;

C.      All funds, securities, commodity interests, assets and other property transferred or otherwise disposed of directly or indirectly by the Defendants, describing the source, amount, disposition, and current location of each listed item, including accounts or assets of the Defendants held by financial institutions located outside the territorial United States; and

D.      The names and last known addresses of each bailee, debtor or other person or entity currently holding any funds, securities, commodity interests, assets or other property owned or controlled (legally, equitably or otherwise) by the Defendants.

5

6.    The injunctive provisions of this Order shall be binding on the Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of the Defendant and upon any person who receives actual notice of this Order by personal service, facsimile or otherwise insofar as he or she is acting in active concert or participation with the Defendants.

7.    The Defendants are directed to allow representatives of the Commission, when and as requested by those representatives, to inspect the books, records and other electronically stored data, tape recordings, and other documents of the Defendants and their agents, including all such records of their business operations, wherever they are situated and whether they are in the hands of the Defendants or others, and to copy said documents, data, and records either on or off the premises where they may be located.

8.    It is further ordered that copies of this Order may be served by any means, including facsimile transmission and Federal Express, upon any or other entity or person that may have possession, custody, or control of any documents or assets of the Defendants, or that may be subject to any provision of this Order.  Judith McCorckle, William Heitner, Cynthia Cannon, and Venice Bickham, all employees of the CFTC, are hereby specially appointed to serve process, including this Order and all other papers in this cause.

9.    This Order shall remain in effect until further order of the Court and the Court *or until final judgment in this matter.*

shall retain jurisdiction over this action to ensure compliance with this Order and for all other

purposes related to this action.


IT IS SO ORDERED.


DATED: _____ 2-15 _____, 2008

_____
The Honorable Virginia Kendall
United States District Court Judge


CONSENTED TO AND APPROVED BY:

_____          _____
Lisa Tharpe                                              Camille M. Arnold
Foley & Lardner                                        Attorney for Plaintiff Commodity Futures
Attorney for Defendants Edward C. Sarvey and    Trading Commission
David G. Sklena                                        Commodity Futures Trading Commission
321 North Clark Street                              525 West Monroe Street, Suite 1100
Suite 2800                                              Chicago, Illinois 60661
Chicago, Illinois 60610                            (312) 596-0524
(312) 832-4352                                       (312) 596-0714 (facsimile)
(312) 832-4700 (facsimile)


Dated: February 15 , 2008          Dated 2/15 , 2008

# Exhibit B

Attorney No. 13864

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF: | ) | |
| | ) | |
| SUSAN SARVEY | ) | |
|     Petitioner, | ) | |
| | ) | |
|     and | ) | NO. 07 D5 30018 |
| | ) | |
| EDWARD C. SARVEY | ) | |
|     Respondent. | ) | |

## JUDGMENT FOR LEGAL SEPARATION

    **THIS CAUSE having come on to be heard** upon the written stipulation of the parties, the Petitioner, SUSAN SARVEY, hereinafter referred to as "Petitioner", by and through her attorneys, Carroll A. Barry of FEINBERG & BARRY, P.C., the Respondent, EDWARD C. SARVEY, hereinafter referred to as "Respondent" appearing Pro-se; the parties having stipulated to have this matter heard as an uncontested matter, and this cause having come on for hearing upon the duly verified Petition for Legal Separation of Susan, the Petitioner, and the Appearance and Response thereto of Edward, the Respondent; Petitioner being present in open Court; and the court having heard the testimony of Petitioner in support of the allegations contained in her Petition for Legal Separation; and the Court having considered all of the evidence and now being fully advised in the premises;

    **FINDS THAT:**

    A.    This Court has jurisdiction of the parties hereto and of the subject matter hereof.

    B.    The Petitioner was domiciled in and a resident of the State of Illinois and County of Cook at the time the Petition for Legal Separation was commenced and has maintained a residence in the State of Illinois for ninety (90) days next preceding the making of the findings.

    C.    The parties were married on May 14, 1988 in Lemont, Illiois and the marriage was registered in Cook County, Illinois.

    D.    Two children were born to the parties as a result of this marriage, namely: Angela, having been born on August 9, 1998 and Kevin, having been born on January 15, 2003. No other children were born to or adopted by the parties hereto, and the Petitioner is not presently pregnant.

## LEGAL SEPARATION SETTLEMENT AGREEMENT

**THIS AGREEMENT** made and entered into this 18th day of ~~May,~~ July, 2007, by and between SUSAN SARVEY, hereinafter referred to as "Susan", and EDWARD SARVEY, hereinafter referred to as "Edward", both parties being residents of the County of Cook, State of Illinois:

## WITNESSETH:

**WHEREAS,**

A.    The parties were married on May 14, 1988 in Lemont, Illinois and the marriage was registered in Cook County, Illinois.

B.    Two children were born to the parties as a result of this marriage, namely: Angela, having been born on August 9, 1998 and Kevin, having been born on January 15, 2003. No other children were born to or adopted by the parties hereto, and the Petitioner is not presently pregnant.

C.    Unfortunate and irreconcilable differences and difficulties have arisen between the parties as a result of which they have ceased cohabiting as husband and wife.

D.    Susan has filed a Petition for Legal Separation against Edward in the Circuit Court of Will County, Illinois, known as Case No. 07 D5 30118, entitled "IN RE: THE MARRIAGE OF: SUSAN L. SARVEY, Petitioner, and EDWARD R. SARVEY, Respondent." Said cause is still pending and undetermined.

E.    Both parties expressly state that they have freely and voluntarily entered into this Agreement of their own volition, free of any duress or coercion and with full knowledge of each and every provision contained in this Agreement and the consequences thereof; that each party states that he or she understands:

    a.    their respective legal rights and duties;
    b.    the range of what the Court may order if requested by either party to decide the case as a contested matter; and
    c.    the legal effect of each provision of this Agreement.

F.    Without any collusion as to the pending case or as to any legal separation of marriage proceedings between the parties hereto, but without prejudice to any right of action for legal separation which either of said parties may have, the parties hereto consider it to be in their best interests to settle between themselves the questions of maintenance for the parties, custody, child support and related matters, the respective rights of property growing out of the marital relationship or any other relationship, the questions of attorneys' fees and all rights of any kind, nature and description, whether real, personal or mixed, marital or non-marital, which either of them now has or may hereafter

claim to have against the other, whether now or hereafter owned or possessed by either of them.

G.     Susan has employed and has had the benefit of counsel of Carroll A. Barry of FEINBERG & BARRY, P.C. as her attorney. Edward is appearing pro se, although he has been cautioned to obtain counsel. Edward acknowledges that he has been given no advice or promises concerning this agreement and divorce action. Carroll Barry has been instructed not to request, schedule or conduct depositions with respect to this matter. Susan hereby absolves her respective counsel of and from any liability for her compliance with the foregoing instructions, asserting her satisfaction that she possesses sufficient independent knowledge to knowingly and confidently express her conclusion that the various agreements herein made are fair and reasonable under all the circumstances and fully satisfy her respective needs.

NOW THEREFORE, in consideration of the foregoing and in further consideration of the mutual and several covenants herein contained, and for other good and valuable consideration by each to the other delivered, the receipt and sufficiency of which is hereby acknowledged, the parties do hereby freely and voluntarily agree by and between themselves as follows:

## ARTICLE I

## RESERVATION OF LITIGATION RIGHTS

1.     This Agreement is not one to obtain or stimulate a legal separation of marriage. Each party reserves the right to prosecute her pending action for legal separation and to defend any action for dissolution of marriage or legal separation which the other party may bring or has brought.

## ARTICLE II

## MAINTENANCE

2.1    MUTUAL MAINTENANCE WAIVER: Edward and Susan hereby stipulate that each is able to be self-supporting through appropriate employment and is able to provide for his or her reasonable means to maintenance and support. Accordingly, each party hereby waives and releases any and all claims against the other for maintenance and alimony, whether past, present or future, and the parties hereby stipulate that this Agreement, when effective, shall terminate and bar each party's rights to receive maintenance, alimony or any other support from the other, whether past, present or future.

## ARTICLE III

### CUSTODY OF THE MINOR CHILDREN

**3.1    PREAMBLE**: Each party acknowledges the continuing need of the minor children for ongoing contact with Edward and the need for Edward to have input into the decisions affecting the upbringing and raising of Angela and Kevin, the minor children of the parties.

**3.2    CUSTODY**: The parties agree that Susan shall have the sole care, custody and control of Angela and Kevin, subject to Edward's rights of visitation as set forth below.

**3.3    NOTIFICATION, CONSULTATION, INPUT, AND DISPUTE RESOLUTION**: Susan agrees to discuss with, and obtain input from Edward on the major decisions affecting the care, welfare, activities, health and education of Angela and Kevin prior to any major decision begin made. However, even after such discussion, Susan shall have the final decision on all issues related to day-to-day care and all decisions affecting the well-being, education and welfare of both children. In the event of an emergency, the party with Angela and/or Kevin shall make any decision about their care to promote the child's health and life preservation. The party making such emergency decision shall promptly notify the other parent of the emergency and course of care.

**3.4 WEEKLY SCHEDULE**: Every week, Angela and Kevin will visit with Edward a minimum of two midweek visitations from 4:00 p.m. until 8:30 p.m.    Edward shall promptly return Angela and Kevin to Susan at the conclusion of his visitation periods. Additionally, on alternate weekends, Edward may have overnight weekend visitation from Friday at 5:00 p.m. to Sunday at 5:00 p.m. During all periods of visitation, Edward shall be obligated to see that the children's school homework and projects are worked on and/or completed during visits. If this issue becomes problematic in that the children are not completing daily assignments or not working on longer term projects while under Edward's care, visitation times and/or other conditions may be modified or put in place to assist in this issue.

**3.5    HOLIDAY SCHEDULE**: The parties agree to alternate the following holidays, with the first year set as follows:

|  | SUSAN | EDWARD |
|---|---|---|
| Easter | EVEN | ODD |
| Memorial Day | ODD | EVEN |
| July 4th Day | EVEN | ODD |

3

| | | |
|---|---|---|
| Labor Day | ODD | EVEN |
| Thanksgiving | EVEN | ODD |
| Christmas Eve | EVEN | ODD |
| Christmas Day | ODD | EVEN |
| New Year's Eve | EVEN | ODD |
| New Year's Day | EVEN | ODD |

3.6   **CHILDREN'S ACTIVITIES DURING FATHER'S VISITATION**: When the children are with Edward, he shall take them to their regularly scheduled activities, as well as any special events and social obligations occurring during such period of visitation, unless such obligations conflict with a specially made plan of Susan with the children.

## ARTICLE IV

## CHILD SUPPORT

4.1   AMOUNT:      Edward hereby agrees to pay to Susan the sum of Two Thousand Five Hundred and no/100 DOLLARS ($2500.00) per month as and for temporary child support of the parties' minor children. In addition, Edward shall pay 28% of any net monthly income he receives over and above $5500 net income per month, up to and not to exceed $10,000. Edward shall show proof of his income on the first day of each month. Payments to be made through a Uniform Order of Support, to be entered.

4.2   BASIS OF SUPPORT: Edward's net income is approximately $4,666 per month.

4.3   TERMINATION OF CHILD SUPPORT: The child support obligation of Edward to pay child support hereunder shall forever and wholly terminate upon the first to occur of the following events, which constitute "emancipation" events for child support purposes:

4

a) the youngest minor child graduating from high school;

b) the youngest minor child reaching the age of 18 as long as said child has graduated from high school;

c) the youngest minor child no longer residing in the residence of the mother on a permanent basis;

d) the youngest minor child beginning full-time employment other than during summer months while said child is working towards a secondary educational diploma; or

e) the death of the minor child, combined with the emancipation of all other minor children, as herein defined.

4.4    EXEMPTIONS: The parties shall each claim one child as a dependent for federal and state tax purposes.   Edward shall be allowed to claim Angela as a dependent exemption on his Federal and State income tax returns every year. Susan shall be allowed to claim Kevin as a dependent exemption on her Federal and State income tax returns every year.

## ARTICLE V

## MEDICAL AND RELATED EXPENSES

5.1    It is the parties' obligation to provide major medical and hospitalization insurance for the children at all times.  The cost of said insurance shall be paid by Edward. Presently, Edward has a private policy.

5.2    OBLIGATION TO MAINTAIN: Edward shall maintain said insurance for the children of the parties.

5.3    PAYMENT OBLIGATION:   The parties shall equally divide all uninsured medical, dental, optical and mental health expenses incurred on behalf of the children of the parties.

5.4    DURATION OF OBLIGATION TO PAY EXPENSES: Except as otherwise herein provided, the parties' obligation to pay for medical, dental, optical and mental health care under this Article shall commence upon the effective date of this Agreement and shall continue until the emancipation of the children as defined in Article IV herein; provided that if a child pursues a college, university or vocational school education, his/her obligations as set forth in this Article shall continue until the individual child's completion or discontinuance of said educational pursuit; but, in no event shall the obligations hereunder continue beyond the individual child's twenty-third (23) birthday.

5

5.5    <u>NOTIFICATION</u>:    Any party incurring a medical expense shall notify the other party of the expense in writing.  Reimbursement of any portion not covered by insurance shall be paid within fourteen days of the written request.

## <u>ARTICLE VI</u>

### <u>POST HIGH SCHOOL/HIGH SCHOOL EDUCATION</u>

6.1    **RESPONSIBILITY FOR PAYMENT:** Susan and Edward covenant and agree pursuant to section 750 ILS 5/513 of the Illinois Marriage and Dissolution of Marriage Act and the terms and provisions of this section that they shall contribute to the expenses of undergraduate educational costs, for the cost of post high school education, university or trade school educational expenses for the children. This obligation is predicated upon the scholastic aptitude of the child and the financial abilities and incomes of Susan and Edward at the time such educational process begins.

6.2    **DECISION:**  The decisions affecting the education of the children, including the choice of post high school, or other institution, and schools to visit, shall be made jointly by the parties.  The parties shall consider the expressed preferences of the children.  The parties recognize that they may differ in their concepts of what is the most appropriate post high school education for the child in terms of cost, school selection and post high school education programs.  Both parties agree that to the extent possible that they shall accommodate the expressed preference of the children.

6.3    **EXTENT OF PAYMENT:**  The expenses to be covered under this section of this Marital Settlement Agreement includes, but is not limited to the following:

- college or trade school testing fees;
- college or trade school application fees;
- tuition;
- room and board;
- books;
- laboratory fees;
- activity fees;
- transportation expenses to and from school;
- student health fees;
- a computer suitable to the needs and requirements of the child's educational program;
- allowance for the child;
- any other expenses usually or ordinarily incurred in the acquisition of a college or trade school education.

6

6.4     **CONDITIONS OF PAYMENT:**

a.  The obligation of the parties under the terms of this subparagraph shall be irrespective of the fact that the children may, prior to the commencement or during the course of such education, attain the age of majority.

b.  The obligations of Susan and Edward set forth in this ARTICLE VI are conditioned upon either child having the desire and aptitude for a college or vocational school education and commencing college or trade school within 6 months from graduation from high school except entrance may be delayed for the purpose of attending  any sports or religious movement program agreed to by the parties.  In addition, the child shall be enrolled as a full-time student and remain in good standing as prescribed by such institution attended and that she shall complete her higher education within four years of her graduation from high school, unless any delay is solely due to serious, extended illness or entry into the Armed Forces.  The child shall furnish copies of all grade reports and curricula/course of study to both parents within 10 days after they are obtained.

6.5     **SCHOLARSHIPS AND AID RESOURCES:** Each child shall apply for financial aid and those scholarships or grants which she is reasonably expected to be capable of receiving.  The child and both parents shall complete all portions of the financial aid and scholarship forms required to be completed by each of them on a timely basis to help defray the expenses of their college education.

6.6     **TERMINATION OF OBLIGATION:** The obligation of each parent to provide college education expenses for each child shall terminate (unless extended pursuant to paragraph 6.4 b. above) four years after graduation from high school or earlier upon the happening of any of the following events:

A.  The death of either parent or of the child;

B.  The marriage of the child;

C.  The child reaching his/her 24th birthday;

D.  If a child ceases to be a full-time student or no longer is actively engaged in a full time course of study for 2 consecutive semesters or 3 quarters (except if extended pursuant to paragraph 6.4 b. above).

## ARTICLE VII

## EMANCIPATION EVENT

7.1    Except for child support situation, with its own definition of "emancipation" as set forth in said Article IV, an "emancipation event" for a child shall occur or be deemed to have occurred upon the earliest to happen of any of the following, at which time the parties' obligations for the child as detailed in this Marital Settlement Agreement shall terminate:

a.    The child's reaching majority or completing trade school or college and professional school education within the time set forth in Article VI herein, whichever shall last occur;

b.    The child's marriage;

c.    The child's having a permanent residence away from the permanent residence of Susan. A residence at boarding school, camp, trade school, college or professional school is not to be deemed a residence away from the permanent residence of Susan;

d.    The child's death;

e.    Entry into the armed forces of the United States, but the emancipation event shall be deemed terminated and nullified upon discharge from such armed forces and thereafter, as if such emancipation event by reason of that entry had not occurred;

f.    The child's engaging in full-time employment except that the child's engaging in full-time employment during vacation or summer periods or during the time allowed the child to complete college or professional school which shall not be deemed an emancipation event.

## ARTICLE VIII

## LIFE INSURANCE FOR THE MINOR CHILDREN

8.1 Edward shall maintain a life insurance policy in the minimum amount of $600,000 which shall name Angela and Kevin, the minor children, as the sole beneficiaries of said life insurance policies. Edward's obligation to provide said life insurance shall terminate upon the youngest child becoming emancipated or graduating from college, whichever is last to occur. Edward agrees that he will not pledge, assign, or hypothecate the life insurance policy to be maintained by him for any collateral purpose which may or will

8

reduce the aggregate death benefits payable hereunder, except as hereinabove provided. In the event Edward does not have a present life insurance policy, he shall obtain a policy in the amount set forth in this paragraph. Edward shall furnish Susan with true and complete copies of such life insurance policy or policies, along with verification of payment the premiums on said policies yearly or upon the same time period in which payments are due. In the event of a default in discharge of any of the obligations of Edward under this Marital Settlement Agreement, then Susan on her own behalf, or on behalf of the children, or the children on their own behalf, shall have an enforceable and/or claims against Edward's estate for said funds due and owing under the terms of this Article.

## ARTICLE IX
## SETTLEMENT OF PROPERTY RIGHTS

9.1     In connection with the division of the below described marital property by and between the parties, each of the parties acknowledges that same is being divided in respect to the contribution by each of them to the accumulated marital estate and in accordance with the provisions of the Illinois Marriage and Dissolution of Marriage Act, including Section 503.

9.2    **FURNITURE AND FURNISHINGS:**  The parties covenant and agree that Susan shall receive all furniture, furnishings and fixtures located in the marital residence.

9.3    **PROPERTY DIVISION:**    The parties have agreed to divide the following property as follows:
A.    PROPERTY ALLOCATED TO SUSAN:

i.    All of the sales proceeds from the Naples, Florida condominium. The parties acknowledge that the property has a fair market value of approximately $1,000,0000 and there is currently a mortgage of $657,000. The equity is approximately $400,000. ~~Edward shall be responsible for payment of the mortgage, taxes and utilities on the residence until the residence is sold.~~

ii.    ½ (12,000 shares) of the Chicago Board of Trade (CBOT) stock. Edward shall transfer said shares to Susan within 30 days of entry of this Judgment.

iii.    One-half (1/2) of the following Retirement Accounts:
   a.    Wachovia IRA #3787  $188,618
   b.    Wachovia IRA #0093  $29,552
   c.    Wachovia IRA #4049  $14,685
   d.    Genworth Financial Acct #9180 $13,229
   e.    Fidelity account #2556    $101,687
   f.    Fidelity account #7258    $22,816

iv.    Lump Sum Payment:  Edward agrees to pay to Susan the sum of $666,045 within 30 days of entry of this Judgment.  Said payment is an equalization payment resulting in an equal division of all assets.

v.    2000 Cadillac DeVille

9

B.    <u>PROPERTY ALLOCATED TO EDWARD:</u>

    i.    Marital Residence: Susan shall sign and deliver to Edward, a quit claim deed transferring all of her rights, title and interest in the property located at 1227 Acorn Street, Lemont, Illinois. Edward agrees that he will save, indemnify and hold Susan harmless from any liability thereon. Edward shall be responsible for payment of the home equity loan, taxes, utilities and any and all repairs thereon. Edward acknowledges that there is a home equity loan in the approximate amount of $500,000. Both parties state that there are no other liens on said property. Edward shall refinance the home equity loan within ninety (90) days of the date of the Judgment, thereby removing Susan's name from same.

    ii.    Michigan property located in Manistique, Michigan

    iii.    All remaining shares of Chicago Board of Trade (CBOT) stock after transfer to Susan of 12,000 shares.

    iv.    One-half (1/2) of the following Retirement Accounts:
        a.    Wachovia IRA #3787  $188,618
        b.    Wachovia IRA #0093   $29,552
        c.    Wachovia IRA #4049   $14,685
        d.    Genworth Financial Acct #9180 $13,229
        e.    Fidelity account #2556   $101,687
        f.    Fidelity account #7258    $22,816

    v.    CBOT AM Trading Seat

    vi.    CBOT Full day Trading Seat

    vii.    2007 Mercedes automobile

    viii.    1996 GMC Jimmy automobile

    ix.    2007 Yamaha Venture Lite snowmobile

    x.    2006 Yamaha APEX snowmobile

    xi.    _____ ATV

    xii.    1970 GT Torino ($40,000)

    xiii.    _____ Boat

9.4    **DEBTS:** Each party warrants that he or she has not incurred any debts or liabilities with third parties for which the other would be liable since the separation of the parties, except for those in the ordinary course of living, which shall be paid by the party who incurred each such debt or liability. Each party agrees with the other party that he or she will not at any time hereafter contract any debt or liability whatsoever with third parties for which the other or his or her legal heirs, representatives and assigns, or his or her property or estate shall become liable. Each party agrees with the other party at all times to keep the other party, his or her heirs, personal representatives and assigns, free, harmless and indemnified of and from any claims, debts, charges or liabilities hereafter contracted by either party with third parties. In addition, each party shall be solely responsible for any individual credit cards in their name. Susan shall pay the Discover

10

credit card bill of approximately $9,000 and Edward shall pay the Capital One credit card bill of approximately $27,000.

9.5  **LAWSUIT**:  Edward is solely responsible for any liability resulting from any lawsuits pertaining to Edward, including but not limited to any lawsuits arising from Edward's business and any business transactions of Edward as a trader for Chicago Board of Trade and shall indemnify and hold Susan from any liability thereon.

## ARTICLE X

## ATTORNEYS' FEES

10.1  Each of the parties hereby agrees that they shall pay in their entirety their own individual attorneys' fees and costs in connection with this Agreement and in connection with the pending legal separation of marriage proceedings.  Susan agrees to waive any contribution from Edward for attorneys fees incurred in this proceeding and agrees to indemnify and hold Edward harmless from any and all attorneys' fees or costs which she may have incurred in connection with this Agreement or in connection with the legal separation proceedings. Edward agrees to indemnify and hold Susan harmless from any and all attorneys' fees or costs which he may have incurred in connection with this Agreement or in connection with the pending legal separation proceedings.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1  NON-MODIFIABILITY OF PROVISIONS OF AGREEMENT:  Except for those provisions of this Marital Settlement Agreement, this Agreement shall not be subject to modification or amendment unless specifically permitted by the express provisions hereof.

11.2  DOCUMENT EXECUTION:  Except as otherwise provided, each of the parties hereto shall execute, acknowledge, and deliver upon the effective date of this Agreement, good and sufficient instruments necessary and proper to vest the titles and estates in the respective parties hereto, as hereinafter provided, at any time and from time to time, execute, acknowledge and deliver any and all documents which may be necessary or proper to carry out the purposes of this Agreement and establish of record the sole and separate ownership of the several properties of said parties in the manner herein agreed and provided. If either party hereto for any reason shall fail or refuse to execute any such documents, then this Agreement shall, and it is hereby expressly declared to, constitute a fully and present transfer, assignment and conveyance of all rights hereinabove designated to be transferred, assigned and conveyed, and a full, present and effective relinquishment and waiver of all rights hereinafter designated to be relinquished and waived. To further implement the execution of real estate hereunder, the parties designate any judge or associate judge of the Circuit Court of Will County, to execute and deliver any and all such documents in the place and stead of the party herein so obligated.

11

11.3   <u>RELEASE OF ESTATE CLAIMS:</u>  To the fullest extent by law permitted to do so, and except as herein otherwise provided, each of the parties does hereby forever relinquish, release, waive and forever quit claim and grant to the other, his or her heirs, personal and representatives, and assigns, all rights of maintenance, dower, inheritance, descent, distribution, community interest and all other right, title, claim, interest and estate as Husband or Wife, widow or widower, or otherwise by reason of the marital relationship existing between the said parties hereto, under any present or future law, or which he or she otherwise has or might have or be entitled to claim in, to or against the property and assets of the other, real, personal or mixed, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, or whether in possession or in expectancy, and whether vested or contingent and each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, for the purpose of enforcing any or all of the rights relinquished under this Agreement; and each of the parties agree that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party hereto; and each of the parties further agree to execute, acknowledge and deliver at the request of the other party, his or her heirs, personal representatives, grantees, devisee or assigns, any or all such deeds, releases or other instruments and further assurances as may be required or reasonably required to effect or evidence such release, waiver, relinquishment or extinguishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligation on the part of the other to comply with provisions of this Agreement, or the rights of either party to comply under this Agreement.

11.4   <u>RELEASE OF ESTATE ADMINISTRATION DUTIES:</u>  Each of the parties hereto hereby waives and relinquishes all rights to act as administrator or administrator with will annexed of the estate of the other party, and each of the parties does further relinquish all rights to inherit by intestate succession, any of the property of which the other party may die seized or possessed, and should either of the parties hereto die intestate, this Agreement shall operate as a relinquishment of all rights of the surviving party hereafter to apply for letter of administration in any form, and the estate of such deceased party, if he or she dies intestate, shall descend to the heirs-at-law of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto respectively, reserving the right to dispose, by testament or otherwise of his or her respective property in any way that he or she may see fit, without any restriction or limitation whatsoever; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party of the obligation of the other to comply with the terms of this Agreement, or the rights of either party under this Agreement.

11.5   <u>RELEASE OF TORT CLAIMS:</u>  To the fullest extent permitted by law, and except as otherwise provided herein, each of the parties does hereby forever relinquish, release, waive and forever discharge the other from all claims and causes of action of any type, known or unknown, that either of them has or may have, now or arising in the past, against the other. This release includes, but is not limited to, all claims based on injury to

12

the person, whether negligent, willful and wanton, intentional or otherwise. This release is final and irrevocable, regardless of any facts which may exist but are not known to the parties. Each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, that neither or them shall at any time hereafter sue the other or his or her estate, heirs, personal representatives, grantees, devisees or assigns, for the purpose of enforcing any rights specified to be released, waived or relinquished under this Agreement; and each party further agrees that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense thereto.

11.6    SUCCESSORS: This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, guardians, trustees, assigns and other successors of the parties hereto.

11.7    INCORPORATION INTO JUDGMENT:   In the event the parties at any time hereafter obtain a legal separation of marriage from the other, this Agreement and all its provisions shall be incorporated into any such Judgment for Legal Separation, either directly or by references, and upon entry of said Judgment, this Agreement shall continue in full force and effect.  The Court, on entry of the Judgment of Dissolution of Marriage, shall retain the right to enforce the provisions and terms of this Agreement, which Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, devisee and grantees of the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have set their respective hands and seals on the date and year set forth above.

_____          _____
SUSAN SARVEY                                      EDWARD SARVEY

**UPON THE MOTION OF THE ATTORNEY FOR THE PETITIONER**, it is accordingly ordered, adjudged and decreed:

A.     That the parties are awarded a legal separation pursuant to the Statute of the State of Illinois in such cases made and provided being the <u>Illinois Marriage and Dissolution of Marriage Act</u>, and the parties are awarded a Judgment for Legal Separation.

B.     That the Legal Separation Agreement between Susan, the Petitioner and Edward, the Respondent, dated July 6, 2007 and hereinabove set forth in full, is made a part of this Judgment for Legal Separation; and all of the provisions of said Agreement are expressly ratified, confirmed, approved, and adopted as the Order of this Court to the same extent and with the same force and effect as if the said provisions were in this paragraph set forth verbatim as the Judgment of this Court; each of the parties hereto shall perform under the terms of said agreement those acts therein agreed to be done and performed by each of them.

C.     That each of the parties hereto will, promptly upon demand by the other party, execute and deliver to such other party any and all documents that may be necessary to effectuate and fulfill the terms of this Judgment.

D.     Except for those provisions concerning custody, child support or welfare of the minor children, this Judgment for Legal Separation and the agreement incorporated but not merged herein shall not be modifiable by any subsequent Court of competent jurisdiction, except upon the express written agreement of both parties.

E.     This Court expressly retains the jurisdiction of this cause for the purpose of enforcing all and singular the terms and provisions of this Judgment for Legal Separation, including all and singular the terms and provisions of the agreement made in writing by and between the parties hereto on July 6, 2007 as heretofore set forth.

ENTER:     ENTERED
JUDGE DANIEL A. RILEY - 1644

JUN 1 0 2007

JUDGE

BY: _____         D.        BROWN
        One of the Attorneys for        CLERK OF THE CIRCUIT COURT
        Petitioner                      OF COOK COUNTY IL
                                        DEPUTY CLERK

FEINBERG & BARRY, P.C.
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 444-1050

# Exhibit C