Attorney No. 13864

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE:  THE MARRIAGE OF:    )
    )
SUSAN SARVEY    )
    Petitioner,    )
    )
    and    )    NO. 07 D5 30018
    )
EDWARD C. SARVEY    )
    Respondent.    )

## CORRECTED JUDGMENT FOR LEGAL SEPARATION

**THIS CAUSE having come on to be heard** upon the written stipulation of the parties, the Petitioner, SUSAN SARVEY, hereinafter referred to as "Petitioner", by and through her attorneys, Carroll A. Barry of FEINBERG & BARRY, P.C., the Respondent, EDWARD C. SARVEY, hereinafter referred to as "Respondent" appearing Pro-se; the parties having stipulated to have this matter heard as an uncontested matter, and this cause having come on for hearing upon the duly verified Petition for Legal Separation of Susan, the Petitioner, and the Appearance and Response thereto of Edward, the Respondent; Petitioner being present in open Court; and the court having heard the testimony of Petitioner in support of the allegations contained in her Petition for Legal Separation; and the Court having considered all of the evidence and now being fully advised in the premises;

## FINDS THAT:

A.    This Court has jurisdiction of the parties hereto and of the subject matter hereof.

B.    The Petitioner was domiciled in and a resident of the State of Illinois and County of Cook at the time the Petition for Legal Separation was commenced and has maintained a residence in the State of Illinois for ninety (90) days next preceding the making of the findings.

C.    The parties were married on May 14, 1988 in Lemont, Illiois and the marriage was registered in Cook County, Illinois.

D.    Two children were born to the parties as a result of this marriage, namely: Angela, having been born on August 9, 1998 and Kevin, having been born on January 15, 2003. No other children were born to or adopted by the parties hereto, and the Petitioner is not presently pregnant.

PETITIONER'S EXHIBIT

A

E.    Petitioner and Respondent waive the requirement of having lived separate and apart for a continuous period in excess of two (2) years.  The Petitioner has substantially proven the material allegations of her Petition for Legal Separation for the entry of a Judgment for Legal Separation, in that irreconcilable differences and difficulties have caused the irretrievable breakdown of the marriage; all efforts at reconciliation have failed and future attempts at reconciliation would be impractical and not in the best interests of the family, all within the meaning and purview of the Statute in such cases made and provided, being the <u>Illinois Marriage and Dissolution of Marriage Act</u>, Section 401.

F.    The parties hereto have entered into a Marital Settlement Agreement dated July 6, 2007 concerning the questions of the maintenance of the parties, the respective rights of each party in and to the property, income or estate which either of them now owns or may hereafter acquire, including a division of all marital and non-marital property, and other matters which agreement has been presented to this Court for its consideration. Said agreement was entered into freely and voluntarily between the parties hereto; it is not unconscionable and ought to receive the approval of this Court; and is, in words and figures, as follows:



## LEGAL SEPARATION SETTLEMENT AGREEMENT

**THIS AGREEMENT** made and entered into this 10th day of ~~May~~ July, 2007, by and between SUSAN SARVEY, hereinafter referred to as "Susan", and EDWARD SARVEY, hereinafter referred to as "Edward", both parties being residents of the County of Cook, State of Illinois:

## WITNESSETH:

**WHEREAS,**

A.     The parties were married on May 14, 1988 in Lemont, Illinois and the marriage was registered in Cook County, Illinois.

B.     Two children were born to the parties as a result of this marriage, namely: Angela, having been born on August 9, 1998 and Kevin, having been born on January 15, 2003. No other children were born to or adopted by the parties hereto, and the Petitioner is not presently pregnant.

C.     Unfortunate and irreconcilable differences and difficulties have arisen between the parties as a result of which they have ceased cohabiting as husband and wife.

D.     Susan has filed a Petition for Legal Separation against Edward in the Circuit Court of Will County, Illinois, known as Case No. 07 D5 30118, entitled "IN RE: THE MARRIAGE OF: SUSAN L. SARVEY, Petitioner, and EDWARD R. SARVEY, Respondent." Said cause is still pending and undetermined.

E.     Both parties expressly state that they have freely and voluntarily entered into this Agreement of their own volition, free of any duress or coercion and with full knowledge of each and every provision contained in this Agreement and the consequences thereof; that each party states that he or she understands:

      a.     their respective legal rights and duties;
      b.     the range of what the Court may order if requested by either party to decide the case as a contested matter; and
      c.     the legal effect of each provision of this Agreement.

F.     Without any collusion as to the pending case or as to any legal separation of marriage proceedings between the parties hereto, but without prejudice to any right of action for legal separation which either of said parties may have, the parties hereto consider it to be in their best interests to settle between themselves the questions of maintenance for the parties, custody, child support and related matters, the respective rights of property growing out of the marital relationship or any other relationship, the questions of attorneys' fees and all rights of any kind, nature and description, whether real, personal or mixed, marital or non-marital, which either of them now has or may hereafter

claim to have against the other, whether now or hereafter owned or possessed by either of them.

    G.    Susan has employed and has had the benefit of counsel of Carroll A. Barry of FEINBERG & BARRY, P.C. as her attorney. Edward is appearing pro se, although he has been cautioned to obtain counsel. Edward acknowledges that he has been given no advice or promises concerning this agreement and divorce action. Carroll Barry has been instructed not to request, schedule or conduct depositions with respect to this matter. Susan hereby absolves her respective counsel of and from any liability for her compliance with the foregoing instructions, asserting her satisfaction that she possesses sufficient independent knowledge to knowingly and confidently express her conclusion that the various agreements herein made are fair and reasonable under all the circumstances and fully satisfy her respective needs.

    **NOW THEREFORE**, in consideration of the foregoing and in further consideration of the mutual and several covenants herein contained, and for other good and valuable consideration by each to the other delivered, the receipt and sufficiency of which is hereby acknowledged, the parties do hereby freely and voluntarily agree by and between themselves as follows:

## ARTICLE I

## RESERVATION OF LITIGATION RIGHTS

    1.    This Agreement is not one to obtain or stimulate a legal separation of marriage. Each party reserves the right to prosecute her pending action for legal separation and to defend any action for dissolution of marriage or legal separation which the other party may bring or has brought.

## ARTICLE II

## MAINTENANCE

    2.1    MUTUAL MAINTENANCE WAIVER: Edward and Susan hereby stipulate that each is able to be self-supporting through appropriate employment and is able to provide for his or her reasonable means to maintenance and support. Accordingly, each party hereby waives and releases any and all claims against the other for maintenance and alimony, whether past, present or future, and the parties hereby stipulate that this Agreement, when effective, shall terminate and bar each party's rights to receive maintenance, alimony or any other support from the other, whether past, present or future.

## ARTICLE III

## CUSTODY OF THE MINOR CHILDREN

3.1    **PREAMBLE**:  Each party acknowledges the continuing need of the minor children for ongoing contact with Edward and the need for Edward to have input into the decisions affecting the upbringing and raising of Angela and Kevin, the minor children of the parties.

3.2    **CUSTODY**:  The parties agree that Susan shall have the sole care, custody and control of Angela and Kevin, subject to Edward's rights of visitation as set forth below.

3.3    **NOTIFICATION, CONSULTATION, INPUT, AND DISPUTE RESOLUTION**:   Susan agrees to discuss with, and obtain input from Edward on the major decisions affecting the care, welfare, activities, health and education of Angela and Kevin prior to any major decision begin made.  However, even after such discussion, Susan shall have the final decision on all issues related to day-to-day care and all decisions affecting the well-being, education and welfare of both children.  In the event of an emergency, the party with Angela and/or Kevin shall make any decision about their care to promote the child's health and life preservation.  The party making such emergency decision shall promptly notify the other parent of the emergency and course of care.

3.4 **WEEKLY SCHEDULE**:  Every week, Angela and Kevin will visit with Edward a minimum of two midweek visitations from 4:00 p.m. until 8:30 p.m.   Edward shall promptly return Angela and Kevin to Susan at the conclusion of his visitation periods.  Additionally, on alternate weekends, Edward may have overnight weekend visitation from Friday at 5:00 p.m. to Sunday at 5:00 p.m. During all periods of visitation, Edward shall be obligated to see that the children's school homework and projects are worked on and/or completed during visits.  If this issue becomes problematic in that the children are not completing daily assignments or not working on longer term projects while under Edward's care, visitation times and/or other conditions may be modified or put in place to assist in this issue.

3.5    **HOLIDAY SCHEDULE**:  The parties agree to alternate the following holidays, with the first year set as follows:

|  | **SUSAN** | **EDWARD** |
|---|---|---|
| Easter | EVEN | ODD |
| Memorial Day | ODD | EVEN |
| July 4th Day | EVEN | ODD |

3

| Labor Day | ODD | EVEN |
|---|---|---|
| Thanksgiving | EVEN | ODD |
| Christmas Eve | EVEN | ODD |
| Christmas Day | ODD | EVEN |
| New Year's Eve | EVEN | ODD |
| New Year's Day | EVEN | ODD |

3.6    **CHILDREN'S ACTIVITIES DURING FATHER'S VISITATION**:  When the children are with Edward, he shall take them to their regularly scheduled activities, as well as any special events and social obligations occurring during such period of visitation, unless such obligations conflict with a specially made plan of Susan with the children.

## ARTICLE IV

## CHILD SUPPORT

4.1    AMOUNT:    Edward hereby agrees to pay to Susan the sum of Two Thousand Five Hundred and no/100 DOLLARS ($2500.00) per month as and for temporary child support of the parties' minor children.  In addition, Edward shall pay 28% of any net monthly income he receives over and above $5500 net income per month, up to and not to exceed $10,000.  Edward shall show proof of his income on the first day of each month.  Payments to be made through a Uniform Order of Support, to be entered.

4.2    BASIS OF SUPPORT:  Edward's net income is approximately $4,666 per month.

4.3    TERMINATION OF CHILD SUPPORT:  The child support obligation of Edward to pay child support hereunder shall forever and wholly terminate upon the first to occur of the following events, which constitute "emancipation" events for child support purposes:

4

a) the youngest minor child graduating from high school;

b) the youngest minor child reaching the age of 18 as long as said child has graduated from high school;

c) the youngest minor child no longer residing in the residence of the mother on a permanent basis;

d) the youngest minor child beginning full-time employment other than during summer months while said child is working towards a secondary educational diploma; or

e) the death of the minor child, combined with the emancipation of all other minor children, as herein defined.

4.4    <u>EXEMPTIONS</u>: The parties shall each claim one child as a dependent for federal and state tax purposes.   Edward shall be allowed to claim Angela as a dependent exemption on his Federal and State income tax returns every year. Susan shall be allowed to claim Kevin as a dependent exemption on her Federal and State income tax returns every year.

## ARTICLE V

## MEDICAL AND RELATED EXPENSES

5.1   It is the parties' obligation to provide major medical and hospitalization insurance for the children at all times.  The cost of said insurance shall be paid by Edward. Presently, Edward has a private policy.

5.2    <u>OBLIGATION TO MAINTAIN</u>: Edward shall maintain said insurance for the children of the parties.

5.3    <u>PAYMENT OBLIGATION</u>:   The parties shall equally divide all uninsured medical, dental, optical and mental health expenses incurred on behalf of the children of the parties.

5.4    <u>DURATION OF OBLIGATION TO PAY EXPENSES</u>: Except as otherwise herein provided, the parties' obligation to pay for medical, dental, optical and mental health care under this Article shall commence upon the effective date of this Agreement and shall continue until the emancipation of the children as defined in Article IV herein; provided that if a child pursues a college, university or vocational school education, his/her obligations as set forth in this Article shall continue until the individual child's completion or discontinuance of said educational pursuit; but, in no event shall the obligations hereunder continue beyond the individual child's twenty-third (23) birthday.

5

5.5   <u>NOTIFICATION:</u>     Any party incurring a medical expense shall notify the other party of the expense in writing.   Reimbursement of any portion not covered by insurance shall be paid within fourteen days of the written request.

## ARTICLE VI

## POST HIGH SCHOOL/HIGH SCHOOL EDUCATION

6.1   **RESPONSIBILITY FOR PAYMENT:** Susan and Edward covenant and agree pursuant to section 750 ILS 5/513 of the Illinois Marriage and Dissolution of Marriage Act and the terms and provisions of this section that they shall contribute to the expenses of undergraduate educational costs, for the cost of post high school education, university or trade school educational expenses for the children. This obligation is predicated upon the scholastic aptitude of the child and the financial abilities and incomes of Susan and Edward at the time such educational process begins.

6.2   **DECISION:**  The decisions affecting the education of the children, including the choice of post high school, or other institution, and schools to visit, shall be made jointly by the parties.  The parties shall consider the expressed preferences of the children.  The parties recognize that they may differ in their concepts of what is the most appropriate post high school education for the child in terms of cost, school selection and post high school education programs.  Both parties agree that to the extent possible that they shall accommodate the expressed preference of the children.

6.3   **EXTENT OF PAYMENT:**  The expenses to be covered under this section of this Marital Settlement Agreement includes, but is not limited to the following:

- college or trade school testing fees;
- college or trade school application fees;
- tuition;
- room and board;
- books;
- laboratory fees;
- activity fees;
- transportation expenses to and from school;
- student health fees;
- a computer suitable to the needs and requirements of the child's educational program;
- allowance for the child;
- any other expenses usually or ordinarily incurred in the acquisition of a college or trade school education.

6

6.4   **CONDITIONS OF PAYMENT:**

a. The obligation of the parties under the terms of this subparagraph shall be irrespective of the fact that the children may, prior to the commencement or during the course of such education, attain the age of majority.

b. The obligations of Susan and Edward set forth in this ARTICLE VI are conditioned upon either child having the desire and aptitude for a college or vocational school education and commencing college or trade school within 6 months from graduation from high school except entrance may be delayed for the purpose of attending  any sports or religious movement program agreed to by the parties.  In addition, the child shall be enrolled as a full-time student and remain in good standing as prescribed by such institution attended and that she shall complete her higher education within four years of her graduation from high school, unless any delay is solely due to serious, extended illness or entry into the Armed Forces.  The child shall furnish copies of all grade reports and curricula/course of study to both parents within 10 days after they are obtained.

6.5   **SCHOLARSHIPS AND AID RESOURCES:** Each child shall apply for financial aid and those scholarships or grants which she is reasonably expected to be capable of receiving.  The child and both parents shall complete all portions of the financial aid and scholarship forms required to be completed by each of them on a timely basis to help defray the expenses of their college education.

6.6   **TERMINATION OF OBLIGATION:** The obligation of each parent to provide college education expenses for each child shall terminate (unless extended pursuant to paragraph 6.4 b. above) four years after graduation from high school or earlier upon the happening of any of the following events:

A. The death of either parent or of the child;

B. The marriage of the child;

C. The child reaching his/her 24th birthday;

D. If a child ceases to be a full-time student or no longer is actively engaged in a full time course of study for 2 consecutive semesters or 3 quarters (except if extended pursuant to paragraph 6.4 b. above).

## ARTICLE VII

## EMANCIPATION EVENT

7.1    Except for child support situation, with its own definition of "emancipation" as set forth in said Article IV, an "emancipation event" for a child shall occur or be deemed to have occurred upon the earliest to happen of any of the following, at which time the parties' obligations for the child as detailed in this Marital Settlement Agreement shall terminate:

      a.    The child's reaching majority or completing trade school or college and professional school education within the time set forth in Article VI herein, whichever shall last occur;

      b.    The child's marriage;

      c.    The child's having a permanent residence away from the permanent residence of Susan. A residence at boarding school, camp, trade school, college or professional school is not to be deemed a residence away from the permanent residence of Susan;

      d.    The child's death;

      e.    Entry into the armed forces of the United States, but the emancipation event shall be deemed terminated and nullified upon discharge from such armed forces and thereafter, as if such emancipation event by reason of that entry had not occurred;

      f.    The child's engaging in full-time employment except that the child's engaging in full-time employment during vacation or summer periods or during the time allowed the child to complete college or professional school which shall not be deemed an emancipation event.

## ARTICLE VIII

## LIFE INSURANCE FOR THE MINOR CHILDREN

8.1 Edward shall maintain a life insurance policy in the minimum amount of $600,000 which shall name Angela and Kevin, the minor children, as the sole beneficiaries of said life insurance policies. Edward's obligation to provide said life insurance shall terminate upon the youngest child becoming emancipated or graduating from college, whichever is last to occur. Edward agrees that he will not pledge, assign, or hypothecate the life insurance policy to be maintained by him for any collateral purpose which may or will

8

reduce the aggregate death benefits payable hereunder, except as hereinabove provided. In the event Edward does not have a present life insurance policy, he shall obtain a policy in the amount set forth in this paragraph. Edward shall furnish Susan with true and complete copies of such life insurance policy or policies, along with verification of payment the premiums on said policies yearly or upon the same time period in which payments are due. In the event of a default in discharge of any of the obligations of Edward under this Marital Settlement Agreement, then Susan on her own behalf, or on behalf of the children, or the children on their own behalf, shall have an enforceable and/or claims against Edward's estate for said funds due and owing under the terms of this Article.

## ARTICLE IX
## SETTLEMENT OF PROPERTY RIGHTS

9.1      In connection with the division of the below described marital property by and between the parties, each of the parties acknowledges that same is being divided in respect to the contribution by each of them to the accumulated marital estate and in accordance with the provisions of the <u>Illinois Marriage and Dissolution of Marriage Act</u>, including Section 503.

9.2      **FURNITURE AND FURNISHINGS:**  The parties covenant and agree that Susan shall receive all furniture, furnishings and fixtures located in the marital residence.

9.3      **PROPERTY DIVISION:**    The parties have agreed to divide the following property as follows:

A.      PROPERTY ALLOCATED TO SUSAN:

    i.      All of the sales proceeds from the Naples, Florida condominium. The parties acknowledge that the property has a fair market value of approximately $1,000,0000 and there is currently a mortgage of $657,000.  The equity is approximately $400,000.

    ii.      ½ (12,000 shares) of the Chicago Board of Trade (CBOT) stock. Edward shall transfer said shares to Susan within 30 days of entry of this Judgment.

    iii.      One-half (1/2) of the following Retirement Accounts:
        a.      Wachovia IRA #3787  $188,618
        b.      Wachovia IRA #0093  $29,552
        c.      Wachovia IRA #4049  $14,685
        d.      Genworth Financial Acct #9180 $13,229
        e.      Fidelity account #2556      $101,687
        f.      Fidelity account #7258      $22,816

    iv.      Lump Sum Payment:  Edward agrees to pay to Susan the sum of $666,045 within 30 days of entry of this Judgment.  Said payment is an equalization payment resulting in an equal division of all assets.

    v.      2000 Cadillac DeVille

B.      PROPERTY ALLOCATED TO EDWARD:

9

i.   Marital Residence: Susan shall sign and deliver to Edward, a quit claim deed transferring all of her rights, title and interest in the property located at 1227 Acorn Street, Lemont, Illinois. Edward agrees that he will save, indemnify and hold Susan harmless from any liability thereon. Edward shall be responsible for payment of the home equity loan, taxes, utilities and any and all repairs thereon. Edward acknowledges that there is a home equity loan in the approximate amount of $500,000. Both parties state that there are no other liens on said property. Edward shall refinance the home equity loan within ninety (90) days of the date of the Judgment, thereby removing Susan's name from same.

ii.   Michigan property located in Manistique, Michigan

iii.   All remaining shares of Chicago Board of Trade (CBOT) stock after transfer to Susan of 12,000 shares.

iv.   One-half (1/2) of the following Retirement Accounts:

    a.   Wachovia IRA #3787  $188,618
    b.   Wachovia IRA #0093  $29,552
    c.   Wachovia IRA #4049  $14,685
    d.   Genworth Financial Acct #9180 $13,229
    e.   Fidelity account #2556    $101,687
    f.   Fidelity account #7258    $22,816

v.   CBOT AM Trading Seat

vi.   CBOT Full day Trading Seat

vii.   2007 Mercedes automobile

viii.   1996 GMC Jimmy automobile

ix.   2007 Yamaha Venture Lite snowmobile

x.   2006 Yamaha APEX snowmobile

xi.   _____ ATV

xii.   1970 GT Torino ($40,000)

xiii.   _____ Boat

9.4   **DEBTS:** Each party warrants that he or she has not incurred any debts or liabilities with third parties for which the other would be liable since the separation of the parties, except for those in the ordinary course of living, which shall be paid by the party who incurred each such debt or liability. Each party agrees with the other party that he or she will not at any time hereafter contract any debt or liability whatsoever with third parties for which the other or his or her legal heirs, representatives and assigns, or his or her property or estate shall become liable. Each party agrees with the other party at all times to keep the other party, his or her heirs, personal representatives and assigns, free, harmless and indemnified of and from any claims, debts, charges or liabilities hereafter contracted by either party with third parties.  In addition, each party shall be solely responsible for any individual credit cards in their name. Susan shall pay the Discover credit card bill of approximately $9,000 and Edward shall pay the Capital One credit card bill of approximately $27,000.

10

9.5  **LAWSUIT**:  Edward is solely responsible for any liability resulting from any lawsuits pertaining to Edward, including but not limited to any lawsuits arising from Edward's business and any business transactions of Edward as a trader for Chicago Board of Trade and shall indemnify and hold Susan from any liability thereon.

## ARTICLE X

## ATTORNEYS' FEES

10.1  Each of the parties hereby agrees that they shall pay in their entirety their own individual attorneys' fees and costs in connection with this Agreement and in connection with the pending legal separation of marriage proceedings.  Susan agrees to waive any contribution from Edward for attorneys fees incurred in this proceeding and agrees to indemnify and hold Edward harmless from any and all attorneys' fees or costs which she may have incurred in connection with this Agreement or in connection with the legal separation proceedings. Edward agrees to indemnify and hold Susan harmless from any and all attorneys' fees or costs which he may have incurred in connection with this Agreement or in connection with the pending legal separation proceedings.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1  NON-MODIFIABILITY OF PROVISIONS OF AGREEMENT:   Except for those provisions of this Marital Settlement Agreement, this Agreement shall not be subject to modification or amendment unless specifically permitted by the express provisions hereof.

11.2  DOCUMENT EXECUTION:   Except as otherwise provided, each of the parties hereto shall execute, acknowledge, and deliver upon the effective date of this Agreement, good and sufficient instruments necessary and proper to vest the titles and estates in the respective parties hereto, as hereinafter provided, at any time and from time to time, execute, acknowledge and deliver any and all documents which may be necessary or proper to carry out the purposes of this Agreement and establish of record the sole and separate ownership of the several properties of said parties in the manner herein agreed and provided. If either party hereto for any reason shall fail or refuse to execute any such documents, then this Agreement shall, and it is hereby expressly declared to, constitute a fully and present transfer, assignment and conveyance of all rights hereinabove designated to be transferred, assigned and conveyed, and a full, present and effective relinquishment and waiver of all rights hereinafter designated to be relinquished and waived. To further implement the execution of real estate hereunder, the parties designate any judge or associate judge of the Circuit Court of Will County, to execute and deliver any and all such documents in the place and stead of the party herein so obligated.

11

11.3   <u>RELEASE OF ESTATE CLAIMS:</u>  To the fullest extent by law permitted to do so, and except as herein otherwise provided, each of the parties does hereby forever relinquish, release, waive and forever quit claim and grant to the other, his or her heirs, personal and representatives, and assigns, all rights of maintenance, dower, inheritance, descent, distribution, community interest and all other right, title, claim, interest and estate as Husband or Wife, widow or widower, or otherwise by reason of the marital relationship existing between the said parties hereto, under any present or future law, or which he or she otherwise has or might have or be entitled to claim in, to or against the property and assets of the other, real, personal or mixed, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, or whether in possession or in expectancy, and whether vested or contingent and each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, for the purpose of enforcing any or all of the rights relinquished under this Agreement; and each of the parties agree that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party hereto; and each of the parties further agree to execute, acknowledge and deliver at the request of the other party, his or her heirs, personal representatives, grantees, devisee or assigns, any or all such deeds, releases or other instruments and further assurances as may be required or reasonably required to effect or evidence such release, waiver, relinquishment or extinguishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligation on the part of the other to comply with provisions of this Agreement, or the rights of either party to comply under this Agreement.

11.4   <u>RELEASE OF ESTATE ADMINISTRATION DUTIES:</u>  Each of the parties hereto hereby waives and relinquishes all rights to act as administrator or administrator with will annexed of the estate of the other party, and each of the parties does further relinquish all rights to inherit by intestate succession, any of the property of which the other party may die seized or possessed, and should either of the parties hereto die intestate, this Agreement shall operate as a relinquishment of all rights of the surviving party hereafter to apply for letter of administration in any form, and the estate of such deceased party, if he or she dies intestate, shall descend to the heirs-at-law of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto respectively, reserving the right to dispose, by testament or otherwise of his or her respective property in any way that he or she may see fit, without any restriction or limitation whatsoever; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party of the obligation of the other to comply with the terms of this Agreement, or the rights of either party under this Agreement.

11.5   <u>RELEASE OF TORT CLAIMS:</u>  To the fullest extent permitted by law, and except as otherwise provided herein, each of the parties does hereby forever relinquish, release, waive and forever discharge the other from all claims and causes of action of any type, known or unknown, that either of them has or may have, now or arising in the past, against the other. This release includes, but is not limited to, all claims based on injury to the person, whether negligent, willful and wanton, intentional or otherwise. This release is final and irrevocable, regardless of any facts which may exist but are not known to the

12

parties. Each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, that neither or them shall at any time hereafter sue the other or his or her estate, heirs, personal representatives, grantees, devisees or assigns, for the purpose of enforcing any rights specified to be released, waived or relinquished under this Agreement; and each party further agrees that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense thereto.

11.6   <u>SUCCESSORS</u>: This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, guardians, trustees, assigns and other successors of the parties hereto.

11.7   <u>INCORPORATION INTO JUDGMENT:</u>   In the event the parties at any time hereafter obtain a legal separation of marriage from the other, this Agreement and all its provisions shall be incorporated into any such Judgment for Legal Separation, either directly or by references, and upon entry of said Judgment, this Agreement shall continue in full force and effect.  The Court, on entry of the Judgment of Dissolution of Marriage, shall retain the right to enforce the provisions and terms of this Agreement, which Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, devisee and grantees of the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have set their respective hands and seals on the date and year set forth above.


_____          _____
SUSAN SARVEY                       EDWARD SARVEY

**UPON THE MOTION OF THE ATTORNEY FOR THE PETITIONER**, it is accordingly ordered, adjudged and decreed:

A.    That the parties are awarded a legal separation pursuant to the Statute of the State of Illinois in such cases made and provided being the Illinois Marriage and Dissolution of Marriage Act, and the parties are awarded a Judgment for Legal Separation.

B.    That the Legal Separation Agreement between Susan, the Petitioner and Edward, the Respondent, dated July 6, 2007 and hereinabove set forth in full, is made a part of this Judgment for Legal Separation; and all of the provisions of said Agreement are expressly ratified, confirmed, approved, and adopted as the Order of this Court to the same extent and with the same force and effect as if the said provisions were in this paragraph set forth verbatim as the Judgment of this Court; each of the parties hereto shall perform under the terms of said agreement those acts therein agreed to be done and performed by each of them.

C.    That each of the parties hereto will, promptly upon demand by the other party, execute and deliver to such other party any and all documents that may be necessary to effectuate and fulfill the terms of this Judgment.

D.    Except for those provisions concerning custody, child support or welfare of the minor children, this Judgment for Legal Separation and the agreement incorporated but not merged herein shall not be modifiable by any subsequent Court of competent jurisdiction, except upon the express written agreement of both parties.

E.    This Court expressly retains the jurisdiction of this cause for the purpose of enforcing all and singular the terms and provisions of this Judgment for Legal Separation, including all and singular the terms and provisions of the agreement made in writing by and between the parties hereto on July 6, 2007 as heretofore set forth.

ENTER:


_____
JUDGE

BY: _____
        One of the Attorneys for
              Petitioner

FEINBERG & BARRY, P.C.
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 444-1050

11.3   RELEASE OF ESTATE CLAIMS:  To the fullest extent by law permitted to do so, and except as herein otherwise provided, each of the parties does hereby forever relinquish, release, waive and forever quit claim and grant to the other, his or her heirs, personal and representatives, and assigns, all rights of maintenance, dower, inheritance, descent, distribution, community interest and all other right, title, claim, interest and estate as Husband or Wife, widow or widower, or otherwise by reason of the marital relationship existing between the said parties hereto, under any present or future law, or which he or she otherwise has or might have or be entitled to claim in, to or against the property and assets of the other, real, personal or mixed, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, or whether in possession or in expectancy, and whether vested or contingent and each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, for the purpose of enforcing any or all of the rights relinquished under this Agreement; and each of the parties agree that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party hereto; and each of the parties further agree to execute, acknowledge and deliver at the request of the other party, his or her heirs, personal representatives, grantees, devisee or assigns, any or all such deeds, releases or other instruments and further assurances as may be required or reasonably required to effect or evidence such release, waiver, relinquishment or extinguishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligation on the part of the other to comply with provisions of this Agreement, or the rights of either party to comply under this Agreement.

11.4   RELEASE OF ESTATE ADMINISTRATION DUTIES:  Each of the parties hereto hereby waives and relinquishes all rights to act as administrator or administrator with will annexed of the estate of the other party, and each of the parties does further relinquish all rights to inherit by intestate succession, any of the property of which the other party may die seized or possessed, and should either of the parties hereto die intestate, this Agreement shall operate as a relinquishment of all rights of the surviving party hereafter to apply for letter of administration in any form, and the estate of such deceased party, if he or she dies intestate, shall descend to the heirs-at-law of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto respectively, reserving the right to dispose, by testament or otherwise of his or her respective property in any way that he or she may see fit, without any restriction or limitation whatsoever; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party of the obligation of the other to comply with the terms of this Agreement, or the rights of either party under this Agreement.

11.5   RELEASE OF TORT CLAIMS:  To the fullest extent permitted by law, and except as otherwise provided herein, each of the parties does hereby forever relinquish, release, waive and forever discharge the other from all claims and causes of action of any type, known or unknown, that either of them has or may have, now or arising in the past, against the other. This release includes, but is not limited to, all claims based on injury to the person, whether negligent, willful and wanton, intentional or otherwise. This release is final and irrevocable, regardless of any facts which may exist but are not known to the

12

parties. Each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, that neither or them shall at any time hereafter sue the other or his or her estate, heirs, personal representatives, grantees, devisees or assigns, for the purpose of enforcing any rights specified to be released, waived or relinquished under this Agreement; and each party further agrees that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense thereto.

11.6    <u>SUCCESSORS</u>: This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, guardians, trustees, assigns and other successors of the parties hereto.

11.7    <u>INCORPORATION INTO JUDGMENT:</u>   In the event the parties at any time hereafter obtain a legal separation of marriage from the other, this Agreement and all its provisions shall be incorporated into any such Judgment for Legal Separation, either directly or by references, and upon entry of said Judgment, this Agreement shall continue in full force and effect.  The Court, on entry of the Judgment of Dissolution of Marriage, shall retain the right to enforce the provisions and terms of this Agreement, which Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, devisee and grantees of the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have set their respective hands and seals on the date and year set forth above.


_____        _____
SUSAN SARVEY                          EDWARD SARVEY

13

**UPON THE MOTION OF THE ATTORNEY FOR THE PETITIONER**, it is accordingly ordered, adjudged and decreed:

A.     That the parties are awarded a legal separation pursuant to the Statute of the State of Illinois in such cases made and provided being the <u>Illinois Marriage and Dissolution of Marriage Act</u>, and the parties are awarded a Judgment for Legal Separation.

B.     That the Legal Separation Agreement between Susan, the Petitioner and Edward, the Respondent, dated July 6, 2007 and hereinabove set forth in full, is made a part of this Judgment for Legal Separation; and all of the provisions of said Agreement are expressly ratified, confirmed, approved, and adopted as the Order of this Court to the same extent and with the same force and effect as if the said provisions were in this paragraph set forth verbatim as the Judgment of this Court; each of the parties hereto shall perform under the terms of said agreement those acts therein agreed to be done and performed by each of them.

C.     That each of the parties hereto will, promptly upon demand by the other party, execute and deliver to such other party any and all documents that may be necessary to effectuate and fulfill the terms of this Judgment.

D.     Except for those provisions concerning custody, child support or welfare of the minor children, this Judgment for Legal Separation and the agreement incorporated but not merged herein shall not be modifiable by any subsequent Court of competent jurisdiction, except upon the express written agreement of both parties.

E.     This Court expressly retains the jurisdiction of this cause for the purpose of enforcing all and singular the terms and provisions of this Judgment for Legal Separation, including all and singular the terms and provisions of the agreement made in writing by and between the parties hereto on July 6, 2007 as heretofore set forth.

ENTER:

JUDGE

BY: _____
                    One of the Attorneys for
                            Petitioner

FEINBERG & BARRY, P.C.
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 444-1050

CCG N002-300M-2/24/05 (                )

Order

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

SUSAN SARVEY

Petit'

v.

EDWARD SARVEY

Respondent

No. 07 D5 3008

### ORDER

This matter coming on to be heard on Motion of Susan SARVEY To Correct Judgment For Legal Separation Court having jurisdiction

IT IS HEREBY ORDERED:

A.   Motion to Correct Judgment For Legal Separation is allowed.

Atty. No.: 13864
Name: Feinberg & Barry
Atty. for: Susan Sarvey
Address: 20 S. CLARK STE 5cc
City/State/Zip: Chicago 60603
Telephone: 708 344 2050

ENTERED:

Dated: _____

**ENTERED**
JUDGE DANIEL A. RILEY · 1644

SEP 2 5 2007

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge _____    Judge's No. _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# Exhibit D

541 CEA1

10/30
Certificate
Rec'd - 10/30
Sent  10/30

l-17-2007

I Ed Sarvey would like to request a physical certificate for 4,500 CME shares.

These shares should be issued in the name of Susan M. Sarvey.

Susan M. Sarvey

Address: 1277 Chatham Drive
        Lemont IL
        60439

SS#    339 60 3143

Please move the 4,500 shares I agreed to give Susan M. Sarvey from my Fortis Clearing account 541cEA1.

These shares are being deposited by Susan M. Sarvey's in her Fidelity account X1944S681, DTC# 0226

Regards,

Ed Sarvey

# Exhibit E



_ZQ000930|CME|C01|CUS|C0000024092|DCWRS|100060291|13087|292143001085010000000541

Certificate Number
ZQ0000930

CLASS A COMMON STOCK
PAR VALUE $.01

CME Group
A CME/Chicago Board of Trade Company

CME GROUP INC., A CME/CHICAGO BOARD OF TRADE COMPANY
INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

Is the owner of

SUSAN W SARVEY

FULLY-PAID AND NON-ASSESSABLE SHARES OF THE CLASS A COMMON STOCK OF

****FOUR THOUSAND FIVE HUNDRED****

CME Group Inc., a CME/Chicago Board of Trade Company (hereinafter called the "Company"), transferable on the books of the Company in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate and the shares represented hereby, are issued and shall be held subject to all of the provisions of the Articles of Incorporation, as amended, and the By-Laws, as amended, of the Company (copies of which are on file with the Company and with the Transfer Agent), to all of which each holder, by acceptance hereof, assents. This Certificate is not valid unless countersigned and registered by the Transfer Agent and Registrar.

Witness the facsimile seal of the Company and the facsimile signatures of its duly authorized officers.

DATED 22 OCT 2007

Executive Chairman

SEAL
CME GROUP INC.
2007

COUNTERSIGNED AND REGISTERED
COMPUTERSHARE TRUST COMPANY, N.A.
TRANSFER AGENT AND REGISTRAR

Shares
****4500****
****4500****
****4500****
****4500****
****4500****

CLASS A COMMON STOCK

SECURITY INSTRUCTIONS ON REVERSE

COPY

VOID

# Exhibit F

Attorney No. 13864

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE: THE MARRIAGE OF:  )
                                     )
SUSAN SARVEY  )
    Petitioner,  )
                                       )
      and  )    NO. 07 D5 30118
                                       )
EDWARD C. SARVEY  )
    Respondent.  )

### ORDER

THIS CAUSE coming to be heard for hearing on Petitioner's Petitions for Rule to Show Cause and Motion for Default Judgment, due notice having been given, the parties being in agreement, Court having jurisdiction of the parties and the subject matter and having been fully advised in the premises;

THE COURT HEREBY FINDS:

1.     That pursuant to the Judgment for Legal Separation entered on July 10, 2007, Susan Sarvey was awarded 12,000 shares of Edward's Chicago Board of Trade (CBOT) stock.
2.     That the CBOT later merged with the Chicago Mercantile Exchange (CME), converting Susan's shares to 4,500 shares of CME stock.
3.     That Edward signed all necessary papers to effectuate the transfer of the 4,500 shares of CME stock to Susan.
4.     That Fortis issued 4,500 shares of CME stock to Susan, as sole owner of said shares of stock.
5.     That Edward has no right, title, interest or claim to Susan's shares.

IT IS HEREBY ORDERED that Edward C. Sarvey has no further claim or interest to Susan Sarvey's 4,500 shares of Chicago Mercantile Exchange Stock.

                      ENTERED:_____

                                JUDGE

Feinberg & Barry, P.C.
Attorneys for Susan Sarvey
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 444-1050
Atty No. 13864

# Exhibit G

STATE OF ILLINOIS           )
                            ) S.S.
COUNTY OF COOK              )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE: THE MARRIAGE OF:              )
                                     )
SUSAN SARVEY,                        )
  Petitioner,                       )
                                     )
     and                        )      NO. 07 D5 30018
                                     )
EDWARD C. SARVEY                     )
  Respondent.                       )

## DECLARATION OF EDWARD SARVEY

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct:

I have no right, title, interest or claim to any of the 4500 CME shares of stock held by Fortis Clearing Americas, LLC ("Fortis") in the name of Susan Sarvey. All shares of CME stock in Susan Sarvey's name held by Fortis were transferred to Susan Sarvey by me pursuant to a Judgment for Legal Separation entered by the Honorable Daniel Riley on July 10, 2007.

                                      _____
                                        EDWARD C. SARVEY

# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD C. SARVEY and DAVID G. SKELENA,<br><br>Defendants,<br><br>LAWRENCE-BONFITTO TRADING COMPANY, and JOSEPH J. BONFITTO,<br><br>Relief Defendants,<br><br>SUSAN SARVEY,<br><br>Movant-Intervenor | Case No. 08 C 0192<br><br>Judge Kendall<br><br>Magistrate Judge Ashman |

## AFFIDAVIT OF SUSAN SARVEY

I, Susan Sarvey, being duly sworn, depose and state as follows:

1. I am submitting this affidavit in support of my Motion and Memorandum to Intervene for the Limited Purpose of Clarifying the Consent Order of Preliminary Injunction, and the accompanying Motion to Clarify the Consent Order.

2. Edward C. Sarvey and I were legally separated in July 2007.

3. Pursuant to the terms of my legal separation from Mr. Sarvey, I was granted sole custody of our two children.

4. I am the sole owner of 4,500 shares of CME Group, Inc. stock ("Shares"), which was allocated to me under the terms of my legal separation from Mr. Sarvey.

5. On October 30, 2007, Fortis Clearing Americas, LLC ("Fortis") informed me and

my attorney that Fortis had received the certificate issuing 4,500 shares of CME stock to me ("Certificate"), and that it would forward the Certificate to me via overnight carrier.

6. I never received the package enclosing the Certificate, which Fortis sent on October 30, 2007, because Fortis recalled the package before it was delivered to me.

7. On or about November 1, 2007, Fortis informed me and my attorney that it would not release my Shares because Mr. Sarvey had margin debt on his clearing account totally approximately $700,000.

8. In early January 2008, Fortis informed me and my attorney that Mr. Sarvey's margin debt had been satisfied and that I could pick up my Shares once the U.S. Commodity Futures Trading Commission ("CFTC") cleared Fortis to release the stock.

9. I instructed my attorneys to provide CFTC and Fortis with any and all documentation requested or needed by CFTC and Fortis to have my Shares released.

10. Fortis has never released the Shares to me.

11. I have never received or reviewed any letter from CFTC that cleared Fortis to release the Shares to me.

12. I must rely on the Shares to support myself and my children because I am the primary caregiver for my children, Mr. Sarvey is not current on his child support payments, I am currently unemployed, and I have not received the full amounts due and owing to me from Mr. Sarvey under the terms of our legal separation.

13. Recently, in order to support my children and myself, it was essential that I borrow thousands of dollars from my family.

14. I certify, under penalty of perjury, that the foregoing is true and correct to the best of my personal knowledge, information, and belief.

Executed on this 30 day of July, 2008.

_Susan Sarvey_
Susan Sarvey

Subscribed and sworn before me
this 30 day of July, 2008

_____
Notary Public

'OFFICIAL SEAL'
Brian Paone
Notary Public, State of Illinois
Will County
My Commission Expires July 7, 2010

3

# Exhibit I

NO. 7444    P. 2

# LAWRENCE, KAMIN, SAUNDERS & UHLENHOP LLC

300 South Wacker Drive, Suite 500       312-372-1947 phone       www.LKSU.com
Chicago Illinois 60606                  312-372-2389 fax         pcooper@LKSU.com   Direct Dial:  312-924-4258

November 8, 2007

C l √

**VIA FACSIMILE (312) 444-1027**
Carroll A. Barry, Esq.
The Law Offices of Feinberg & Barry, P.C.
20 South Clark Street, Ste. 500
Chicago IL 60603

Re:  *In re Marriage of Sarvey*, Case No. 07 D5 30018

Dear Ms. Barry:

We have been asked by Fortis Clearing Americas LLC ("Fortis") to respond to your November 1, 2007 letter to Michael Connor concerning Edward Sarvey ("Edward") and Susan Sarvey ("Susan") and their interest in certain shares of CME Group, Inc. ("CME").

As you may know, on or about June 16, 2006, Edward opened individual securities account no. 541CEA1 with Fortis's predecessor, O'Connor & Company, L.L.C. (the "Account"). In connection with the opening of the Account, Edward executed various account documents, including a New Account Application and Customer Agreement. Also in connection with the opening of the Account, Edward deposited 24,000 shares of CBOT Holdings, Inc. ("CBOT") into the Account.

Paragraph 3 of the Customer Agreement, which creates a lien on assets in the Account, provides:

> 3.  **Lien.**  All securities or other property whatsoever which O'Connor may at any time be carrying for you or which may at any time be in O'Connor's possession for any purpose, including safekeeping, shall be subject to a general lien for the discharge of all indebtedness and other of your obligation to O'Connor, irrespective of whether or not O'Connor has made advances in connection with such securities, commodities or other property, and irrespective of the number of accounts you may have with O'Connor.

Paragraph 7 of the Customer Agreement, concerning margin requirements, states:

> 7.  **Margin Requirements.**  You will at all times maintain such securities and other property in your accounts for margin purposes as O'Connor shall require from time to time. You have received, read and understand O'Connor's margin disclosure document.

NO. 7444   P. 3

Carroll A. Barry, Esq.
November 8, 2007
Page 2

Thus, Fortis has possession of and a perfected security interest in the CBOT shares (now converted to CME shares) that Edward deposited in the Account. Further, Edward has a margin debt in the Account, which is secured by the CME shares.

Because of the existence of the margin debt in the Account, Fortis is not prepared to release all of the CME shares to Susan. Instead, Fortis needs to retain sufficient shares to secure both the margin indebtedness and Edward's commodities futures activities, but will release the excess to Susan. As of November 7, 2007, that would mean that Fortis would deliver 2,500 CME shares and retain 2,000 CME shares to support the margin loan in the Account.

Nevertheless, in order to assure that Edward does not improperly transfer or liquidate the remaining 2,000 shares that remain deposited in the Account, Fortis proposes that these shares be reissued to Susan and Edward as joint tenants, and that Susan be give a control letter that would control the subsequent sale, transfer or disposition of the CME shares subject only to Fortis's lien. Further, should Edward eliminate the margin debt or provide sufficient additional and equivalent collateral in place of the CME shares, Fortis would release the CME shares to Susan in accordance with the control letter.

Please contact me after you have had a chance to discuss this matter with your client so that we may promptly effect the transfers and agreements set forth in this letter.

Very truly yours,

Peter E. Cooper

PEC/sh

cc:    Suzanne McAulay

# Exhibit J

November 9, 2007

312-372-2389
Peter E. Cooper
Lawrence, Kamin, Saunders & Uhlenhop
300 S. Wacker, Suite 500
Chicago, IL 60606

RE: Sarvey post decree

Mr. Cooper:

Thank you for discussing this matter on the telephone with me today. Pursuant to your November 8, 2007 letter, Susan would like you to release and immediately transfer to her 2500 shares of CME stock. As to your suggestion to reissue the remaining shares to Susan and Edward as joint tenants, Susan is undecided at this point whether this is acceptable. I am exploring other options and will further advise.

Feel free to call me should you wish to discuss this matter further. Thank you.

Very truly yours,

FEINBERG & BARRY, P.C.

Carroll A. Barry

CAB/kmd
cc: Susan Sarvey

# Exhibit K

# LAWRENCE, KAMIN, SAUNDERS & UHLENHOP LLC

C/✓

300 South Wacker Drive, Suite 500        312-372-1947 phone        www.LKSU.com
Chicago Illinois 60606                   312-372-2389 fax          pcooper@LKSU.com    Direct Dial: 312-924-4258

January 16, 2008                                                    1/16

**VIA FACSIMILE (312) 444-1027**
Carroll A. Barry, Esq.
The Law Offices of Feinberg & Barry, P.C.
20 South Clark Street, Ste. 500
Chicago IL 60603

        Re:    *In re Marriage of Sarvey*, Case No. 07 D5 30018

Dear Ms. Barry:

        I enclose for your information a copy of a response that we received yesterday from the CFTC concerning our January 11, 2008, letter with respect to the shares of CME Group stock transferred from Edward Sarvey to Susan Sarvey. As you can see from the enclosed letter, the Commission tentatively believes that all shares of CME Group stock appear to belong to Edward Sarvey, and, therefore, would be subject to the Commission's motion for a preliminary injunction. In her letter, Camille Arnold of the CFTC requests various information, which I believe may be within your purview and possession. You may wish to contact the Commission concerning the inquiries.

        In light of the Commission's position, however, that the CME Group shares belong to Edward, Fortis Clearing Americas, LLC is not prepared to release the shares to Susan without a determination by the Court.

        Please contact me if you have any questions.

                                        Very truly yours,

                                        Peter E. Cooper

PEC/sh

cc:    Camille M. Arnold, Esq.



**U.S. COMMODITY FUTURES TRADING COMMISSION**
525 West Monroe Street
Suite 1100
Chicago, Illinois 60661
Telephone: (312) 596-0700
Facsimile: (312) 596-0714

Division of
Enforcement

January 15, 2008

**VIA FACSIMILE AND ELECTRONIC MAIL**

Peter E. Cooper, Esq.
Lawrence, Kamin, Saunders and Uhlenhop, LLC
300 South Wacker Drive, Suite 500
Chicago, Illinois 60606

Re:  CFTC v. Edward Sarvey, et al.
Case No. 08 CV 192

Dear Mr. Cooper:

We are in receipt of your letter dated January 11, 2008 on behalf of Fortis Clearing America, LLC in the above reference matter, and reply herein. The Commodity Futures Trading Commission's ("CFTC" or "Commission") position at this time is that the 24,000 shares of CBOT Holdings, Inc. appear to belong to Edward Sarvey, and, therefore, are subject to the Commission's Motion for Preliminary Injunction.

The Commission, however, needs more information before it can determine whether the 4,500 shares purportedly transferred to Susan Sarvey may still be considered part of Mr. Sarvey's marital estate. It would be helpful if you could provide the Commission with the following information and supporting documentation:

- a copy of the Separation and Settlement agreement between Edward Sarvey and Susan Sarvey, and a copy of the final divorce decree, if any;
- the value as of close of business January 11, 2008 of the 4,500 shares held in Susan Sarvey's name, and the 19,500 shares held in Edward Sarvey's name;
- the date that Mr. Sarvey requested the 4,500 shares be reissued to Susan Sarvey;
- the date that 4,500 shares were reissued in Susan Sarvey's name;
- the date when Susan Sarvey requested the shares be released to her; and
- account information showing that the 4,500 shares are held by Susan Sarvey.

Peter Cooper, Esq,
Lawrence, Kamin, Saunders & Uhlenhop, LLC
Page 2
January 15, 2008

If you are not able to provide us with the any of the requested information, please provide us
with any sources you believe would have this information.

Sincerely,

Camille M. Arnold
Commodity Futures Trading Commission
Senior Trial Attorney
(312) 596-0524

CMA/me
oo: S. Gradman
     S. Williamson

2

# Exhibit L

January 21, 2008

SERVICE VIA FAX AND FIRST CLASS MAIL
Camille M. Arnold
Commodity Futures Trading Commission
525 West Monroe, Suite 1100
Chicago, IL 60661

RE: Edward C. Sarvey

Dear Counsel:

I represent Susan Sarvey in regard to her Legal Separation from Edward Sarvey.

In review of your correspondence dated January 15, 2008 to Peter Cooper representing
Fortis Clearing America, I would like to clarify that Mr. Sarvey initially possessed 24,000
shares of CBOT stock that were converted into 9,000 shares of CME stock. Susan is
entitled to half, which totals 4,500 shares. Edward does not possess 19,500 shares as
indicated in your letter. To our knowledge, of the initial 9,000 CME stock, Edward has
remaining 5,452 shares, 4500 of which Susan is entitled to receive pursuant to the
parties' Judgment for Legal Separation entered July 10, 2007 and the Corrected
Judgment for Legal Separation entered September 25, 2007. The pertinent Article is
9.3(A)(ii). These documents are enclosed.

Also enclosed, pursuant to your request for supporting documentation, is a copy of my
initial November 1, 2007 correspondence to Fortis requesting the stock be released,
November 8, 2007 correspondence I received in response to same from Peter Cooper
representing Fortis and my November 9, 2007 letter to Mr. Cooper.

Fortis refused to transfer 4500 shares of CME stock to Susan because they were being
used as collateral and to cover losses in Edward's trading accounts. When Susan
became aware that Fortis would not release the stocks, Susan obtained a temporary
injunction against Edward in the Circuit Court of Cook County from transferring or
selling any of the CME stock. A temporary injunctive order was entered on November
6, 2007 and extended on November 15, 2007 and on January 8, 2008. Copies of all
court orders are enclosed. Thereafter, a Petition for Rule to Show Cause was filed,
alleging Edward's failure to transfer the 4500 share of CME stock to Susan. On
January 8, 2008 I was advised by Peter Cooper representing Fortis that Mr. Sarvey had
provided sufficient monies to Fortis to cover any trading losses, etc. and that they were

Camille M. Arnold
Page Two
January 21, 2008

ready to release the 4500 shares of stock to Susan.  Several days later, Susan
contacted Peter Cooper to advise that she was ready to pick up her CME stock
certificates and was advised that CFTC had notified Fortis of their intention to enjoin the
transfers of any stock.

I have enclosed the supporting documentation of these facts.  The 4500 shares of CME
stock are rightfully Susan's.  Susan supports the parties' two children, is not employed
and has no other source of income.  I see no reason why Susan's shares of stock
should be the subject matter of any injunction as the shares are hers and not Edward's.
I would appreciate a reconsideration of your response to Peter Cooper regarding the
release of Susan Sarvey's stocks.

I look forward to working with you to expeditiously remedy this situation.  Feel free to
contact me to discuss this matter further.  Thank you.

Very truly yours,

FEINBERG & BARRY, P.C.


Carroll A. Barry

CAB/kmd
Enclosures
cc: Peter Cooper, Esq.
    Susan Sarvey
    Maricarol Lacy, Esq.

# Exhibit M

# VEDDERPRICE

VEDDER PRICE P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

RANDALL M. LENDING
312-609-7564
rlending@vedderprice.com

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

June 13, 2008

Camille M. Arnold
Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, IL 60661

     Re:   <u>Edward Sarvey</u>

Dear Camille:

     Enclosed please find a copy of the declaration signed by Edward Sarvey acknowledging that he has no right, title or interest in the shares of CME stock which were transferred to Susan Sarvey pursuant to the Judgment for Legal Separation entered by Judge Riley on July 10, 2007. In view of this declaration, and the Order entered by Judge Murphy on May 12, 2008, a copy of which is also enclosed, we hereby demand that the CFTC stop interfering with Ms. Sarvey's rights with respect to the 45,00 shares of CME stock, which is currently held at Fortis, and advise Fortis that the CFTC is not claiming any interest in said shares. Please notify me immediately as to the intentions of the CFTC.

     Very truly yours,

Randall M. Lending

RML/tr
Encl.
cc:   Susan Sarvey (w/encl.)
     Carroll A. Barry, Esq. (w/encl.)
     Cindy S. Stuyvesant, Esq. (w/encl.)

STATE OF ILLINOIS     )
                             ) S.S.

COUNTY OF COOK     )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE:  THE MARRIAGE OF: | ) | |
| | ) | |
| SUSAN SARVEY, | ) | |
|   Petitioner, | ) | |
| | ) | |
|      and | ) | NO. 07 D5 30018 |
| | ) | |
| EDWARD C. SARVEY | ) | |
|   Respondent. | ) | |

### DECLARATION OF EDWARD SARVEY

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct:

I have no right, title, interest or claim to any of the 4500 CME shares of stock held by Fortis Clearing Americas, LLC ("Fortis") in the name of Susan Sarvey.  All shares of CME stock in Susan Sarvey's name held by Fortis were transferred to Susan Sarvey by me pursuant to a Judgment for Legal Separation entered by the Honorable Daniel Riley on July 10, 2007.

                                    _____
                                           EDWARD C. SARVEY

Attorney No. 13864

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE:  THE MARRIAGE OF:                      )
                                              )
SUSAN SARVEY                                  )
    Petitioner,                               )
                                              )
       and                                  )     NO. 07 D5 30118
                                              )
EDWARD C. SARVEY                              )
    Respondent.                               )

### ORDER

THIS CAUSE coming to be heard for hearing on Petitioner's Petitions for Rule to Show Cause and Motion for Default Judgment, due notice having been given, the parties being in agreement, Court having jurisdiction of the parties and the subject matter and having been fully advised in the premises;

THE COURT HEREBY FINDS:

1. That pursuant to the Judgment for Legal Separation entered on July 10, 2007, Susan Sarvey was awarded 12,000 shares of Edward's Chicago Board of Trade (CBOT) stock.
2. That the CBOT later merged with the Chicago Mercantile Exchange (CME), converting Susan's shares to 4,500 shares of CME stock.
3. That Edward signed all necessary papers to effectuate the transfer of the 4,500 shares of CME stock to Susan.
4. That Fortis issued 4,500 shares of CME stock to Susan, as sole owner of said shares of stock.
5. That Edward has no right, title, interest or claim to Susan's shares.

IT IS HEREBY ORDERED that Edward C. Sarvey has no further claim or interest to Susan Sarvey's 4,500 shares of Chicago Mercantile Exchange Stock.

ENTERED:_____
                     JUDGE



Feinberg & Barry, P.C.
Attorneys for Susan Sarvey
20 South Clark Street, Suite 500
Chicago, Illinois 60603
(312) 444-1050
Atty No. 13864

# Exhibit N

The Depository Trust Company
55 Water Street, 1SL
New York, NY 10041

The Depository Trust Company is a subsidiary of
The Depository Trust & Clearing Corporation
PARTICIPANT NAME  /  NUMBER

## SECURITIES MAILING LIST

Please examine the enclosed securities immediately. DTC shall consider the securities indicated on this Securities Mailing List received UNLESS DTC's Interface Department receives a report of discrepancies by 5:00 P.M., E.T. on the day of receipt of this shipment by Participant. Direct all inquiries to DTC at (212) 855-8766.

DATE   10/29/07
PAGE   1

FCALLC/RCT        541                                    REGISTERED SECURITIES

| CUSIP NUMBER | SECURITY NAME | QUANTITY | ACTIVITY TYPE | | VALUE OF LISTING |
|---|---|---|---|---|---|
| 12572Q-10-5 | CME GROUP INC | 4,500 | TRF | | $2,983,500 |
| | | | SUB TOTAL | | $2,983,500 |
| | 1 ITEMS ** GRAND TOTAL ** | | | | $2,983,500 |



**Member: ALL PRINCIPAL EXCHANGES**

175 W Jackson Blvd Suite 400 Chicago IL 60604 312-604-8000 Fax 312-604-8111

## STATEMENT OF YOUR ACCOUNT

Susan M. Sarvey
1277 Chatham Drive
Lemont, IL 60439

CASH ACCOUNT

### STATEMENT SUMMARY

| Statement Period | Last Statement Date |
|---|---|
| 3/1/2008 To 3/31/2008 | 2/29/2008 |

Account Number

EA2

## ACCOUNT SUMMARY

|  | Opening Balance | Closing Balance |
|---|---|---|
| **Securities Market Value** | 2,309,850.00 | 2,110,950.00 |
| **Account Balance** | 0.00 | 0.00 |
| **Unsettled Mark to Market** | 0.00 | 0.00 |
| **Total Account Equity** | 2,309,850.00 | 2,110,950.00 |

## INCOME SUMMARY

|  | This Month | Year to Date |
|---|---|---|
| **Interest Inc** | 0.00 | 0.00 |
| **Interest Exp** | 0.00 | 0.00 |
| **Sh Stock Inc** | 0.00 | 0.00 |
| **Ordinary Div** | 0.00 | 0.00 |
| **Dividend Exp** | 0.00 | 0.00 |
| **Qualified Div** | 0.00 | 0.00 |

## POSITION SUMMARY

| Type | Symbol | Description | Quantity | Price | Market Value |
|---|---|---|---|---|---|
|  | CME | CME GROUP INC COM | 4,500 | 469.1000 | 2,110,950.00 |

** End of Position Summary **


** End of Statement **